Michael R. Spaan, Esq.
mspaan@pattonboggs.com
Matthew S. Block, Esq.
mblock@pattonboggs.com
PATTON BOGGS LLP
601 West Fifth Avenue, Suite 700
Anchorage, Alaska  99501
Telephone:  907-263-6300
Facsimile:  907-263-6345

James L. Kee, Esq.
kanda@texhoma.net
KEE, ARCHER & HERBERGER, P.A.
P.O. Box 1646
Duncan, OK 73533
Telephone: 580-252-2120
Facsimile: 580-252-8647

*Attorneys for Robert F. Kane*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ROBERT F. KANE, )<br>)<br>Defendant. ) | <br><br><br><br><br><br>No. 3:06-mj-011-JDR-RRB |

**BRIEF OF THE APPELLANT/DEFENDANT**

47355v3

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................. i

STANDARD OF REVIEW ........................................................................................................... 1

STATEMENT OF THE CASE ...................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 1

ARGUMENT ................................................................................................................................. 1

    I.    THE DETENTION ORDER MUST BE REVERSED AND MR. KANE MUST BE RELEASED BECAUSE THE COURT COMMITTED ERRORS IN FAILING TO CONSIDER RELEVANT EVIDENCE IN REACHING ITS CONCLUSIONS. ......... 4

        A.    It was error to fail to consider all of the available evidence that the nature and circumstances of the offense were relatively minor and benign. ..................................... 4

        B.    It was error to fail to consider all of the available evidence that would have tended to show the government's case had little weight. ................................................................. 6

        C.    It was error to fail to consider all of the available evidence that Mr. Kane has a history of involvement with the law enforcement community. ..................................................... 8

    II.    THE DETENTION ORDER MUST BE VACATED AND MR. KANE MUST BE RELEASED BECAUSE THERE IS INSUFFICIENT EVIDENCE TO SUPPORT THE CONCLUSION THAT HE IS A FLIGHT RISK. ................................................. 9

CONCLUSION ............................................................................................................................ 12

47355v3

## STANDARD OF REVIEW

The District Court is permitted to exercise a *de novo* review of the factual findings and legal determinations of a Magistrate Judge in making a detention order.  18 USC § 3145(c).

## STATEMENT OF THE CASE

This brief concerns the appeal of a pretrial detention order.  As of this writing, Mr. Kane has not been indicted, and is detained based only on a Complaint.

## STATEMENT OF FACTS

Because the decision appealed is a detention order, it is necessarily prior to any discovery beyond what the government has already conducted in its investigation.  The facts of the case have not yet been established.  The conduct of the parties and court at the probable cause and detention hearings, however, is retold accurately by the Transcript of those proceedings.[1]

## ARGUMENT

At a detention hearing, the trial court is required to determine the least restrictive set of conditions that will cause the defendant to appear as required without danger to any person.[2]  The court must order the defendant's release on his own recognizance or an unsecured appearance bond, unless doing so will be insufficient to assure the defendant's appearance.[3]  If such a release will not suffice, the court may order that the defendant not commit any criminal act, and that the defendant be subject to the least restrictive set of conditions necessary to assure appearance and safety.[4]  Restrictions may include a third-party custodianship, agreements not to

---

[1] *See* Exhibit C, Transcript of Proceedings, No. 3:06-mj-00011-JDR (February 7 & 8, 2006).

[2] *See* 18 USC § 3142.

[3] 18 USC § 3142(b).

[4] 18 USC § 3142(c).

travel, regular reports to a law enforcement or other agency, agree to forfeit property in the event of a failure to appear, post a bail bond, or any other condition that is reasonably necessary to assure appearance.[5] The court is permitted to deny release only if it finds that *no* condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of other persons.[6] Only in rare circumstances should release be denied.[7] Any doubts about the propriety of release should be resolved in the defendant's favor.[8] The burden rests with the government to show by a preponderance of evidence that the defendant is a flight risk.[9] If this showing has been made, the court is then charged to consider all possible conditions of release an determine whether any condition or set of conditions would be sufficient to secure the appearance of the defendant.[10] The court is required to submit written findings of fact and a written statement of reasons for the detention.[11] As a preliminary matter, the court in this case committed clear error by failing to make written findings, referring, instead, to the oral findings which were in no respect clear.

In order to determine whether a condition or some combination of conditions will reasonably assure safety and appearance, the court is required to consider several factors.[12] The

---

[5] *Id.*

[6] 18 USC § 3142(e).

[7] *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir.1985).

[8] *Id.*

[9] *Id.*

[10] 18 USC 3142(e).

[11] 18 USC § 3142(i)(1).

[12] 18 USC § 3142(g).

