Page 1

```
 1                UNITED STATES DISTRICT COURT

 2                    DISTRICT OF ALASKA

 3        _____

                                          )
 4    UNITED STATES OF AMERICA,           )
                                          )
 5              Plaintiff,                )
                                          )
 6         vs.                            )
                                          )
 7    ROBERT F. KANE,                     )
                                          )
 8              Defendant.                )   No. 3:06-mj-00011-JDR

 9

10

11

                     TRANSCRIPT OF PROCEEDINGS
12
             February 7, 2006 - Pages 4 through 139
13
             February 8, 2006 - Pages 140 through 242
14

15

16

17

18

19

20    _____

21

22             MIDNIGHT SUN COURT REPORTERS

23             West Ninth Avenue, Suite

24               Anchorage, Alaska 99501

25                  (907) 258-7100
```

U.S.A. v. KANE
CASE NO. 3:06-mj-00011-JDR

TRANSCRIPT OF PROCEEDINGS
FEBRUARY 7 & 8, 2006

---

Page 2

1  　　　　　TABLE OF CONTENTS
2
WITNESSES:    DIRECT  CROSS  REDIRECT  RECROSS
3
FOR THE PLAINTIFF:
4
Special Agent D. Espeland    6    21
5
Agent Shawn Clapp    86    115
6
Agent Jolene Bronkhorst    141    157
7
FOR THE DEFENDANTS:
8
9  Special Agent Matthew Campe   26   76   77
10 Evan "Joe" Griffith    163
11 Sergeant Ted Smith    174   184   201   202
12 Roy Sleeth    203   206
13 David Bean    215   218
14
15
16
17
18
19
20
21
22
23
24  　　　MIDNIGHT SUN COURT REPORTERS
25  　　　　　(907) 258-7100    2

---

Page 3

1  EXHIBITS:
2
3  FOR THE PLAINTIFF:
4
5    1 - Application for residence in Bahamas    145
6    2 - Business cards    145
7    3 - Photograph of Robert Kane    92
8    4 - Philippine identification card    92
9    5 - Items of identification    94
10   6 - Manila file folders    110
11   7 - Commendation medals    94
12   8 - Contents of wallet    103
13   9 - ID badges    97
14   10 - Greek passport    103
15   11 - Money transfer receipts    105
16   12 - Bank wire documents    104
17   13 - FAA registry of aircraft    19
18   14 - Photographs of L-39    21
19   15 - Two memos    151
20   16 - Letter of 1/20/06    162
21   17 - Meeting minutes    156
22
23
24
25

---

Page 4

1
2
3  　PRELIMINARY HEARING; DETENTION/BAIL HEARING
4  　　BEFORE THE HONORABLE JOHN D. ROBERTS
5  　　　　United States Magistrate Judge
6
7  　　　　　　Anchorage, Alaska
8  　　　　　　February 8, 2006
9  　　　　　　12:59 o'clock p.m.
10 APPEARANCES:
11
12 FOR THE PLAINTIFF:    U. S. DEPARTMENT OF JUSTICE
　　　　　　　OFFICE OF THE U. S. ATTORNEY
13 　　　　BY:  STEVEN E. SKROCKI, ESQ.
　　　　　　　ASSISTANT U. S. ATTORNEY
14 　　　　222 W. Seventh Ave., #9, Room 253
　　　　　　Anchorage, Alaska 99513
15
16 FOR THE DEFENDANT:    PATTON BOGGS LLP
　　　　　BY:  MICHAEL R. SPAAN, ESQ.
17 　　　　　　MATTHEW BLOCK, ESQ.
　　　　　601 West Fifth Avenue, Suite 700
18 　　　　　Anchorage, Alaska 99501
19
20
21
22
23
24  　　MIDNIGHT SUN COURT REPORTERS
25  　　　　(907) 258-7100    4

---

Page 5

1  　　　　P R O C E E D I N G S
2  12:59:18
3  　　THE CLERK:  All rise.  His Honor the Court for the United
4  States District Court for the District of Alaska is now in
5  session, the Honorable John D. Roberts, presiding.  Please be
6  seated.
7  　　THE COURT:  Calendar shows this is the time set for a
8  preliminary hearing, detention hearing in U.S. v. Robert Kane.
9  Defendant is here.  Counsel are present.
10 　　Mr. Spaan, you did file a notice of appearance.
11 　　MR. SPAAN:  I did, Your Honor, and I have Mr. Matt Block
12 with me assisting Mr. Kane as well.
13 　　THE COURT:  Thank you.  Let me take up first the matter of
14 the complaint.  At one time this was under seal.  Mr. Spaan, do
15 you have a copy of the complaint and the affidavit?
16 　　MR. SPAAN:  Your Honor, I have a copy of the complaint and
17 the affidavit.  I didn't have any -- notice anything being under
18 seal until I phoned Your Honor and we weren't on the calendar.
19 　　THE COURT:  It is on the calendar.  Is there any reason --
20 this is a question for the Government -- why it should not be
21 unsealed?
22 　　MR. SKROCKI:  No objection, Your Honor.
23 　　THE COURT:  All right.  This is a public hearing.  We'll
24 proceed with the evidence as follows.  I'll hear evidence as to
25 the preliminary hearing first, and then rule, and then I'll hear

---

MIDNIGHT SUN COURT REPORTERS
(907) 258-7100

EXHIBIT # ____C____
Page # __2__ of __62__

U.S.A. v. KANE
CASE NO. 3:06-mj-00011-JDR

TRANSCRIPT OF PROCEEDINGS
FEBRUARY 7 & 8, 2006

---

**Page 6**

1  any additional evidence on the detention hearing and the bail
2  issue. If the Government's ready to proceed, you may call your
3  first witness.
4      MR. SKROCKI: Yes, sir. Call Special Agent Derek
5  Espeland, Your Honor.
6      THE CLERK: Sir, if you could stand in front of me here
7  and I'll swear you in. Please raise your right hand.
8      (Oath administered)
9      SPECIAL AGENT ESPELAND: I do.
10     THE CLERK: Thank you. Please have a seat in the witness
11  box.
12         SPECIAL AGENT DEREK ESPELAND
13  called as a witness on behalf of the plaintiff, testified as
14  follows on:
15         DIRECT EXAMINATION
16     THE CLERK: Please be sure to speak into the mike at all
17  times. Please state your full name, spelling your last name and
18  your current working address.
19  A   Full name is Derek D. Espeland. My last name is spelled
20  E-s-p-e-l-a-n-d.
21     THE CLERK: Thank you.
22     THE COURT: You may proceed.
23     MR. SKROCKI: Thank you, sir.
24  BY MR. SKROCKI:
25  Q   Agent Espeland, you work for the FBI?

**Page 7**

1  A   Yes, I do.
2  Q   For how long?
3  A   Approximately seven years.
4  Q   All in Anchorage?
5  A   Yes.
6  Q   Okay. You're not the case agent assigned to this case,
7  correct?
8  A   I am not.
9  Q   Okay. You had occasion to review the complaint and
10  affidavit of Special Agent Matt Campe in relation to this
11  case against Mr. Kane?
12  A   Yes, I did.
13  Q   And if you could, in general terms if you've read the
14  affidavit discuss what information is contained concerning
15  the charges filed against Mr. Kane.
16  A   Okay. In this case investigators have spoken with a
17  number of people referred to as witnesses in the case.
18  Those witnesses were reporting on activities within --
19  pertaining to Security Aviation, particularly Mr. Kane,
20  and other employees within Security Aviation. Witnesses
21  revealed information to us that indicated that Mr. Kane
22  had directed an employee of Security Aviation to research
23  weapons that could be mounted on the L-39 Albatros jet
24  aircraft. That employee did conduct Internet research and
25  would discuss his ongoing research with witnesses in this

**Page 8**

1  case, and at some point he revealed that he did find
2  weapons that could be purchased that could be pointed onto
3  an L-39 Albatros. At that time apparently this employee
4  was directed then by Mr. Kane to order the weapons. The
5  weapons that he was -- the employer Security Aviation was
6  told to research included rocket launchers and guns that
7  could be mounted on the aircraft.
8  Q   Let me stop you there for just a moment. Was this
9  employee who was providing the information to Agent Campe,
10  was he employed with Security Aviation at the time the
11  information was provided?
12  A   Yes.
13  Q   So -- I'm sorry to interrupt you. So you were -- you
14  stated that this employee at Security Aviation was tasked
15  to do research, did the research, related information to
16  the witness, who gave it to Special Agent Campe.
17  A   Yes.
18  Q   Okay. Why don't you take it from there.
19  A   Okay. So the -- again, the weapons were -- the rocket
20  launchers were found on the Internet, an eBay-type site or
21  Internet -- Internet brokerage, where they -- where those
22  rocket launchers could be purchased. They were directed
23  by Mr. Kane to be purchased. Sometime later the rocket
24  launchers were delivered to the Security Aviation hangar
25  in Anchorage, Alaska, described as two wooden crates.

**Page 9**

1  When they were delivered Mr. Kane went up to the crates,
2  was apparently excited that the rocket launchers had
3  arrived, opened up one of the crates, and made a statement
4  with the words to the effect: Now I can conduct target
5  practice.
6      Those rocket launchers were observed by some of our
7  witnesses at the Anchorage hangar of Security Aviation,
8  and they were also observed by witnesses at the Security
9  Aviation hangar located in Palmer. To confirm what the
10  witnesses had seen Agent Campe provided our witnesses with
11  a photograph of an L-39 Albatros in flight that had
12  mounted onto its wings rocket launchers, and the witnesses
13  identified -- the witnesses who had observed the rocket
14  launchers in the Anchorage hangar and the Palmer hangar
15  observed that they were the -- the same type of rocket
16  launcher that was attached to the L-39 aircraft in -- in
17  the photograph.
18  Q   Were those the same -- did those witnesses indicate those
19  were the ones they saw at the Ted Stevens Airport hangar
20  of Security Aviation?
21  A   Yes.
22  Q   Now, there's -- you're familiar with the affidavit,
23  correct?
24  A   Yes.
25  Q   And the witnesses in the affidavit are designated by

MIDNIGHT SUN COURT REPORTERS
(907) 258-7100

EXHIBIT # _____C_____
Page # __3__ of __62__

U.S.A. v. KANE
CASE NO. 3:06-mj-00011-JDR

TRANSCRIPT OF PROCEEDINGS
FEBRUARY 7 & 8, 2006

Page 10

1    letter.
2  A    Yes, they are.
3  Q    Okay. Specifically, A, B, C, D.
4  A    Yes.
5  Q    Do you have names that you can associate with those
6        letters, please?
7  A    Yes, I do.
8  Q    And who provided you with the names for those witnesses?
9  A    Agent Campe. Witness A in this case is Wilbur Hooks, who
10       is a employee of the Transportation Safety Administration
11       at the Ted Stevens International Airport. He serves as
12       the head law enforcement officer for TSA.
13 Q    And in your own personal experience have you known Agent
14       Hooks as an FBI agent when -- as being an FBI agent?
15 A    Mr. Hooks, not -- not as an FBI agent.
16 Q    Let me rephrase that. I tripped over that. Do you know
17       Mr. Hooks?
18 A    Yes, I do.
19 Q    Before he worked at TSA what did he do?
20 A    Before he worked at TSA he was employed with the Anchorage
21       Police Department, and also the airport police department.
22 Q    And so he's witness A.
23 A    Yes, he is.
24 Q    Were you informed by Agent Campe as to a typographical
25       error in a paragraph referencing witness A or Mr. Hooks?