BRIEF OF THE APPELLANT/DEFENDANT
*USA v. Robert Kane*, No. 3:06-mj-011-JDR-RRB
PAGE 2
47355v3

language of the statute is not permissive, but mandatory.[13] It provides that the court "shall … take into account the available information concerning" the nature and circumstances of the offense, the weight of the evidence against the defendant, the history and characteristics of the person including their character and ties to the community, and the nature and seriousness of any danger to an individual or the community posed by the defendant.[14]

The court stated at the outset of the hearings and at the outset of the detention hearing that it was going to use the evidence obtained in the probable cause hearing in its detention determination.[15] Indeed, the court referred to evidence offered only during the probable cause portion of the hearings in making its detention findings.[16] As such, the court's various errors in failing to admit evidence during the probable cause hearing constituted error that carried into the detention determination.

In this case, the court failed to consider the statutory factors as required in a detention hearing, in part because it excluded the available information from evidence. The court also erroneously relied upon facts for which there was no evidentiary support.

---

[13] *See id.*

[14] *Id.*

[15] Exhibit C, at 5-6, 84.

[16] *See id.* at 238.

I.  **THE DETENTION ORDER MUST BE REVERSED AND MR. KANE MUST BE RELEASED BECAUSE THE COURT COMMITTED ERRORS IN FAILING TO CONSIDER RELEVANT EVIDENCE IN REACHING ITS CONCLUSIONS.**

A.  It was error to fail to consider all of the available evidence that the nature and circumstances of the offense were relatively minor and benign.

As stated above, the court must take into account all of the available information concerning the nature and circumstances of the offense. In this case, Mr. Kane was charged with knowing possession, and attempted knowing possession, of unregistered destructive devices. The nature of this crime depends upon what device is charged as the destructive device. For instance, as the lower court pointed out in its findings, some courts have determined that possession of pipe bombs and other weapons with the ability under their own power to cause mayhem and destruction may constitute a very serious crime, even a crime of violence.[17] On the other hand, possession of an unregistered paperweight that happens to have the appearance of a weapon is, at most, a paperwork crime. In other words, the gravamen of the charge may be the possession itself, or it may simply be the failure to register.

In the present case, the court failed to consider evidence presented by the defense that in this case, the crime charged was in the nature of a paperwork problem. The defense proffered evidence that the putative rocket pods in this case could not possibly be considered anything but static displays, because they were totally demilitarized and non-operational.[18] Not only did the court fail to consider this evidence, but it did not even allow the proffer to continue.[19] The court would not accept an exhibit offered to demonstrate that the putative rocket pods were ordered off

---

[17] *See id.* at 235.

[18] *See id.* at 52-54, 58-59, 169-171. *See also* Exhibits A and B, attached hereto.

[19] *See id.* at 172-73.

of the eBay Internet auction site.[20] The court did not admit and would not consider evidence that the pods were advertised as being useful as furniture or decoration.[21] The court would not allow witnesses to testify as to the seller's representation that the pods were legal and demilitarized.[22]

In fact, the court did not consider the fact that even the government did not contend that the pods were operational.[23] When asked whether the government argued that the pods were operative weapons, counsel for the government responded, "No, we argued he's … possessing an unregistered rocket pod."[24] This comment was not empty at the time it was made; if in fact the government was arguing that the rocket pods were operational and dangerous, the government's objections to operability evidence as irrelevant would not have been cognizable.

The failure of the court to consider the assertion of the government as to its characterization of the case, and the accumulated evidence that the alleged weapon in this case was nothing more than a decoration caused the court to misevaluate the nature and circumstances of the offence charged. Mr. Kane was charged not with possessing a dangerous weapon or with committing a crime of violence, but with a failure to file the appropriate form to register a non-operative collection of steel tubes.

---

[20] *Id.* at 170.

[21] *Id.*

[22] *Id.* at 169.

[23] *Id.* at 168.

[24] *Id.*

B.  It was error to fail to consider all of the available evidence that would have tended to show the government's case had little weight.

The court failed to admit or consider substantial evidence that would have demonstrated that the government's case was most generously described as very weak.  Mr. Kane was charged with a violation of 26 USC § 5861(d) and 26 USC § 5871.[25]  The first of these makes it unlawful for a person to "receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record."[26]  The second simply sets out the penalties for violations of the first.[27]  A "firearm" includes a "destructive device."[28]  In order to be considered a "destructive device," a non-explosive must be a weapon that will expel a projectile, or that can be "readily converted" to do so.[29]  Thus, any evidence that the putative rocket pods at issue in this case cannot now expel a projectile, and cannot be readily converted to do so, is probative of the weight of the government's case.

Both during the probable cause hearing, and again during the detention hearing, the defense attempted to present the evidence of an expert in the field of military aircraft weapons, who would have testified by affidavit or live that the rocket pods in this case could not possibly

---

[25] *See* Criminal Complaint, Case No. 3:06-MJ-011-JDR (February 1, 2006).