Page 11

1  A    Yes, in paragraph 12 of the affidavit Wilbur Hooks is
2        identified also as witness L.
3  Q    Okay, so it should be witness A, correct?
4  A    Correct.
5  Q    Okay, and there's another error in the -- in that
6        paragraph as well where it references Palmer?
7  A    Yes.
8  Q    What were you told about that?
9  A    Agent Campe told me that the -- in paragraph 12 it says
10       that witness A observed the -- was -- was shown by
11       Mr. Kane that he had rocket launchers in his possession,
12       and in the paragraph it says that that observation of the
13       rocket launchers by Mr. Hooks, witness A, was at the
14       Palmer air-- Palmer hangar, when in fact it was at the
15       Anchorage hangar.
16 Q    Okay. Now, did -- in the affidavit did Agent Campe go
17       into some detail -- or some detail concerning Mr. Hooks'
18       observation of the rocket pod at Ted Stevens?
19 A    Yes, he did.
20 Q    Do you recall about when that took place?
21 A    It was sometime in the end of October of 2005.
22 Q    Okay. What was described in the affidavit concerning
23       Mr. Kane and the activity with that rocket pod?
24 A    The -- that -- that Kane displayed to Mr. Hooks that he
25       had the -- that the rocket pod launcher, and he identified

Page 12

1        the rocket launcher, and then the witness, Mr. Hooks,
2        confirmed that it looked to be the same rocket launcher in
3        the photograph.
4  Q    Was there some mention of how the rocket pod appeared, or
5        was it -- where was it located in the Ted Stevens hangar?
6        Do you recall?
7  A    It was -- at the Ted Stevens it was located, I believe, in
8        a crate. Or -- no, I'm sorry, I have that wrong. It was
9        under a tarp.
10 Q    Okay. And did witnesses B, C and D, did they corroborate
11       the same type of rocket pod as Officer Hooks did?
12 A    Yes, they did.
13 Q    Now, let's talk about witnesses B, C and D. Could you
14       identify for the Court as to the identity of witnesses B,
15       C and D that are referenced in the affidavit?
16 A    Yes, I can. Witness B is John Barrons (ph), who was a
17       mechanic for Security Aviation at the time of this
18       investigation. Witness C is Robert Anthony, who was also
19       an employee of Security Aviation at the time that they
20       provided -- that he provided this information, and also
21       Mark Sheets (ph), who was an employee of Security
22       Aviation, who was also an employee of Security Aviation at
23       the time they provided this information to investigators
24       in this case.
25       MR. SPAAN: Your Honor, just a point of clarification.

Page 13

1        Would that be Mr. Sheets was witness D?
2        THE COURT: That's what I understood him to say.
3        MR. SPAAN: Okay.
4  A    Yes.
5        MR. SPAAN: Okay.
6  Q    And just to be clear, in the affidavit does it reference
7        at the time these -- at the time the rocket pods were
8        observed were these individuals all employed at Security
9        Aviation except for Mr. Hooks?
10 A    Yes, they were.
11 Q    There's reference in the affidavit concerning the statute
12       that's charged here. Are you familiar with that?
13 A    Yes.
14 Q    Okay. That'd be 28 U.S.C. 5861(d), correct?
15 A    Yes.
16 Q    Okay, and that's -- what are the essence of the elements
17       of that charge?
18 A    The essence of the elements, it's unlawful to possess a
19       destructive device, and a destructive device is further
20       explained as a -- a weapon with a bore greater than one
21       inch that is capable of launching a solid fuel-propelled
22       projectile or rocket.
23 Q    And that would include receipt of such an item, correct?
24 A    Yes.
25 Q    Did you have occasion to see in the affidavit where

4 (Pages 10 to 13)

EXHIBIT # ___C___
Page # ___4___ of ___62___

U.S.A. v. KANE
CASE NO. 3:06-mj-00011-JDR

TRANSCRIPT OF PROCEEDINGS
FEBRUARY 7 & 8, 2006

Page 14

1    Special Agent Campe verified the existence or lack of
2    existence of a record for this rocket pod?
3 A  Yes, records were searched and there were -- there were no
4    records in the entire state of Alaska for the registration
5    of a rocket launcher to anyone in the state of Alaska.
6 Q  Is there reference in the affidavit concerning any
7    ownership of L-39 aircraft to companies in Alaska?
8 A  In the.....
9 Q  In the affidavit. Paragraph 17.
10 A  17. Yes, there is mention that the -- our affiant, Agent
11    Campe, knows that two L-39 aircraft are owned by Regional
12    Protective Services LLC.
13 Q  Is there a link in the affidavit between Mr. Kane and
14    Regional Protective Services?
15 A  Yes, Kane is believed by the affiant to be a primary
16    manager or principal for Regional Protective Services.
17 Q  And for the record, agent, the specific statute is
18    title 26, correct, not 28?
19 A  26.
20 Q  Okay.
21 A  United States Code.
22 Q  Now, did you have occasion to participate in the execution
23    of the search warrant at the Palmer hangar last week?
24 A  Yes, I did.
25 Q  Recall what date that was?

Page 15

1 A  That was February 2nd, 2006.
2 Q  Okay. And did you find anything referencing the complaint
3    in the search of the Palmer hangar?
4 A  Yes, I did. I found two rocket launchers located within
5    the hangar located in Palmer.
6 Q  Okay. And was someone there with you at the time that you
7    found these?
8 A  Yes, an -- a weapons and firearms expert with the Bureau
9    of Alcohol, Tobacco and Firearms.
10 Q  Okay, did he appear to you to be conversant with these
11    type of devices?
12 A  Yes, he was.
13 Q  So what did you see?
14 A  I saw a -- on the second floor in a -- in a -- what could
15    be described as a warehouse area of the hangar on a -- on
16    a wooden shelf covered with a silver tarp was a -- a
17    rocket launcher.
18 Q  Okay. Describe it, please.
19 A  It was a silver conical -- or had -- it had 16 tubes. It
20    was approximately six feet long, maybe a foot or foot and
21    a half in diameter, and was a rocket launcher consistent
22    with what the ATF investigator told me that was this type
23    of rocket launcher for this type of aircraft.
24 Q  Was it consistent with the photograph that's included in
25    the complaint and the affidavit?

Page 16

1 A  Absolutely.
2 Q  You mentioned that there were 16 tubes to this rocket
3    launcher?
4 A  Yes.
5 Q  Was there a diameter that you could remember or recall
6    from the -- your inspection?
7 A  From what I know from discussing with the ATF investigator
8    that it was 57 millimeters.
9 Q  Is that over one inch to your knowledge?
10 A  To my knowledge, yes.
11 Q  Now, you were provided information that there'd be a way
12    to demilitarize or render useless, I guess, these rocket
13    pods; is that correct?
14 A  That is correct.
15 Q  What information were you provided about that?
16 A  I was provided that the -- the usual way something is
17    demilitarized or to de-- demilitarize this weapon would be
18    to make two diagonal cuts through the entire body of the
19    rocket launcher, thus cutting it into three pieces.
20 Q  Was there any evidence of that as to the two rocket pods
21    that you noticed in the hangar?
22 A  They were -- they were intact. They appeared to be
23    operational.
24 Q  The first pod was located where?
25 A  The first rocket launcher pod was located on the second

Page 17

1    floor of the Palmer hangar in a warehouse.
2 Q  And was it on what type of structure or how was it -- was
3    it contained in any fashion, in what way?
4 A  It was located on a wooden shelf. It was the third shelf
5    up from the floor. It was towards the back of the wall
6    and was covered with a tarp.
7 Q  Okay. How about the second one?
8 A  The -- the second rocket launcher was located on the first
9    floor in what looked to be a maintenance or a parts
10    storage room, and it was located inside a wooden crate.
11 Q  Okay. Was that consistent with the information obtained
12    or provided in the affidavit?
13 A  Yes.
14 Q  As to the storage of the rocket pod?
15 A  Yes.
16 Q  Did the ATF expert who was there provide you with an
17    opinion as to whether it was a firearm destructive device
18    under the statute?
19 A  Yes, he did. He indicated -- indicated that it was a
20    destructive device.
21 Q  Just a couple more things, Agent Espeland. Referencing
22    Exhibit 13 and 14 -- I'm going to take those a little bit
23    out of order from the main numbers of the case -- look at
24    number 13 for me.
25 A  Okay.

5 (Pages 14 to 17)

EXHIBIT # _____ C _____
Page # ___5___ of ___62___

U.S.A. v. KANE
CASE NO. 3:06-mj-00011-JDR

TRANSCRIPT OF PROCEEDINGS
FEBRUARY 7 & 8, 2006

Page 18

1  Q    You've seen that before?
2  A    Yes, I have.
3  Q    What does that reflect?
4  A    This reflects an Internet search of the FAA registry.  In
5       this case it was a search for aircraft registered to
6       Regional Protective.
7  Q    And it reflects aircraft registered to Regional Protective
8       Services?
9  A    Yes.
10 Q    What aircraft are those?
11 A    There is a Is-- Israel Aircraft Industries 1124, an
12      L-39ZA, another L-39ZA, and a -- and a Gulfstream jet.
13 Q    Did you have occasion to observe any Gulf -- excuse me,
14      any L-39 aircraft in the Palmer hangar when you did the
15      search?
16 A    Yes, I did.
17 Q    How many were there?
18 A    There were seven.
19 Q    And as to the last one, the Gulfstream?
20 A    Yes.
21 Q    What type of jet is that?
22 A    That's a private jet.  It is not a military fighter.
23 Q    Executive type, what type?
24 A    Executive-type aircraft.
25 Q    And that's registered to Regional Protective Services as

Page 19

1       well?
2  A    Yes.
3  Q    If you could look at exhibit -- excuse me.
4       MR. SKROCKI:  Move to admit Exhibit 13, Judge.
5       MR. SPAAN:  I'd like to see it, Your Honor.
6       THE COURT:  You may.
7       MR. SKROCKI:  (Indiscernible).
8       MR. SPAAN:  I'm sorry, Your Honor.  13?
9       MR. SKROCKI:  13.
10      MR. SPAAN:  No objection, Your Honor.
11      THE COURT:  Exhibit 13's admitted.
12           (Plaintiff's Exhibit 13 admitted)
13 Q    And Exhibit 14?
14 A    Yes.
15 Q    I believe those are two color photographs?
16 A    Yes, they are.
17 Q    Do you recognize those?
18 A    I do.
19 Q    Did you take them?
20 A    No, I did not.
21 Q    Okay.  You recognize them.  What does it depict?
22 A    It depicts an L-39 Albatross jet located in the Palmer
23      hangar.
24 Q    And that's -- was that consistent with what you observed
25      that evening when you did the search, or that morning, I

Page 20

1       guess?
2  A    Yes.
3  Q    Okay.  There are two pictures attached to Exhibit 14,
4       correct?
5  A    Yes, there are.
6  Q    And that's an L-39.  That's a two cockpit aircraft?
7  A    Yes, two-person cockpit.
8  Q    Okay.  On the back of the second photograph there's a
9       closeup of the cockpit?
10 A    Yes, there is.
11 Q    And there are two names on the front seat and the back
12      seat?
13 A    Whose name's on the back seat?
14 Q    On the back seat is written in -- or stenciled in is
15      Commander R. F. Kane.
16 A    From the affidavit is Commander Kane an a/k/a for
17      Robert F. Kane, the suspect?
18 A    Yes, it is.
19 Q    On the nose of that -- if you could turn back to the first
20      page, on the nose of that L-39 there's another -- some red
21      lettering.  Can you see that?
22 A    Yes
23 Q    And that -- can you read what that says?
24 A    The -- there's a -- a name painted onto the aircraft, High
25      Security Aviation.