[26] 26 USC § 5861(d).

[27] 26 USC § 5871 provides, in its entirety, that:

> Any person who violates or fails to comply with any provisions of this chapter shall, upon conviction, be fined not more than $10,000, or be imprisoned not more than ten years, or both.

[28] 26 USC § 5845(a)(8).

[29] 26 USC § 5845(f)(2).

launch rockets.[30] The court apparently misconstrued the charge against Mr. Kane in denying the evidence as irrelevant, suggesting that the fact that the putative rocket pods were not destructive devices went to an affirmative defense rather than to the *prima facie* showing required of the government.[31]

      The defense also attempted to submit evidence and argument demonstrating that the government had failed to produce any substantive evidence at all that Mr. Kane had possessed anything, let alone unregistered firearms. The government never presented even a shred of evidence that Mr. Kane was a principal or owner of Security Aviation. On the other hand, the defense presented evidence in its examination of Special Agent Campe that no rocket pods or anything related to them were found in Mr. Kane's house, or car.[32] Defense attempted to establish that the rocket pods had never been outside of the possession of Security Aviation.[33] The court, disagreeing with defense counsel's position that in order to show a violation of a statute criminalizing possession the government must first prove that the defendant possessed something, sustained the government's objection to this line of questioning.[34] As such, the court prevented the only evidence that was offered on whether Mr. Kane possessed the rocket pods from being heard, which evidence would have demonstrated that Mr. Kane did not, in fact, possess them.

---

[30] *See* Exhibit C, at 52-54, 58-59, 169-171.

[31] *See, e.g., id.* at 58-59.

[32] *Id.* at 40.

[33] *Id.*

[34] *Id.* at 41.

The courts failure to admit and consider evidence tending to show that the devices at issue were not "destructive devices" as defined in law, that in any event Mr. Kane did not possess them, and that the government's case was therefore very weak was an error.

C.   It was error to fail to consider all of the available evidence that Mr. Kane has a history of involvement with the law enforcement community.

The government submitted that "it is beyond dispute that [Mr. Kane] is a con man and a fraud."[35] The government backed up this statement by referring to evidence that had been adduced that Mr. Kane's house and office contained manila folders marked with the insignia of various intelligence and law enforcement agencies.[36] In the affidavit relied upon by the government to establish probable cause in the case, the affiant included evidence about claims Mr. Kane had allegedly made of his involvement in the intelligence and law enforcement community.[37] The court specifically referenced these alleged claims in reaching its findings.[38] Evidence tending to show that Mr. Kane's alleged claims were, in fact, true would presumably have led the court to a very different determination. Indeed, to the degree that untrue statements about a connection to the law enforcement community might suggest a propensity to take flight, a person who had contributed to law enforcement and who had dedicated a significant part of their lives to such contributions might be presumed to obey the mandates of a system they had supported.

---

[35] *Id.* at 226.

[36] *Id.*

[37] *Id.* at 44-45.

[38] *Id.* at 237, 238.

The court would not allow the defense to adduce evidence tending to show that the government had made no attempt to investigate the claims it alleged were false.[39] In fact, a government witness testified that evidence had been presented to them substantiating Mr. Kane's assertions that he was involved in intelligence activities.[40] Moreover, substantial evidence was adduced that Mr. Kane had actually worked in the field of "fugitive recovery," recapturing individuals who did not obey the conditions of pretrial release.[41]

The court was required to consider all available information on Mr. Kane's character and employment that might be relevant to determining whether or not he presented a flight risk. Evidence that Mr. Kane had worked for nearly two decades assisting law enforcement agencies would certainly have been probative as to whether Mr. Kane was likely to violate the terms of any pretrial release order. The court's failure to consider this evidence constituted error.

## II. THE DETENTION ORDER MUST BE VACATED AND MR. KANE MUST BE RELEASED BECAUSE THERE IS INSUFFICIENT EVIDENCE TO SUPPORT THE CONCLUSION THAT HE IS A FLIGHT RISK.

After denying much of defense's evidence, the court was left to consider only the evidence presented by the government. This evidence was insufficient to support the court's finding of flight risk. Federal law creates a presumption that a defendant will be released on bail pending trial except in capital cases.[42] Bail is to be denied only in rare cases.[43] Thus, the showing required to establish that a defendant is unlikely to appear is relatively high.

---

[39] *Id.* at 45-46.

[40] *Id.* at 117-120, 125.

[41] *See, e.g., id.* at 126.

[42] *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir.1985).