Page 21

1       MR. SKROCKI:  Move for admission of 14.
2       MR. SPAAN:  No objection.
3       THE COURT:  14's admitted.
4            (Plaintiff's Exhibit 14 admitted)
5  Q    Just a couple more questions, Agent Espeland.  The rocket
6       pods that you observed in the Palmer hangar?
7  A    Yes.
8  Q    Did they have some writing on it?
9  A    Yes, they did.
10 Q    What was -- what kind of writing, could you tell?
11 A    It appeared to be Russian writing or would be described as
12      Cyrillic writing as in -- in the color of red.
13 Q    Stenciled on?
14 A    Yes.
15 Q    Is that consistent with some of the information Agent
16      Campe received in the affidavit?
17 A    Yes.
18      MR. SKROCKI:  That's all I have, Your Honor.
19      THE COURT:  Cross-examination.
20      MR. SPAAN:  Thank you, Your Honor.
21           SPECIAL AGENT DEREK ESPELAND
22 testified as follows on:
23           CROSS-EXAMINATION
24 BY MR. SPAAN:
25 Q    Agent, my name is Mike Spaan.  I'd like to talk to you for

6 (Pages 18 to 21)

U.S.A. v. KANE
CASE NO. 3:06-mj-00011-JDR

TRANSCRIPT OF PROCEEDINGS
FEBRUARY 7 & 8, 2006

Page 22

1   awhile. Could you give me your last name again, sir, so I
2   don't butcher it?
3   A   Espeland, E-s-p-e-l-a-n-d.
4   Q   And where is the case agent, Agent Campe, today?
5   A   He's sitting at the table with counsel.
6   Q   And they decided to put you on to testify. Correct?
7   A   He -- he.....
8   Q   Okay.
9   A   .....did not make that decision.
10      MR. SPAAN: Okay. Your Honor, I'm going to go through the
11  affidavit. I'd like to call Agent Campe and examine him, since
12  he wrote the affidavit.....
13      THE COURT: Let's.....
14      MR. SPAAN: .....and we do have a probable cause hearing.
15      THE COURT: Let's do one thing at a time. There's one
16  witness on the stand, so questions need to be directed to him.
17      MR. SPAAN: Okay.
18  Q   Sir, did you -- what was your involvement in this case?
19  Obviously, you were at the search at the Palmer facility,
20      did you say?
21  A   Yes.
22  Q   Okay, what other involvement did you have?
23  A   I'm not -- I'm not an investigator in this case. I'm a
24      member of the evidence response team.
25  Q   I see. So other than read Agent Campe's affidavit you

Page 23

1   don't have any knowledge regarding the facts in this case.
2   A   No, not outside of what is contained in this affidavit.
3   Q   You read the affidavit.
4   A   Yes, sir.
5   Q   Did you interview witness A, Mr. Hooks?
6   A   I did not.
7       MR. SPAAN: I have nothing further of this witness, Your
8   Honor.
9       THE COURT: Redirect.
10      MR. SKROCKI: That's it. Nothing further, Your Honor.
11      THE COURT: Agent, do you have any information that
12  records beyond what might be reflected for Alaska have been
13  checked to see if there are any launchers, rocket launchers
14  registered?
15  A   I do not know of -- I -- I know that searches were done to
16      look for Regional Protective Services and then the overall
17      search for the state of Alaska was negative, but.....
18      THE COURT: Do you know if any.....
19  A   .....that's what I know.
20      THE COURT: .....search was done using any numbers off the
21  launch -- rocket launcher that was discovered?
22  A   No, I do not.
23      THE COURT: Any other questions for this witness?
24      MR. SKROCKI: No, sir.
25      THE COURT: You may step down.

Page 24

1       (Witness excused)
2       THE COURT: Next witness.
3       MR. SKROCKI: As to the preliminary hearing, that's our
4   evidence, Your Honor.
5       MR. SPAAN: We'd call.....
6       THE COURT: Defense.
7       MR. SPAAN: We'd ask to call Special Agent Campe, Your
8   Honor.
9       MR. SKROCKI: The Government objects, Your Honor. It's a
10  preliminary hearing. It's our burden to establish probable
11  cause. Agent Campe is the case agent. We put on a witness that
12  has identified sufficient probable cause for the affidavit, as
13  well as other evidence that corroborates the witness's
14  testimony. If the Court sees it Mr. Spaan's way, he becomes
15  Mr. Spaan's witness, not the Government's witness, and no
16  discovery obligation should attach.
17      MR. SPAAN: Well, I think that's why they put him up,
18  because I'm going to ask for a 302, which I'm clearly entitled
19  to, but so far we don't have probable cause. We had a agent
20  testify who read this man's affidavit. That's what we got.
21      THE COURT: What authority do you have that they can't use
22  somebody other than the case agent?
23      MR. SKROCKI: Well, they could use whoever they want, Your
24  Honor, but they still have to establish probable cause. We have
25  the agent who is the case agent who has done this affidavit.

Page 25

1   Mr. Kane has a right to cross-examine to test the Government's
2   evidence, even at the preliminary hearing. That's all we want
3   to do.
4       MR. SKROCKI: If I might, it's.....
5       THE COURT: Anything else?
6       MR. SKROCKI: Yes.
7       THE COURT: Go ahead.
8       MR. SKROCKI: Thank you. It's a well-argued tale, Your
9   Honor, but it doesn't carry the day. The Government is
10  permitted to put on as its evidence in case in chief on this
11  issue the sworn statement of the agent in the affidavit. We've
12  also provided information from Special Agent Espeland that
13  corroborates a lot of the information that was in the affidavit,
14  and that's our evidence on this issue. If you will -- if the
15  Court sees it his way, Agent Campe can testify, it becomes -- he
16  becomes his witness, but I don't think that's appropriate nor
17  proper, nor has it been done in this court before, and there is
18  no authority to say that we have to put on the case agent in
19  matter like this.
20      THE COURT: Well, I'm not sure this has been tried before
21  exactly the way it's being presented. I think he can call the
22  witness. The issue is whether the witness can negate probable
23  cause. It's not a discovery hearing. You can't just ask him
24  all information he might have about the investigation. If you
25  think you might be able to establish something to negate

MIDNIGHT SUN COURT REPORTERS
(907) 258-7100

EXHIBIT # _____C_____
Page # ___7___ of ___62___

U.S.A. v. KANE
CASE NO. 3:06-mj-00011-JDR

TRANSCRIPT OF PROCEEDINGS
FEBRUARY 7 & 8, 2006

Page 26

1  probable cause, then you can certainly call him and pursue it.
2  Do you want him to testify?
3      MR. SPAAN: I certainly do, Your Honor.
4      THE COURT: Come forward and be sworn.
5      (Oath administered)
6      SPECIAL AGENT CAMPE: Yes, I do.
7      THE CLERK: Thank you. Please have a seat in the witness
8  box.
9          SPECIAL AGENT MATTHEW P. CAMPE
10  called as a witness on behalf of the defendant, testified as
11  follows on:
12          DIRECT EXAMINATION
13      THE CLERK: Please be sure to speak in the mike at all
14  times. Please state your full name, spelling your last name.
15  A    My name is Matthew P. Campe. Last name is spelled C-a-m-
16  p-e.
17      MR. SKROCKI: Your Honor, if I might before Mr. Spaan
18  begins his examination --
19      THE COURT: Yes.
20      MR. SKROCKI: I've been informed that his testimony will
21  be against Department of Justice regulations under the
22  Toohey (ph) regulations. It's not a matter I'm intimately
23  familiar with, but there are procedures that have to take place
24  before an agent is subpoenaed by the defense and take the stand.
25      THE COURT: He's not been subpoenaed.

Page 27

1      MR. SPAAN: He's not subpoenaed. He's in court. He's
2  subject to Your Honor's jurisdiction. I'd just like to talk to
3  him.
4      THE COURT: Well, I'll hear the authority.....
5      MR. SKROCKI: I'm not sure talking is.....
6      THE COURT: .....that you have. Do you have somebody that
7  can argue the authority that you're relying on?
8      MR. SKROCKI: Not at this time, no.
9      THE COURT: You may proceed.
10      MR. SPAAN: Thank you.
11  BY MR. SPAAN:
12  Q    Agent Campe, good day. My name is Mike Spaan.
13  A    Hello.
14  Q    How are you today?
15  A    Great.
16  Q    Good. You are the case agent assigned to this case; is
17  that correct?
18  A    Yes, sir.
19  Q    Okay. And what I'd like to do, sir, is to go through your
20  affidavit. Do you have a copy of your affidavit or could
21  one be supplied?
22  A    I have a copy right here.
23  Q    Good. On -- let's start on paragraph 2 -- or paragraph 1.
24  When you -- have you been employed by the FBI -- I believe
25  it's 10 years, correct?

Page 28

1  A    Yes, sir.
2  Q    And.....
3  A    Paragraph 2.
4  Q    Okay, that's 2, but, in any event, when you swear to an
5  affidavit it's important to be accurate, to give the judge
6  an accurate view of the evidence that you have, correct?
7  A    Absolutely.
8  Q    And you're very careful on that, aren't you?
9  A    Yes, sir.
10  Q    And you tried to be in this case.
11  A    Yes, sir.
12  Q    And other than the typos that your fellow agent made, is
13  there anything in this affidavit that you have any doubts
14  about now?
15  A    Not that I'm aware of, sir.
16  Q    Is there anything not in this affidavit that you feel you
17  should have included in the affidavit so the Judge would
18  have had a fair view of the evidence in this case?
19      MR. SKROCKI: Objection, that goes to Franks (ph) issues.
20      THE COURT: Sustained.
21  Q    It appears from paragraph 2, sir, that your specialty is
22  in white collar and fraud investigations; is that correct?
23  A    No, I've conducted those type of investigations, I've had
24  that type of training, but I've conducted a wide variety
25  of criminal investigations.

Page 29

1  Q    Okay, and have you been involved in investigations before
2  regarding munitions?
3  A    Weapons -- weapons charges, yes, sir.
4  Q    What about rocket pods?
5  A    No, sir.
6  Q    Okay. Do you have the expertise yourself, sir, to be able
7  to look at a pod -- do you have a picture of this pod?
8  A    Not with me.
9  Q    Okay.
10  A    Or, actually, there is one in the -- in the affidavit of a
11  similar pod.
12  Q    Of a similar one. What about the one you guys -- it is in
13  evidence now, correct?
14  A    Correct.
15  Q    And do we have pictures of that?
16  A    Not here.
17  Q    Okay. Is there any way that you have the expertise
18  yourself, sir, to tell whether or not these pods are
19  operational, that they're ready.....
20      MR. SKROCKI: Objection. It's irrelevant to his knowledge
21  and to the affidavit.
22      MR. SPAAN: It's absolutely relevant to the probable cause
23  and the charge against Mr. Kane.
24      MR. SKROCKI: It's -- by definition is not whether one
25  knows it's active or not.

8 (Pages 26 to 29)

EXHIBIT # _____C_____
Page # __8__ of __62__

U.S.A. v. KANE
CASE NO. 3:06-mj-00011-JDR

TRANSCRIPT OF PROCEEDINGS
FEBRUARY 7 & 8, 2006

Page 30

1    THE COURT: The Government has relied upon the first
2  witness's testimony coming from an AT&F agent.
3    MR. SPAAN: Okay.
4    THE COURT: So whether he can do it or not I don't
5  think.....
6    MR. SPAAN: Okay.
7    THE COURT: .....matters.
8    MR. SPAAN: Well, let's -- so -- I just want to know.
9    THE COURT: I know, but that's discovery. That's not the
10  purpose.....
11    MR. SPAAN: Okay.
12    THE COURT: .....of this hearing.
13    MR. SPAAN: Okay.
14  Q    How much did this -- one of these rocket pods weigh, if
15      you know?
16    MR. SKROCKI: Again, objection, Your Honor. What's the
17  relevancy to this?
18    THE COURT: Mr. Spaan, if you're going to bring out
19  testimony from him it has to be something that's going to negate
20  probable cause.
21    MR. SPAAN: Well, it is, Your Honor. What it's going to
22  show is that these things weigh several hundred pounds, that
23  it's impossible to launch from the shoulder, and that's going to
24  negate the probable cause.
25    THE COURT: I'll allow you to pursue that.