[43] *Id.*

For instance, in *United States v. Motamedi*,[44] an Iranian citizen was charged with 14 counts of exporting military items and one count of conspiracy, carrying a maximum sentence of 33 years imprisonment.[45] The government submitted evidence that Motamedi had persisted in his export activities despite warnings they were illegal and despite informing the US Attorney that he had ceased.[46] The government argued that Motamedi could return to Iran with impunity, that he had access to large stores of money in foreign bank accounts, and that he could easily flee.[47]

The Ninth Circuit, in reviewing the case, determined that the lower court should not put too much emphasis on the government's assertions that the chargers were serious and the weight of evidence strong.[48] The Court held that Motamedi's argument that there was no evidence of large foreign bank accounts and that he was not free to return to Iran balanced any evidence the government had that he was free to return.[49] Thus, the Court held that the government had failed to establish by a preponderance of the evidence that Motamedi presented a serious risk of flight.[50]

---

[44] 767 F.2d 1403.

[45] *Id.* at 1404.

[46] *Id.* at 1408.

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.* at 1408-09.

The court here ultimately based its detention order on risk of flight. In support of this, the court found that Mr. Kane had traveled in the past,[51] that there was no evidence substantiating Mr. Kane's alleged portrayal of himself as having worked with the FBI,[52] and that Mr. Kane had an illegal silencer and a number of other items.[53] The court found that Mr. Kane had "insulated himself" from the three suggested third-party custodians because they did not know much about his past travels.[54] Finally, the court found that Mr. Kane had access to pilots and planes, and that two of the suggested third-party custodians, Mr. Bean and Mr. Sleeth, were both employed by Security Aviation.[55] The court did not assess the quality of Mrs. Smith as a custodian at all. Despite the submission of the defense that the proposed custodial plan might include electronic monitoring,[56] the court made no assessment as to whether monitoring would contribute sufficiently to the courts' control over Mr. Kane to assure his appearance.

The government offered no evidence to suggest and the court did not find that Mr. Kane was likely to violate court ordered restrictions on travel, or on access to money, or on access to equipment. The court did not find and there was no evidence to suggest that Mr. Kane had ever improperly failed to appear in a prior criminal proceeding. The court did not find and there was no evidence to suggest that Mr. Kane was on release in another matter. The court did not find and it is inconceivable that a release order demanding that Mr. Kane stay at the home of Mrs.

---

[51] Exhibit C, at 236.

[52] *Id.* at 237-38.

[53] *See id.* at 238-239.

[54] *Id.* at 239.

[55] *Id.* at 240-41.

[56] *Id.* at 230-31.

Smith in the evenings and at the home of Mr. Sleeth during the day and reinforcing that demand with use of an electronic monitor would be insufficient to cut off whatever access Mr. Kane is believed to have to air travel.

In essence, then, the court found that Mr. Kane was a flight risk by a preponderance of the evidence based on the government's showing that he provided consulting services for a company that owned aircraft and employed pilots, and by asserting that there were many unanswered questions about Mr. Kane's past. Doubts are to be resolved in favor of the defendant[57] – any lingering questions about Mr. Kane's past should not have been a basis for detaining him. Instead, Mr. Kane's case should be compared to *Motamedi*. Because the crimes at issue are less serious than in that case, the weight of the evidence is lighter, and Mr. Kane's connections to the immediate community are at least as strong as Motamedi's, bail should not have been denied.

## CONCLUSION

In the United States, a defendant is entitled to a hearing at which all of the available evidence will be adduced and assessed before he is detained based only upon the government's assertion that he ought to be. Even when there is probable cause to believe that the defendant committed a crime, the defendant is presumed innocent and is entitled to reasonable bail. If the government believes that the defendant must be detained in order to avoid a flight risk, then the government must be made to prove that, and the defendant must be permitted to present evidence that it is not the case. Because of the court's failure to allow the defendant to produce substantial evidence, and because of its failure to adequately consider what evidence was produced, Robert Kane has not been afforded these protections. Reduced to their core, the court's oral findings

---

[57] *Motamedi*, 767 F.2d at 1405.

and order amount to an assessment that Mr. Kane presents a flight risk because if he is allowed to go to the airport he will have access to aircraft and to people who know how to fly them, and because the court has too many questions about who he is and what he does. But this reasoning proves too much. A defendant presumed to be innocent of any crime cannot be detained because the court has questions.

      DATED this 21st day of February, 2006.

    PATTON BOGGS LLP
    Attorneys for Defendant Robert F. Kane

    By:    s/Michael R. Spaan
        Michael R. Spaan
        Alaska Bar No. 7305026
        Matthew S. Block
        Alaska Bar No. 0511094

    KEE, ARCHER & HERBERGER, P.A.

    By:    s/James L. Kee
        James L. Kee
        Oklahoma Bar No. 4902

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of February, 2006, a copy of the foregoing document to be served electronically on the following:

**Steven E. Skrocki**
Office of the U.S. Attorney
steven.skrocki@usdoj.gov

By:    s/Nina E. Bingham
      Legal Secretary/Assistant
      PATTON BOGGS LLP