Page 31

1  Q    How much do they weigh?
2  A    Well, I had the occasion to pick one up with another agent
3      the other day and it weighed approximately 60 or 70
4      pounds.
5  Q    Okay. And how large is this? I think the other agent
6      testified -- how long is it?
7  A    It's approximately five feet long.
8  Q    Okay. And in your affidavit, sir, I believe in paragraph
9      number 3 or number 2 you indicated that -- oh, I'm sorry,
10      that's not number 2, but in the course of your
11      investigation did you work with other law enforcement
12      personnel?
13  A    Yes.
14  Q    And did they include state law enforcement personnel?
15  A    Yes.
16  Q    Local law enforcement personnel?
17  A    Yes.
18  Q    Was former Deputy Marshal Gordon Bittner involved in your
19      investigation?
20    MR. SKROCKI: Objection, Your Honor.
21    THE COURT: Sustained, unless you can show me how it's
22  going to directly lead to negating probable cause.
23    MR. SPAAN: Yes, Your Honor. Do you want an offer of
24  proof? What I have, Your Honor, is a letter that Mr. Kane wrote
25  complaining about Mr. Bittner, and it goes to the probable cause

Page 32

1  here on why Mr. Kane was charged.
2    MR. SKROCKI: Your Honor, if we're going to go into
3  something like this, I think we need to clear the courtroom.
4    THE COURT: You'll have.....
5    MR. SKROCKI: This is evidently trying.....
6    THE COURT: .....to establish a foundation, Mr. Spaan,
7  before you can bring it out through this witness.
8    MR. SKROCKI: We need an explanation because we're trying
9  this in the media at this stage -- or we're before the media,
10  and this information is not relevant to probable cause or
11  negating probable cause at all.
12    MR. SPAAN: It.....
13    THE COURT: Objection sustained.
14    MR. SPAAN: Okay. Could -- do you want me to make a
15  foundation, Your Honor?
16    THE COURT: Yes.
17  Q    Okay. Was Marshal Bittner involved in this investigation?
18    THE COURT: No, you're not making a proffer. You're
19  asking questions.
20    MR. SPAAN: To get the foundation. I've got the letter,
21  Your Honor.
22    MR. SKROCKI: Well, I think perhaps.....
23    MR. SPAAN: And if he wasn't involved in this
24  investigation, then I might not have any questions.
25    THE COURT: Well, I don't care whether he was or not at

Page 33

1  this point. I don't see how it's relevant.
2    MR. SPAAN: It would go to show prejudice in this charging
3  decision, Your Honor.
4    THE COURT: You'll have to bring that out through somebody
5  to establish a foundation other than through this witness.
6    MR. SPAAN: Okay.
7  Q    Did you ever have any occasion to determine whether or not
8      anybody in your investigative circle had any ill will
9      towards Mr. Kane?
10    MR. SKROCKI: Same objection. It has nothing to do with
11  refuting probable cause in the affidavit. The affidavit is
12  extremely factual about what witnesses said, what they said to
13  him, when they said it, and describing a particular.....
14    THE COURT: I'm going to sustain.....
15    MR. SKROCKI: .....destructive device.
16    THE COURT: .....the objection. I think that goes more to
17  an affirmative defense than it does to the probable cause.
18    MR. SPAAN: Well, Your Honor, what I'd like is to -- for
19  the Court to.....
20    THE CLERK: Mr. Spaan, I need you to either put the clip-
21  on mike on or stay by the mike.
22    MR. SPAAN: Oh, boy, I'd better put the clip-on one on
23  because I wander around. Where would that be?
24    THE CLERK: On the (indiscernible) side there.
25    MR. SPAAN: Okay.

9 (Pages 30 to 33)

EXHIBIT # _____ C_____
Page # ___9___ of ___62___

U.S.A. v. KANE
CASE NO. 3:06-mj-00011-JDR

TRANSCRIPT OF PROCEEDINGS
FEBRUARY 7 & 8, 2006

---

Page 34

1    MR. SKROCKI: While there's a break, Your Honor, this
2  isn't date, it is not signed, we have absolutely no idea who
3  wrote it, when it was written, whether it was received. May I
4  approach? That way you can see for yourself, Judge.
5    THE COURT: Yes. Where did you get this, what you're
6  handing me?
7    MR. SKROCKI: Mr. Spaan just handed me a copy.
8    MR. SPAAN: And I was going to hand Your Honor a copy. Or
9  you could have that copy. I just marked that as 1.
10    THE CLERK: Actually, that'd be A.
11    MR. SPAAN: A, excuse me.
12    MR. SKROCKI: Same objection, Judge.
13    THE COURT: I haven't heard the question yet.
14    MR. SKROCKI: Well, I'm going to -- I'm objecting to the
15  letter in its entirety. We have no idea when it was written,
16  who wrote it. It's totally.....
17    THE COURT: I don't think he's offered it yet.
18    MR. SKROCKI: Well, then I would request that the contents
19  don't be (indiscernible) on the record at this time.
20    THE COURT: It's not in evidence.
21    MR. SPAAN: I am -- and perhaps Mr. Skrocki could be kind
22  enough to show me how to get this mike out before I tear it
23  apart.
24    THE COURT: I realize you have a loud voice, Mr. Spaan,
25  but this is for recording.

---

Page 35

1    MR. SPAAN: No, I understand, Your Honor. I appreciate
2  the help. I'm sorry, I didn't know what the heck I was doing.
3  Q    Agent, I'm going to hand you without mentioning it what's
4    been marked for identification purposes only as defense A
5    and ask you if you are familiar with that letter.
6    MR. SKROCKI: Your Honor, before he answers, this would be
7  a discoverable question and issue.
8    THE COURT: He's been asked a yes or no question at this
9  point.
10  A    I -- sir, I've never seen this letter before this moment.
11  Q    Without disclosing the contents, if you had seen that
12    letter before, know where it had been sent, would it have
13    affected your view of the input that Mr. Bittner gave your
14    investigation?
15    THE COURT: Just a moment.
16    MR. SKROCKI: Objection. It has no bearing to probable
17  cause whatsoever.
18    THE COURT: Objection sustained. Put the letter aside.
19    MR. SKROCKI: I move to -- it's not admitted as evidence,
20  correct?
21    THE COURT: That's correct.
22    MR. SPAAN: No, I just marked it for identification.
23  Q    Did you -- catch up, Agent Campe. I apologize. In
24    paragraph 3, I believe, you mention that Mr. Kane was
25    known by the name of Commander Kane; is that correct?

---

Page 36

1  A    Yes, sir.
2  Q    And is that an alias or a nickname in your opinion, if you
3    have an opinion on the issue?
4  A    It's a name that he goes by.
5  Q    Okay.
6  A    Whatever you want to call that.
7  Q    Okay. And when we go to number 7 is -- what you did there
8    is just simply quoted the law, right?
9  A    Yes, sir.
10  Q    Okay, which says a destructive device means, two, any type
11    of weapon by whatever name known which will or which may
12    be readily converted to, comma, expel projectile by the
13    action of an explosion or other propellant, comma, the
14    barrel or barrels of which have a bore more than one inch
15    in diameter. Did I read that correctly?
16  A    Yes, sir.
17  Q    Okay. Now, we've had testimony that the bore was over an
18    inch, right?
19  A    Correct.
20  Q    Okay. And we've also -- I assume, and if you know maybe
21    you could answer this question, that the rocket that would
22    go in this pod is self-propelled, correct?
23  A    Yes.
24  Q    Okay. And there's nowhere -- you don't have any rockets
25    in evidence, right?

---

Page 37

1    MR. SKROCKI: Objection. That's a discoverable question.
2  Our investigation's ongoing.
3    THE COURT: Well, I think we know what's in evidence.
4  We've been sitting here.
5  Q    Right. Okay, and you would have listed the rocket in the
6    return if you found a rocket, correct?
7  A    That's correct.
8  Q    And you would have listed any activity of anybody trying
9    to buy a rocket if you'd found it. Correct?
10    MR. SKROCKI: Your Honor, that goes into the ongoing
11  investigation of the Government, and it is discovery, and I
12  object.
13    THE COURT: I think it does fall in the discovery
14  category.
15  Q    The fa-- in number 9 you said the facts in the affidavit
16    were by your own personal participation, correct?
17  A    In part, yes.
18  Q    Right, and as far as that you've prepared reports, have
19    you not? Dictated FBI reports?
20  A    Yes.
21    MR. SPAAN: Your Honor, we'd like those pursuant to rule
22  5.1.
23    MR. SKROCKI: 5.1, Your Honor.....
24    THE COURT: The Government did not put this witness on.
25    MR. SKROCKI: Yes, that's one basis. The other basis is

---

10 (Pages 34 to 37)

EXHIBIT #_____C_____
Page #___10___ of ___62___

U.S.A. v. KANE                                                          TRANSCRIPT OF PROCEEDINGS
CASE NO. 3:06-mj-00011-JDR                                                      FEBRUARY 7 & 8, 2006

Page 38

1  that you're not entitled to them at this time. He's not our
2  witness.
3        MR. SPAAN: Your Honor, if Your Honor has 5.1, it doesn't
4  talk about who called the witness. It -- we go to (h) and it
5  says that certain statements will be produced in a preliminary
6  hearing.
7        MR. SKROCKI: 5.1.
8        MR. SPAAN: Right.
9        MR. SKROCKI: Your Honor, the mechanism by way that works
10 is that it is our witness that we are calling, and I made it
11 very clear that it was not our intention to call Agent Campe,
12 nor did we. He can't use this as a way of reversing and going
13 around the discovery rules that are always in play. There's
14 case law on this issue as well that they are not entitled to
15 these reports at this stage. If we had called him, we'd be
16 turning over the reports. We didn't call him, and nothing
17 changes that fact. They are not discoverable reports.
18       THE COURT: I'm going to rule that you're not entitled to
19 the report at this stage.
20       MR. SPAAN: Okay. And we'd respectfully take exception to
21 that ruling, Your Honor.
22 Q   Number 10 is your statement, Agent Campe, that there's
23     probable cause to believe that Kane and others known and
24     unknown imported, purchased and currently possess the
25     rocket pods, and I'm just going to for ease of my voice

Page 39

1      just refer to them as a pod, but -- and designed to be
2      mounted on an L-39 jet. Is there anybody besides Mr. Kane
3      in custody at this point?
4  A   Not in this case, no, sir.
5  Q   Okay. And what is Mr. Kane's position at Security
6      Aviation, if you know it?
7  A   Mr. Kane is one of the principals in -- in Regional
8      Protective Services, and he also plays a role in Security
9      Aviation.
10 Q   Okay, when you say he's one of the principals in
11     Regional -- what was it?
12 A   Regional Protective Services.....
13 Q   What's the.....
14 A   .....LLC.
15 Q   .....basis of your statement that he's one of the
16     principals?
17 A   Based on statements of witnesses in.....
18 Q   Which.....
19 A   .....the investigation.
20 Q   Okay, did you see any paperwork that listed Mr. Kane as
21     one of the principals?
22 A   No, sir. It's -- it's -- it's actually curious that there
23     are -- is not paperwork indicating him.
24 Q   Okay, so other than witnesses, you don't have any
25     information that he's a principal in that company.

Page 40

1  A   No, witnesses have told us that he is one of the -- one of
2      the principals or partners in that company.
3  Q   Okay, and by principal or partner you would mean he has an
4      ownership interest in that business.
5  A   Yes.
6  Q   That's your testimony.
7  A   Yes.
8  Q   Now, there's no rocket pods in Mr. Kane's house when you
9      searched it, were there?
10 A   No, sir.
11 Q   No rockets?
12 A   No, sir.
13 Q   Okay, there was none in his car, were there?
14 A   No, sir.
15 Q   Is there any evidence that these pods were ever outside
16     the possession of Security Aviation?
17       MR. SKROCKI: Objection, discovery.
18       THE COURT: Sustained.
19       MR. SPAAN: Your -- if I could just be heard very briefly,
20 he is -- Mr. Kane is charged with possession of the-- knowing
21 possession of these devices. If they've never been outside of
22 Security Aviation and the only evidence that we have is somehow
23 he's a principal, that's certainly relevant to probable cause on
24 the knowing possession charge.
25       THE COURT: What we're trying here is the probable cause

Page 41

1  as to this defendant, not the company, not somebody else, not
2  another principal, and it also I think charges attempt to
3  possess or.....
4        MR. SPAAN: Right.
5        THE COURT: .....receive as well.
6        MR. SPAAN: And the offer of proof is that this line of
7  questioning would go directly to whether Mr. Kane knowingly
8  possessed those rockets and.....
9        MR. SKROCKI: We're not trying the case here, Judge.
10       THE COURT: I'll sustain the objection.
11       MR. SPAAN: All right.
12       THE COURT: I disagree with the reasoning of defense
13 counsel.
14 Q   You determined in paragraph number 11, I believe, agent,
15     that Mr. Kane was never in the military?
16 A   Yes, sir.
17 Q   That -- is that correct?
18 A   Yes, sir.
19 Q   And what rank would commander be in the military, what
20     service would that be?
21 A   That would be the Navy.
22 Q   And what kind of rank would commander be?
23 A   It would be a naval officer.
24 Q   A general-type officer or.....
25 A   No. I'm not sure. Oh four, I believe.

11 (Pages 38 to 41)

EXHIBIT # _____C_____
Page # ___11___ of ___62___

U.S.A. v. KANE
CASE NO. 3:06-mj-00011-JDR

TRANSCRIPT OF PROCEEDINGS
FEBRUARY 7 & 8, 2006

Page 42

1  Q   Okay. And who told you that Mr. Kane insisted on being
2      called by this name?
3      MR. SKROCKI: Again, discovery.
4      MR. SPAAN: It's in the affidavit, Your Honor. I assume
5  he put it in for probable cause.
6      MR. SKROCKI: He's asking for specific witness names.
7  We're not required to give those over at this time.
8      THE COURT: Sustained as to the form of the question.
9  Q   How many people told you he insisted on being called
10     Commander Kane?
11 A   Sir, I couldn't tell you the exact number. I know that
12     there were more than one witness that -- that related that
13     during the investigation.
14 Q   Did you -- how many witnesses did you talk to?
15     MR. SKROCKI: Same objection.
16     THE COURT: Sustained.
17 Q   Was there anybody -- did you ask every witness you talked
18     to whether he insisted on being called Commander Kane?
19     MR. SKROCKI: Same objection. Third time.
20     THE COURT: How is this question different?
21     MR. SPAAN: Never mind.
22     THE COURT: Withdrawn.
23 Q   It -- it's -- so you had a couple witnesses tell you that
24     he insisted be called Commander Kane; is that your
25     testimony?

Page 43

1  A   More than one.
2  Q   More than one? Okay. Now, in number 10 or 11 you have a
3      statement that Kane claims to be affiliated with the
4      United States intelligence community since 1996; is that
5      correct?
6  A   Yes.
7  Q   And I take when I read that it meant that he was not
8      affiliated with the United States intelligence community.
9      MR. SKROCKI: Objection, whether mis-- how Mr. Spaan took
10 that is irrelevant.
11     THE COURT: Sustained as to the form of the question.
12 Q   Was Mr. Kane affiliated with the United States
13     intelligence community?
14     MR. SKROCKI: Same objection, it's discovery, and it goes
15 to specific defenses. It's not relevant to probable cause or
16 not.
17     MR. SPAAN: It is. If I can be.....
18     MR. SKROCKI: (Indiscernible).....
19     MR. SPAAN: .....heard, Your Honor, he puts this in here
20 to have you think Mr. Kane is some sort of rogue cowboy and his
21 status in the intelligence community is directly related to
22 probable cause.
23     MR. SKROCKI: How? We're concerned about receipt and
24 possession of a destructive device.
25     MR. SPAAN: It's in the probable cause affidavit, Your

Page 44

1  Honor. I'm going to show that he is, in fact, involved with the
2  American intelligence community.
3      MR. SKROCKI: He might try that, but not today, Your
4  Honor. That's not relevant to this at all.
5      MR. SPAAN: It is.....
6      MR. SKROCKI: (Indiscernible).....
7      MR. SPAAN: .....in the affidavit.
8      MR. SKROCKI: .....subject of a huge dispute as to whether
9  he's involved in the intelligence community or not.
10     THE COURT: I'm going to sustain the objection. I think
11 it opens it up to too many collateral matters.
12 Q   So do you consider whether or not Mr. Kane is involved
13     with the American intelligence community to be relevant
14     on whether or not there's probable cause to charge him
15     with.....
16     MR. SKROCKI: Objection, Your Honor. Mr. Campe.....
17     THE COURT: Overruled.
18 A   Sorry, the question?
19 Q   Do you consider whether or not Mr. Kane has been involved
20     with the American intelligence community to be irrelevant
21     to the probable cause against him?
22 A   It's not necessary to the probable cause, what's charged
23     here.
24 Q   Okay. And you put it in your affidavit because?
25 A   Because it's relevant to his -- his statements

Page 45

1      throughout -- that we've learned throughout the course of
2      the investigation that are -- we believe to be not true.
3      It's -- it's relevant to a pattern of impersonation.
4  Q   Okay. So if, in fact, Mr. Kane was impersonating the
5      American -- that he was involved in the intelligence
6      community, that would be -- support probable cause.
7  A   I'm sorry, I don't understand your question.
8  Q   Okay. If, in fact, Mr. Kane was involved with the United
9      States intelligence community, then those statements
10     wouldn't be false that.....
11     MR. SKROCKI: Your Honor, I still fail to see -- he got
12 his first question and answer, and that's fine. I fail to see
13 why followup on this is necessary.
14     THE COURT: Mr. Spaan, your premise may have some merit in
15 a determination of the case, but this is a probable cause
16 determination. The Government has not relied upon that area, so
17 you can't simply raise an issue of your own that goes beyond the
18 probable cause. In other words, if there's an indictment, for
19 example, the defendant may be charged with some other
20 offenses.....
21     MR. SPAAN: Okay.
22     THE COURT: .....but we're not here to explore those
23 or.....
24     MR. SPAAN: No, I understand, Your Honor, and I apologize.
25 I wasn't raising it. I looked at it, I saw it in the affidavit,

12 (Pages 42 to 45)

EXHIBIT # _____ C
Page # ___12___ of ___62___

U.S.A. v. KANE
CASE NO. 3:06-mj-00011-JDR

TRANSCRIPT OF PROCEEDINGS
FEBRUARY 7 & 8, 2006

Page 46

1  that was put in the affidavit, and I asked him a question about
2  it.
3      THE COURT: I understand. That's.....
4      MR. SPAAN: Okay.
5      THE COURT: .....why we have a preliminary hearing is
6  because I hear evidence and I don't just read this and make a
7  determination on paper.
8  Q   Okay. Did you contact anyone to determine whether
9      Mr. Kane had ever worked in a contract capacity with the
10     FBI in Alaska in the late '80s and the early '90s?
11     MR. SKROCKI: Objection, Your Honor. It's not relevant to
12  this determination.
13     THE COURT: Sustained.
14  Q   Okay. Did you talk to anybody to see whether or not
15     Mr. Kane was involved in the American intelligence
16     community?
17     MR. SKROCKI: Standing objection to this entire line of
18  questioning.
19     THE COURT: Sustained. You'll have to establish your
20  foundation independently, not through probing and discovering
21  the Government's case. That's an indirect way and that's not
22  the way we're going to proceed.
23  Q   Okay. Well, then, why don't we proceed to the rocket pod,
24     Agent Kane. Did you -- there's a -- there's not yet
25     pictures of the actual pods, is what I understood you to

Page 47

1      say; is that correct?
2  A   No.
3  Q   Okay. Now, witness A is a law enforcement agency --
4      agent, I'm sorry -- Wilbur Hooks; is that correct?
5  A   Yes.
6  Q   And Mr. Hooks was showed this pod, correct?
7  A   He was -- yes.
8  Q   Okay. And did Mr. Hooks relate to you whether or not he
9      was told to be quiet about this?
10  A   He -- he did.
11  Q   He did. What did he say?
12  A   He said that Mr. Kane told him that the FAA couldn't see
13     this pod.
14  Q   That who could not see the pod?
15  A   The Federal Aviation Administration.
16  Q   And did he explain why the FAA couldn't see the pod?
17     MR. SKROCKI: Objection, that's discoverable, Judge.
18     THE COURT: Only if it's part of the statement that
19  Mr. Hooks is indicating that defendant said.
20     MR. SPAAN: I'm sorry, Your Honor?
21     THE COURT: Well, if -- you can ask what Mr. Hooks said
22  the defendant told him.
23     MR. SPAAN: Exactly.
24     THE COURT: So if he said more than what you just said
25  about the FAA can't see the pod, then I'll allow the question,

Page 48

1  but if it's going beyond that, no.
2  A   Okay. What was the question again, sir?
3  Q   Did he say any -- did he give you a reason why the FAA,
4      quote, couldn't see the pod?
5  A   No.
6  Q   But, in any event, Mr. Hooks informed you that Mr. Kane
7      showed a federal law enforcement officer these pods,
8      correct?
9  A   Yes, one pod.
10  Q   Okay. And witness L was witness A; is that what we
11     cleared up earlier?
12  A   Yes, sir.
13  Q   Okay. And these pods were moved to the Palmer hangar; is
14     that correct? Or both pods were seized at the Palmer
15     facility; is that correct?
16  A   Yes.
17  Q   Okay. Do you know when they were moved?
18  A   Sometime in late 2005.
19  Q   Okay. And do you know why they were moved?
20     MR. SKROCKI: Objection, Your Honor, now we're getting
21  further afield into discovery.
22     THE COURT: Sustained.
23  Q   Were other airplane parts for the -- what is the -- L-39,
24     is that correct?
25  A   Yes, L thirty.....

Page 49

1  Q   Were other parts moved to the Palmer facilities as well?
2      MR. SKROCKI: Same objection, Your Honor.
3      THE COURT: Sustained.
4      MR. SPAAN: Mr. Skrocki, my 13 is obscured by the picture.
5  Do you have -- the first two lines I can't read.
6      MR. SKROCKI: It should say witness A reported that.
7      MR. SPAAN: Okay.
8      MR. SKROCKI: See that?
9      MR. SPAAN: Yeah.
10  Q   Okay, number 13 we're talking about witness A, who is a
11     former employee; is that correct?
12  A   No, sir, witness A is Wilbur Hooks, the.....
13  Q   Oh, I'm sorry.
14  A   .....TSA law enforcement officer.
15  Q   Okay. And he told you that this pod was concealed under a
16     tarp, correct?
17  A   Yes.
18  Q   And did you put that in your affidavit to imply that they
19     tried to hide the pod?
20  A   Yes.
21  Q   Okay. But they voluntarily showed it to Mr. Hooks.
22  A   Yes.
23  Q   How many other people knew about this pod? Witnesses
24     A -- or, excuse me, B? Correct? Former employee?
25  A   Yes.

13 (Pages 46 to 49)

EXHIBIT # _____C_____
Page # __13__ of __62__

U.S.A. v. KANE
CASE NO. 3:06-mj-00011-JDR

TRANSCRIPT OF PROCEEDINGS
FEBRUARY 7 & 8, 2006

**Page 50**

1 Q   Witness C?
2 A   Yes.
3 Q   Witness D?
4 A   Correct.
5 Q   Anybody who walked in, right? Do you know how many people
6     were aware of these pods?
7 A   I don't know the exact number. I know there were numerous
8     people.
9 Q   Okay. So if they were trying to keep it secret, they
10    didn't do a very good job, you'd agree.
11 A   Yes.
12 Q   Okay. Okay, 14 we just had witnesses talking about
13    basically where they saw these pods, correct? That is
14    paragraph 14, I'm sorry.
15 A   It talks about the witnesses' observations.....
16 Q   Okay.
17 A   .....of the pods.
18 Q   Okay. Now, in number 15 this is a statement you took from
19    witness B, who is Mr. Barrons; is that correct?
20 A   Yes.
21 Q   Okay. And Mr. Barrons was what? What was his employment
22    with Security?
23 A   He was a former mechanic for Security Aviation who.....
24 Q   Okay.
25 A   .....worked on the L-39s.

**Page 51**

1 Q   To your knowledge did he have any training in munitions or
2     the repair of rocket pods?
3     MR. SKROCKI: Objection, that goes to discovery of
4     witness's knowledge.
5     THE COURT: Sustained.
6 Q   But you relied on witness B for the statement that these
7     items appeared to be operational, correct?
8 A   Yes, in part.
9 Q   Okay. And you also rela-- relied on -- and I believe your
10    fellow agent said that an ATF personnel -- person had
11    looked at them as well.
12 A   Yes.
13 Q   Did he or she offer an opinion to you that these roc--
14    these pods were operational?
15 A   Yes.
16 Q   Okay. And what was the training of that ATF agent?
17    MR. SKROCKI: Again, goes -- well.....
18    THE COURT: Is there an objection or not?
19    MR. SKROCKI: Yeah, there is, Your Honor, yes. At this
20    stage of the proceedings he's not entitled to go into the
21    background of the witnesses. The affidavit states what it
22    states.
23    THE COURT: I'll allow that question to be asked.
24    MR. SPAAN: Okay.
25    THE COURT: Overruled.

**Page 52**

1 Q   Background, please.
2 A   My understanding is that this individual, Joe
3     Griffith (ph) is his name, is a expert with the ATF in
4     munitions from Washington, D.C. who traveled here
5     specifically to identify this item.
6 Q   And what is this person named again?
7 A   Joe Griffith.
8 Q   And did he perform any tests on the rocket to
9     determine -- the pod, excuse me -- to determine whether or
10    not it was operational?
11    MR. SKROCKI: Objection, discovery.
12    MR. SPAAN: Your Honor, if this is not operational it --
13    it's not a destructive device, or readily convertible. That's
14    the law.
15    THE COURT: Overruled.
16 Q   Did he perform any tests to determine whether this pod was
17    operational?
18 A   I know he did a physical examination of the pod. I don't
19    know if he performed any particular tests.
20 Q   Okay. Do you know -- excuse me -- an individual by the
21    name of Joe Griffith again, a retired Air Force colonel?
22 A   I think there's a Security Aviation employee by that name.
23 Q   Okay. And do you know his background?
24 A   No, I don't.
25    MR. SPAAN: Your Honor, I've marked, provided to counsel,

**Page 53**

1     will provide to the witness and will provide to the Court, if I
2     could get here on this hook.....
3     THE COURT: Somebody can help hand that up.
4     MR. SPAAN: Okay. Here you go, ma'am, if you could hand
5     that up to the Court, what's been marked as Defendant's
6     Exhibit B.
7 Q   Now, is this the same individual who works at Security
8     Aviation?
9     MR. SKROCKI: Can I have a minute to finish reading, Your
10    Honor? I have some questions about the exhibit.
11    THE COURT: When the witness is finished looking at it,
12    then we'll proceed, so if you'll look up when you've read it.
13    MR. SKROCKI: Before we get -- inquire and examination,
14    Judge? Your Honor? First, the copy that I have, at least, has
15    two printed pages that are dissimilar to the third page that
16    might have been faxing of the final page and copying. I'm not
17    sure about that. But this is a legal defense, it's not a
18    probable cause defense, nor does it do anything to just
19    establish probable cause, and we don't have any way of at least
20    at this point verifying with this individual, and for the
21    record, this individual isn't the ATF examiner. This is a
22    different Joe Griffith as opposed to Earl Griffith, the ATF
23    examiner in the affidavit, but we have live witness testimony
24    here, and what we have here is an affidavit which is really a
25    legal defense.

14 (Pages 50 to 53)

U.S.A. v. KANE
CASE NO. 3:06-mj-00011-JDR

TRANSCRIPT OF PROCEEDINGS
FEBRUARY 7 & 8, 2006

Page 54

1    THE COURT: Mr. Spaan, do you have a question pending
2    before the witness?
3        MR. SPAAN: No, Your Honor. I -- I'd like to address it
4    because, again, if it's not operational, Your Honor, it's not a
5    destructive device.
6        MR. SKROCKI: Well, then, we have.....
7        THE COURT: Well, the question.....
8        MR. SKROCKI: (indiscernible).
9        THE COURT: .....is whether this is the same person.
10       MR. SPAAN: Oh, no, it's not, Your Honor. It's not the
11   same person.
12       THE COURT: All right, well, I don't think he's -- has to
13   answer any questions about your affidavits.
14       MR. SPAAN: Okay. We're going to give number C to the
15   Court and to counsel as well. And I'd move, Your Honor, for the
16   admission of B and C, because I think it's extremely relevant,
17   and, again, it's an affidavit, but it goes to the probable
18   cause.
19       MR. SKROCKI: Same objection, Your Honor. It does not go
20   to probable cause. This is an expert battle, which is not fought
21   at this stage of the proceeding.
22       THE COURT: It's not your turn to offer exhibits, but I'll
23   rule on them. They're denied.
24       MR. SPAAN: Okay.
25       THE COURT: We have live testimony and this is not the

Page 55

1    type of hearing where we get into the battle of these types of
2    issues.
3    Q    Okay. Now, when we get to number 15 again, we're still on
4         it, would you have expected the pods to have Russian
5         lettering?
6        MR. SKROCKI: Sorry to keep raising and standing, Judge,
7    but I don't see what the relevancy of whether Agent Campe
8    expected Russian, Chinese, English or Cyrillic on these
9    Russian -- on.....
10       THE COURT: Sustained.
11       MR. SKROCKI: .....these pods.
12       MR. SPAAN: Your Honor, just the offer of proof, it's in
13   the affidavit.
14   Q    And do you know where the L-39s are manufactured?
15   A    Czechoslovakia is my understanding.....
16   Q    Okay, so.....
17   A    .....or the Czech Republic.
18   Q    If these were authentic pods, they would have Russian or
19        some other language on them, correct?
20       MR. SKROCKI: Objection, foundation, and it's not
21   relevant. What agent though -- Agent Campe thought about the
22   writing on the pods is not relevant to his testimony.
23       THE COURT: You're asking him to speculate. Sustained.
24       MR. SPAAN: Okay. Well, I actually wasn't, Your Honor. I
25   was asking him.....

Page 56

1    THE COURT: Well, then, it's.....
2        MR. SPAAN: .....to explain.....
3        THE COURT: .......a discovery question.
4    Q    Okay. Do you know whether the F -- where the people at
5         Security Aviation bought these things?
6        MR. SKROCKI: Discovery question, Your Honor.
7        MR. SPAAN: It's in the affidavit, Your Honor. He
8    claims.....
9        MR. SKROCKI: Well, everything's in the affidavit.
10       MR. SPAAN: ..... he talked to a witness who said they got
11   them at eBay, on eBay, and I want to address that issue.
12       MR. SKROCKI: Your Honor, we're talking about probable
13   cause. What's in the affidavit is in the affidavit. Whether he
14   knows more about that or not is a discovery question. It's not
15   relevant.
16       THE COURT: Well, I think the pertinent concern here is
17   that this witness has to be offered to negate probable cause,
18   not to just diminish it or to make a defense. This is not a
19   jury, this is not a fact finding for guilt or innocence, but
20   whether the Government has probable cause, just like at the
21   grand jury, you don't have a chance to cross-examine Government
22   witnesses. It's -- you know, so -- I've allowed this witness to
23   be called because he was here and it's his -- basically, it's
24   his affidavit that's been quoted here, in fairness, to allow
25   some cross-examination, but that doesn't mean you can go beyond

Page 57

1    the direct examination as to what the Government's relying upon.
2    Q    Okay. Now, agent, in your affidavit offered for probable
3         cause your witness B reported that the administrator would
4         visit with the witness and discuss with him the results of
5         his search. Do you find where I'm reading that?
6    A    Yes, sir.
7    Q    Who was the administrator?
8        MR. SKROCKI: Witness identification, Judge.
9        THE COURT: What paragraph is this?
10       MR. SPAAN: It's 16, Your Honor. It's in the middle,
11   beginning with witness B.
12       MR. SKROCKI: That'd be tantamount to a witness list at
13   this stage.
14       THE COURT: Sustain the objection.
15   Q    Then let me ask you this. Did you talk with the
16        administrator yourself?
17   A    No, sir.
18   Q    Why not?
19       MR. SKROCKI: Objection, Your Honor, what's the relevancy?
20   I allowed the first one, but I don't understand what the
21   relevancy is of any further line of inquiry.
22       MR. SPAAN: Well, he's putting words, he's using hearsay
23   on hearsay, and if -- and the rea-- why he chose not to speak to
24   the administrator, I asked him a question about it, and it goes
25   directly to probable cause and the strength of this affidavit.

15 (Pages 54 to 57)

EXHIBIT # _____C_____
Page # ___15___ of ___62___

U.S.A. v. KANE
CASE NO. 3:06-mj-00011-JDR

TRANSCRIPT OF PROCEEDINGS
FEBRUARY 7 & 8, 2006

Page 58

1   MR. SKROCKI:  Well, there are certain aspects of an
2   investigation, as the Court knows, where you have to have
3   investigative security and you have to learn to discuss with
4   witnesses certain things and you don't discuss other witnesses
5   who might be closer to the investigation's origins or subjects,
6   and whether he decided that -- where he made that -- point in
7   time made that line to stop discussing things with people is not
8   relevant.
9       MR. SPAAN:  Your Honor.....
10      THE COURT:  Objection is sustained.
11      MR. SPAAN:  .....I'm going to hand -- have handed to the
12  Court what's been marked Defendant's D, which will clear up any
13  confusion, and it's a affidavit of the administrator.
14      MR. SKROCKI:  Same objection, Your Honor.  This is a --
15  not a trial, this is an evidentiary hearing.  This goes to a
16  point directly at issue.  It has no relevance to the probable
17  cause whatsoever.  It goes to maybe what their investigation
18  goes.  You can argue about that later.  They can call the
19  witness later on in front of the jury, but not here.  If the
20  Court has read this, this is not relevant to this proceeding.
21      MR. SPAAN:  If it's been demil'ed and it's not
22  operational, there is no charge.  It's directly to probable
23  cause.  This witness said this is where we got it, this is the
24  ad.  The ad says it's been demil'ed.  It's directly
25  relevant.....

Page 59

1       THE COURT:  That's a defense.....
2       MR. SPAAN:  .....to probable cause.
3       THE COURT:  .....and.....
4       MR. SPAAN:  No.
5       THE COURT:  Well, it's a defense.  The Government has --
6   if it has probable cause, then the case goes forward and we air
7   those later.
8       MR. SPAAN:  I -- again, I respectfully submit, Your Honor,
9   this would negate probable cause.
10      THE COURT:  Well, first of all, the -- this is not that
11  witness.  You're not going to present affidavits without a
12  witness testifying, but secondly, unless it completely negates,
13  then it's not valuable.....
14      MR. SPAAN:  Well, let me try it.....
15      THE COURT:  .....here at the probable cause hearing.
16      MR. SPAAN:  .....try it this way.
17      MR. SKROCKI:  Go ahead.
18      MR. SPAAN:  I'm sorry, if you had something.....
19      MR. SKROCKI:  (Indiscernible).
20      MR. SPAAN:  .....Mr. Skrocki.....
21  Q   Have you seen this eBay ad that's attached to Exhibit D?
22  A   No, I have not.
23  Q   Okay.
24      MR. SKROCKI:  Same objection under the (indiscernible)
25  line of questioning and admission of the exhibit and affidavit.

Page 60

1   He hasn't seen it.  So I object as to further line of
2   questioning.....
3       THE COURT:  I understand.
4       MR. SKROCKI:  .....and I object to.....
5       THE COURT:  Next question.
6   Q   In furtherance of your investigation and to do a complete
7       investigation did you attempt to find this ad on eBay when
8       you learned from witness B that they bought this thing on
9       eBay?
10      MR. SKROCKI:  Same objection.
11      THE COURT:  Objection is sustained.  We're not here to
12  test his investigation.
13  Q   Okay.  When witness B -- and I might have asked you this,
14      and I apologize, Agent Campe, because we've had
15      objections, which is part of what we're doing.  Did I ask
16      you what expertise witness B had in making a determination
17      whether a rocket pod was operational?
18  A   I think you asked that question.
19  Q   And your answer was?
20      MR. SKROCKI:  I think I objected to the question, and I
21  think the Court sustained it.
22      MR. SPAAN:  Well, if you did, I'm sorry, Your Honor, I did
23  not.....
24      THE COURT:  Let's move on.....
25      MR. SPAAN:  .....I'm not trying.....

Page 61

1       THE COURT:  .....to something new.
2   Q   Okay.  How many tubes are in each pod?
3   A   There are 16 launch tubes.
4   Q   Okay.  Do you know what pieces are needed in each pod to
5       be -- to make this pod operational?
6       MR. SKROCKI:  Objection as to the line of questioning
7   about operational, and this witness doesn't have the knowledge,
8   he's not the expert, and it's not relevant.
9       THE COURT:  He's not being offered as the expert in this
10  area.
11      MR. SPAAN:  No, and then the answer is if he doesn't have
12  any knowledge, that's fine, but they still got to put up
13  probable cause that a destructive device.....
14      THE COURT:  I'll allow him.....
15      MR. SPAAN:  .....was at issue here.
16      THE COURT:  .....to answer for himself on his knowledge.
17  A   I'm not an expert in these type of devices.  However, I
18  relied on experts.
19  Q   And besides witness B.
20  A   Correct.
21  Q   And the expert that you relied on would be the other
22  Griffith, correct?
23  A   Yes, Earl Griffith.
24  Q   Who you testified you don't know if he did any testing or
25  not.

16 (Pages 58 to 61)

EXHIBIT #_____C____
Page #___16___ of ___62___

U.S.A. v. KANE
CASE NO. 3:06-mj-00011-JDR

TRANSCRIPT OF PROCEEDINGS
FEBRUARY 7 & 8, 2006

Page 62

1    MR. SKROCKI: Objection, he didn't -- we didn't have --
2  that question was objected to and sustained by the Judge.
3    MR. SPAANN: No, I think it was allowed, and I think the
4  answer was, well, I know he observed it, and I think that was
5  the answer.
6    MR. SKROCKI: Well, we could revisit it and I'll make my
7  objection again.
8    THE COURT: Objection sustained.
9  Q    If -- have you -- you noted yourself in your affidavit,
10   agent, that you did some research on these pods and stuff
11   independently on -- is that correct?
12 A    Yes.
13 Q    And what kind of research did you do?
14   MR. SKROCKI: Objection, Your Honor, it's discovery. Has
15 nothing to.....
16   THE COURT: Sustained.
17   MR. SPAAN: Okay.
18   THE COURT: This is your witness.
19 Q    Were you aware, sir, that there are four different pieces
20   that each one of those tubes need before they're
21   operational?
22   MR. SKROCKI: Same objection, Your Honor.
23   THE COURT: Sustained.
24   MR. SKROCKI: Mr. Spaan is testifying about facts are at
25 issue -- that aren't in the record.

Page 63

1  Q    In your search warrant return did you note the finding of
2    any igniters or squibs for those pods?
3    MR. SKROCKI: Same objection.
4    MR. SPAANN: This is the search warrant return, Your Honor.
5    MR. SKROCKI: Objection.
6    THE COURT: The search warrant is still under seal, I
7  think.
8    MR. SKROCKI: It is.
9    MR. SPAAN: Not the return, Your Honor.
10   THE COURT: As far as I know.
11   MR. SPAAN: Okay. So the objection is what?
12   THE COURT: Sustained.
13   MR. SPAAN: That it's what, because it's under seal?
14   THE COURT: Well, we're not here to explore the search
15 warrants. You're trying to expand this hearing beyond what it
16 is.
17   MR. SPAAN: Okay.
18 Q    Would you.....
19 Q    It's not okay.
20 Q    Would you agree that without a rocket this thing is simply
21   16 pieces of steel welded together, one pod?
22   MR. SKROCKI: Objection, it calls for legal conclusion,
23 he's leading his own witness, and it's not relevant.
24   THE COURT: Are you asking for his observation?
25   MR. SPAAN: I am, indeed, Your Honor.

Page 64

1    THE COURT: You may respond.
2  A    Sir, my observation is that this is similar to a gun that
3    does not have ammunition.
4  Q    Okay. And when you.....
5    MR. SKROCKI: Whoa, whoa, whoa. I'm not sure if you were
6  done.
7  A    No, I wasn't done.
8  Q    And I apologize, agent.
9  A    There are certain prohibited weapons that -- for example,
10   a machine gun -- that in and of itself cannot fire
11   projectile without the ammunition. I would liken the
12   rocket pod to a gun without ammunition and it needs the
13   rockets, which would be like the bullets, the projectile
14   that -- that it shoots.
15 Q    Okay. And you have physically observed the pods, correct?
16 A    Yes.
17 Q    Did you observe an ignitor or squib in those pods?
18   MR. SKROCKI: Same objections, Your Honor.
19   MR. SPAAN: Now we're talking about his personal
20 observation, Your Honor.
21   MR. SKROCKI: But, Your Honor, we're really beating this
22 to death here about what he observed and whether this is
23 operational or not. I think the Court gets it.
24   THE COURT: I'll allow that question. Overruled.
25 A    igniters or squibs, I'm not even familiar with that term.

Page 65

1  Q    Did you observe any locking devices to retain the rockets
2    in the pods?
3  A    I -- I don't know what a locking device is.
4  Q    Did you observe any electrical connections to the locking
5    devices?
6  A    I did observe an electrical connection on the outside, a
7    connector plug -- actually, two of them.
8  Q    A banana plug?
9  A    I -- I don't know if it's called a banana plug.
10   It's -- it's a plug with numerous electrical connections
11   that would receive another electrical connector.
12 Q    And do you know what those are?
13 A    Electrical connectors?
14 Q    Yes.
15 A    Yes, sir.
16 Q    Okay, and for what did you -- I mean, based on your
17   observation what was this for?
18   MR. SKROCKI: Your Honor, I'm going to object again to the
19 line of questioning about operational. Mis-- this is
20 attorney.....
21   THE COURT: Sustained.
22   MR. SKROCKI: Thank you.
23   THE COURT: This goes beyond what he observed.
24 Q    Agent, did you observe the paperwork regarding the L-39s
25   owned by Security Aviation?

MIDNIGHT SUN COURT REPORTERS
(907) 258-7100

EXHIBIT #_____C_____
Page # ___17___ of ___62___

U.S.A. v. KANE
CASE NO. 3:06-mj-00011-JDR

TRANSCRIPT OF PROCEEDINGS
FEBRUARY 7 & 8, 2006

---

Page 66

1    MR. SKROCKI:  Objection, relevancy, and it's discovery.
2    MR. SPAAN:  If I could.....
3    MR. SKROCKI:  I'd like an offer of relevancy.  Why is it
4  relevant?
5    MR. SPAAN:  Well, because if he observed it he would have
6  observed that the firing control panels had been deactivated.
7  That's why it's relevant.
8    THE COURT:  Question's allowed.  Overruled.
9  A    No, I haven't observed that paperwork.
10 Q    Okay.  But do you have it someplace, you think?
11 A    We have not gone through every piece of paper that we
12    received in the search yet.
13 Q    Okay, fair enough.  Now, you testified you did not talk to
14    the administrator; is that correct?
15 A    That's correct.
16 Q    Okay.  Do you know who sold these pods?
17    MR. SKROCKI:  Same objection, it goes to the
18  Government's.....
19    THE COURT:  Sustained.
20    MR. SKROCKI:  .....investigation.
21 Q    Okay.  Did you interview -- let me try it this way.  Did
22    you interview the person who sold the pods to Security
23    Aviation?
24    MR. SKROCKI:  Same objection.
25    THE COURT:  Sustained.

---

Page 67

1  Q    As to witness B, do you have an opinion regarding his
2    truth and veracity?
3    MR. SKROCKI:  Objection, Your Honor.
4    THE COURT:  Sustained.
5  Q    Did you do anything to investigate his reputation for
6    truth and veracity?
7    MR. SKROCKI:  Standing -- again, objection, Judge.
8    THE COURT:  Seems to be the same question, different form.
9  I'll sustain.
10 Q    Do you think you would have learned more by talking to the
11    administrator yourself than relying on witness B?
12    MR. SKROCKI:  Same objection, Judge.
13    THE COURT:  Sustained.
14 Q    In paragraph 16, and I promise you, agent, we're moving
15    out of it, witness B, Mr. Barrons, reported that the
16    administrator located two rocket pods on eBay website,
17    correct?
18 A    eBay-type website.
19 Q    All right.
20 A    Not necessarily eBay.
21 Q    Do you dispute it was eBay?
22    MR. SKROCKI:  Objection, that's argumentative.  The
23  affidavit says eBay-type website.
24    MR. SPAAN:  Okay.
25    THE COURT:  Right.

---

Page 68

1  Q    And witness B told you that the administrator showed them
2    to Mr. Kane.  Correct?
3  A    Yes.
4  Q    Okay.  And then you say that witness B told you that the
5    administrator told him that Kane ordered the administrator
6    to purchase the rocket pod launchers.
7  A    Yes.
8  Q    Okay, and you have not talked to the administrator.
9  A    No, sir.
10 Q    Okay.  And witness B further reported that the
11    administrator discussed hypothetical missions which
12    included attacks on terrorist camps.
13 A    Yes.
14 Q    Now, you didn't believe that was a reality, did you now,
15    Mr. Kane [sic]?
16    MR. SKROCKI:  Objection as to what Special Agent Campe
17  thought or did not think about that statement.
18    THE COURT:  Sustained.
19 Q    Would you have talked to the administrator if you thought
20    that was serious?
21    MR. SKROCKI:  Same objection, Your Honor, Government's
22  matter's under investigation.
23    THE COURT:  Sustained.
24 Q    Okay.  Will you agree it'd be kind of tough to attack a
25    terrorist camp without any rockets?

---

Page 69

1    MR. SKROCKI:  Same objection, Your Honor.  What's the
2    relevancy of this?
3    THE COURT:  Well, interesting questions, but not the right
4    forum.  Sustained.
5  Q    Okay.  And you would agree that in order to launch a
6    mission that these pods would have to be operational,
7    correct?
8    MR. SKROCKI:  Objection, Judge, it calls for a conclusion
9  based on what experts believe is operational or not, a matter
10 not at issue.
11    THE COURT:  Again, we're here to test the probable cause,
12  and I think you're beyond that.
13 Q    Okay, and we're here that you've written in number 16 that
14    Kane made a statement like he would -- would be able
15    to do target practice now, right?
16 A    Yes.
17 Q    Okay, and that was from witness C.
18 A    Correct.
19 Q    And witness C is who?
20 A    That is Mr. Anthony.
21 Q    And, again, you would agree if the pods are
22    nonoperational, that you wouldn't do any target practice.
23    MR. SKROCKI:  Argumentative.
24 Q    You -- well, let me ask this.  Do you think it's.....
25    THE COURT:  Question's.....

---

18 (Pages 66 to 69)

EXHIBIT # _____C_____
Page # ___18___ of ___62___

U.S.A. v. KANE
CASE NO. 3:06-mj-00011-JDR

TRANSCRIPT OF PROCEEDINGS
FEBRUARY 7 & 8, 2006

Page 70

1    Q    .....possible.....
2    THE COURT:  .....withdrawn.
3    Q    Do you think it's possible that this is boy talk, nothing
4    more than that, saying this would be cool?
5    MR. SKROCKI:  Calls for.....
6    THE COURT:  Sustained.
7    MR. SKROCKI:  Thank you.
8    THE COURT:  It doesn't matter what this agent thinks.....
9    MR. SPAAN:  Okay.
10   THE COURT:  .....in terms of that.
11   Q    Now, you go further and say the crates were left in the
12   maintenance room and all those who had access to the room
13   would have seen the rocket pods, correct?
14   A    Yes.
15   Q    So if they're trying to hide it, it wasn't a very good
16   job, correct?
17   A    Not from the employees that went in that maintenance room.
18   Q    Okay.  And that's fair enough.  On 17 witness B ID'ed the
19   photos as the pods, correct?
20   A    Yes.
21   Q    Okay.  And, again, we're on 17, and you say that -- and
22   we've established evidence that Security Aviation owns two
23   L-39s, correct?  Or is that Regional Protective Services?
24   A    Regional Protective Services.
25   Q    And there is nothing in that that's illegal, correct?

Page 71

1    A    Owning the L-39s?
2    Q    Yeah.
3    A    No, sir.
4    Q    Okay.  And there's no evidence that you have that these
5    are equipped to even fire a rocket, correct?
6    MR. SKROCKI:  Objection, goes to the Government's
7    investigation and discovery.
8    THE COURT:  Sustained.
9    Q    Okay.  And we've already talked about your evidence that
10   Mr. Campe was a primary manager or principal was based on
11   witness interviews, correct?
12   A    Mr. Kane.
13   Q    Mr. Kane.  I'm.....
14   A    Yes.
15   Q    Agent Campe, I apologize.  That Mr. Kane's position was
16   based on interviews.
17   A    Yes.
18   Q    You found no paperwork to date, and, again, you have a lot
19   of stuff to look at, I understand that.  Okay.  Now, in 18
20   we say the ATF has confirmed and you gave me the name of
21   Joe Griffith, correct?
22   A    Right.  It's Earl Griffith.
23   Q    Okay.  Okay, well, because we had.....
24   A    I got my Griffiths confused.
25   Q    We had two Joes, okay, and that was my confusion in the

Page 72

1    courts.  And what is Mr. Griffith's position with the
2    BATF?
3    A    Mr. Griffith is -- an expert in munitions.
4    Q    Okay, is he an agent?
5    A    I don't know.
6    Q    Did he tell you his background in munitions?
7    A    No, sir.
8    Q    Okay.  But he told you he was an expert.
9    A    He was provided by the BATF here in Anchorage as an
10   expert, their expert.....
11   Q    Okay.
12   A    .....from Washington, D.C. in these matters.
13   Q    Okay, so he was an expert from Washington, D.C. you guys
14   called out.  You go on to say in -- let's see where I
15   am -- that -- let's see, I am in 18 -- and that the ATF,
16   Mr. Griffith told you that a destructive device if not
17   demilitarized and remains capable of expelling projectiles
18   fueled by propellants from tubes each with a bore in
19   excess of one inch, that that would meet the definition of
20   a destructive device, correct?
21   A    I think he was -- he wasn't speaking to the definition of
22   the destructive device, whether -- he was speaking of
23   whether or not it was demilitarized.
24   Q    Okay.  And did he give you an opinion on whether or not
25   this was demilitarized?

Page 73

1    A    After it was seized.
2    Q    And his.....
3    A    Not at this time.  At this time we had not seized the
4    rocket.....
5    Q    Okay.
6    A    .....pod yet.
7    Q    But he told you -- he gave you a specific way to
8    demilitarize it, which was to cut it into three different
9    pieces; is that correct?
10   A    Yes, sir.
11   Q    And could you tell me where in the law or regulation, sir,
12   I could find that that is required to demilitarize a pod?
13   MR. SKROCKI:  Objection, Your Honor, it's outside the
14   scope of this agent's knowledge, and we're not concerned about
15   rules about deregulation or not.  That's a regulatory issue
16   that's outside the scope of probable cause.
17   MR. SPAAN:  It -- I'll be brief, Your Honor.  If this has
18   been demilitarized, there's no probable cause.
19   MR. SKROCKI:  It's an expert fight, Your Honor.
20   MR. SPAAN:  It.....
21   MR. SKROCKI:  It's a litigation fight that has to be done
22   in trial, not at this stage.  It's based on what he knew at the
23   time and what the witnesses told him at the time.  He provided
24   the affidavit.
25   THE COURT:  I've heard some testimony about one way to

19 (Pages 70 to 73)

EXHIBIT #_____C_____
Page #____19___ of____62____

Page 74

1 demilitarize is to cut it into three parts. Your question is
2 whether he's relying upon a regulation or some.....
3     MR. SKROCKI: Precisely right.
4     THE COURT: .....law to.....
5     MR. SKROCKI: Right.
6     THE COURT: .....to do that. You may ask that question.
7 Q   What did you rely on to put this in your affidavit?
8 A   I relied on the expert opinion that was provided by BATF.
9 Q   Okay. Do you know, sir, whether or not that way to
10    demilitarize those pods are in the law, in the statute
11    books?
12 A   I don't know.
13 Q   In the regulations.
14 A   I don't know what -- what -- where that's derived from.
15 Q   Okay. If I told you it was derived from how the
16    Department of Defense and United States Army.....
17    THE COURT: Mr. Spaan.....
18 Q   .....disposes.....
19    THE COURT: .....let me stop you. He said he didn't know,
20 so you don't have to get your views in front of everybody by
21 asking a question that he's.....
22    MR. SPAAN: Okay.
23    THE COURT: .....not capable of answering.
24 Q   Are you familiar with any Department of Defense
25    regulations for the disposal of weapons as scrap?

Page 75

1 A   No.
2 Q   Do you know whether or not the AFT agent might have relied
3    on that to give you his views on whether these were
4    properly demilitarized?
5    MR. SKROCKI: Objection, it's speculation and it's not
6 relevant.
7    THE COURT: Sustained.
8    MR. SPAAN: Well, You Honor, it's not speculation. I've
9 got the regs.
10    MR. SKROCKI: We're not talking about speculation of his
11 regs. I'm talking about.....
12    MR. SPAAN: Oh.
13    THE COURT: The question to.....
14    MR. SKROCKI: .....speculation of the witness.
15    THE COURT: .....him has been.....
16    MR. SPAAN: No -- okay.....
17    THE COURT: Objection is sustained.
18    MR. SPAAN: .....I'm sorry. I misunderstood. I
19 apologize.
20 Q   Did you -- your testimony was you don't know who sold
21    these pods; is that correct?
22 A   Yes, sir.
23 Q   And so you don't know whether or not he as the transferor
24    registered these or not.....
25    MR. SKROCKI: Your Honor.....

Page 76

1 Q   .....because you don't have his name.
2    MR. SKROCKI: We've been over this area already. Now
3 we're going into another external matter. He's already
4 testified, asked and answered this question.
5    THE COURT: Sustained.
6    MR. SPAAN: Your Honor, if I might have one minute with
7 Mr. Kane?
8    THE COURT: Yes.
9    MR. SPAAN: Thank you, sir.
10    THE COURT: You can just put it on the table.
11    MR. SPAAN: Thank you. (Pause) Thank you, Your Honor.
12 Thank you, Agent Campe. I have no further questions of this
13 witness.
14    THE COURT: Any redirect?
15    MR. SKROCKI: One question.
16        SPECIAL AGENT MATTHEW P. CAMPE
17 testified as follows on:
18        CROSS-EXAMINATION
19 BY MR. SKROCKI:
20 Q   Agent Campe, Mr. Spaan asked you a number of times or made
21    a comment about people not doing a very good job of hiding
22    this rocket pod at Security Aviation or Regional
23    Protective Service. Remember those questions?
24 A   Yes.
25 Q   You're familiar with, Mr. Campe, are you not, that there's

Page 77

1    a nondisclosure agreement between all employees with
2    Security Aviation that threatens criminal or civil
3    penalties if they talk about anything outside the confines
4    of that business?
5 A   Yes.
6    MR. SKROCKI: That's all I have. Thank you.
7        SPECIAL AGENT MATTHEW P. CAMPE
8 testified as follows on:
9        REDIRECT EXAMINATION
10 BY MR. SPAAN:
11 Q   And as a professional agent is it your testimony this
12    would help keep a secret?
13    MR. SKROCKI: Objection.....
14 A   Yeah.
15    MR. SKROCKI: .....argumentative, speculation.
16    THE COURT: Does the witness understand the question?
17 A   Yes, sir.
18    THE COURT: You may answer.
19 A   Yes, I -- I believe it would.
20 Q   Okay. So you think if X number of people sign an
21    agreement, that they're not going to gossip about this,
22    and that's the reason they showed it to everybody at
23    Security Aviation.
24 A   I don't know the reason why they did anything, but I
25    can -- my -- you asked my belief whether that would.....

EXHIBIT # _____ C _____
Page # ___20___ of ___62___

U.S.A. v. KANE
CASE NO. 3:06-mj-00011-JDR

TRANSCRIPT OF PROCEEDINGS
FEBRUARY 7 & 8, 2006

Page 78

1  Q    Let me ask you this.
2  A    .....restrict people talking about this.
3  Q    Okay.
4  A    Yes, I do believe so.
5  Q    Did Mr. Hooks sign that agreement?
6       MR. SKROCKI:  Objection, Your Honor.  Mr. Hooks isn't an
7  employee of Security Aviation nor Regional Protective Services,
8  and it's discovery.
9       THE COURT:  Sustained.
10      MR. SPAAN:  All right.
11      THE COURT:  In what capacity within the context of the
12 content of the complaint affidavit that you signed did the
13 defendant know Mr. Hooks?  Was it in his position that he
14 occupies at the airport, or in some other position?  Or if you
15 know.
16 A    He -- he knew that he worked for TSA.  I don't know the
17      extent of his knowledge of -- of what Mr. Hooks actually
18      did for TSA.
19      THE COURT:  And when you were asked questions about
20 whether the defendant had ever been in the military, were you
21 limiting that to the United States military?
22 A    Yes, Your Honor.
23      THE COURT:  Any other questions?
24      MR. SPAAN:  No, Your Honor.
25      MR. SKROCKI:  Huh-uh.

Page 79

1       THE COURT:  You may step down.
2       (Witness excused)
3       THE COURT:  Mr. Spaan, any additional evidence?
4       MR. SPAAN:  No, Your Honor.
5       THE COURT:  Any evidence in rebuttal by the Government?
6       MR. SKROCKI:  Nothing further.  Thank you.
7       THE COURT:  The evidence is closed.  I'll hear the
8  Government's summary first, and then Mr. Spaan may reply.
9       MR. SKROCKI:  Your Honor, the issue here is probable
10 cause.  It's not a trial setting, it's not beyond reasonable
11 doubt, and there's nothing that was done on behalf of Mr. Kane
12 here to negate the probable cause that's in the affidavit nor
13 that was provided by the witness here and Special Agent Campe on
14 top of that.  The information -- and the evidence provided by
15 Agent Espeland corroborated the information in the affidavit
16 that Mr. Kane ordered these items, that he asked an employee --
17 excuse me, he asked an employee to order these items.  They
18 came, they were in crates, they were found in such a manner out
19 in Palmer in a crate, that they -- we have expert information
20 and testimony in the affidavit that these are an explosive
21 device and should have been registered.  There's no evidence
22 that they were registered by Mr. Kane or anybody else in the
23 state of Alaska.  That not only one rocket pod, but two were
24 found in the Palmer facility just even further corroborates the
25 testimony of the witnesses and the affidavit that those were

Page 80

1  three at the time they were there, and all that evidence corr--
2  because it's interlocking corroborates all the statements that
3  are in the affidavit as to their veracity, and there was nothing
4  that Mr. Spaan asked that tended to diminish in any capacity
5  whatsoever the probable cause that was -- that's in the
6  affidavit that was part of the testimony here today.  Thank you.
7       THE COURT:  Mr. Spaan.
8       MR. SPAAN:  Your Honor, what we've established is that
9  there were two rocket pods.  Nobody disagrees with that.  What
10 we haven't -- what the Government hasn't established is that
11 these pods were destructive devices.  What we have is a hearsay
12 statement from a BATF agent that Mr. Campe does not know --
13 Agent Campe, I'm sorry, doesn't know anything about his
14 background.  We have the impli-- or the insinuation that somehow
15 this is a big secret thing when we show it to a federal officer,
16 when everybody in the world knows that these pods are here.
17 We've had evidence excluded that would have showed they're not
18 operational.  We've had -- the logical conclusion with the way
19 these were shown is that these were accessories for static
20 display, which these folks got as an accessory, not as a weapon.
21      There's cases, Your Honor, and I've got -- it -- it's
22 the -- excuse me while I put on my reading glasses -- the United
23 States v. Seven Miscellaneous Firearms, which goes to the
24 terrible burden to show, one, it's operational, or two, it's
25 readily adaptable.  There's been no showing other than one

Page 81

1  hearsay statement.  There's no evidence that there was any
2  rockets.  There's no evidence that there was any other devices
3  necessary to make this thing work, even assuming you found the
4  rockets.  So what we have is that Security Aviation had in its
5  hangar two rocket pods, that Mr. Kane worked at Security
6  Aviation, never had them in his house.  I don't think there's
7  evidence that he knowingly possessed anything or that those are
8  destructive devices, Your Honor.
9       MR. SKROCKI:  Short rebuttal?
10      THE COURT:  Yes.
11      MR. SKROCKI:  What's important here, Judge, is that there
12 is absolutely no evidence from anybody from Security Aviation or
13 otherwise to say they were there for static display.  Agent
14 Campe's analogy to machine gun is right on target.  You can have
15 a machine gun, but you have to register it.  If it's full auto,
16 you have to register it.  The same applies here.  There --
17 there's no difference.  Just because it doesn't have the bullets
18 doesn't mean it can't be used once you get the bullets.  And
19 there isn't any evidence at all, even if you take his arguments
20 at face value that this was for static display, the first and
21 only time the Court heard the words static display was from Mr.
22 Spaan.
23      The evidence here attaches these rocket pods to these
24 aircraft.  We've shown the Court photographs of the aircraft.
25 You got Commander Kane's name stenciled on the back of one of

MIDNIGHT SUN COURT REPORTERS
(907) 258-7100

EXHIBIT #_____C_____
Page #___21___ of ___62___