**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　　　Plaintiff,<br>vs.<br><br>ROBERT F. KANE,<br><br>　　　　　Defendant. | 3:06-MJ-00011-JDR<br><br>**ORDER OF DETENTION<br>PENDING TRIAL SUMMARY** |

　　THIS CAUSE is before the Court upon the government's motion to detain Robert F. Kane, the Defendant pursuant to 18 U.S.C. § 3142(c). This detention order is entered pursuant to 18 U.S.C. § 3142(e) and (i).

　　**Mr. Kane** is named in a criminal complaint issued February 1, 2006, charging him with knowingly receiving and possessing and knowingly attempting to receive and posses a firearm, to wit: a 16 by 57 millimeter rocket pod/launcher, that

is not registered to him in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. §§ 5861(d) and 5871. At a preliminary hearing held February 7, 2006, I found probable cause to believe that Kane violated § 5861(d) and (f). The government moved for a detention hearing pursuant to 18 U.S.C. § 3142(e) on grounds that the defendant is a danger to the community and serious risk of flight, if released. The detention hearing was conducted on February 7 and 8, 2006. The United States appeared by Steve Skrocki, Assistant U.S. Attorney. Mr. Kane appeared with retained counsel, Michael Spaan. At the detention hearing the government produced the testimony of Derek D. Espeland, FBI, Shawn Clapp, Federal Air Marshals Service and Jolene Bronkhorst, FBI. In addition to the cross-examination of those witnesses the defendant offered evidence through Evan Griffith, Ted Smith, Ray Sleuth and David Bean.

Section 3142(f)(1) of Title 18 U.S.C. permits detention in a case that involves a crime of violence. For purposes of § 3142, a "crime of violence" means, among other things, an offense that "is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 3156(a)(4).

The crime of knowingly possessing an unregistered rocket launcher is a serious offense. The Sixth Circuit Court of Appeals has held that a rocket launcher is a "destructive device" within the statute requiring registration. See <u>United States</u>

v. Rushcamp, 526 F.2d 1380 (6th Cir. 1975). A destructive device is defined within the meaning of 26 U.S.C. § 5845(f), as "Any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter . . ." 26 U.S.C. § 5845(f)(2). In Rushcamp, the court held that the statute does not require that the device operate necessarily as originally intended. A rocket launcher is something more involved than a mere gun. It is a high powered weapon designed for use against hardened targets such as armored tanks. *See* United States v. Crippen, 371 F.3d 842, 846 (D.C. Cir. 2004).

Several courts have found possession of a destructive device in violation of § 5861(d) to be a crime of violence as defined in 18 U.S.C. § 3156(a)(4). *See* for example, United States v. Newman, 125 F.3d 863 (10th Cir. 1997)(unpublished opinion WL NO. 97-1294, 97-1295); United States v. Dodge, 846 F. Supp. 181 (D.Ct. 1994). These cases reasoned that such devices are inherently dangerous weapons for which no peaceful purpose can be seriously suggested, regardless of whether the weapons actually are used. I find the reasoning of these courts to be persuasive.

A rocket pod is certainly as inherently dangerous as a pipe bomb. The defendant's history and characteristics show that he has not been arrested for any

significant criminal activity. Yet, the evidence supports the conclusion that Mr. Kane contemplated the rocket launcher/pod being installed on the jet. Possession of such destructive device involves a substantial risk that physical force will occur against the person or property of another during the commission of the offense. Therefore, I find that possession of a unregistered destructive device is a crime of violence as that term is used in § 3142(f)(1).

      A defendant may be considered for pretrial detention in only six circumstances: when a case involves one of either four types of offenses or two types of risks. A defendant is eligible for detention upon motion by the United States in cases involving (1) a crime of violence, (2) an offense with a maximum punishment of life imprisonment or death, (3) specified drug offenses carrying a maximum term of imprisonment of ten years or more, or (4) any felony where the defendant has two or more federal convictions for the above offenses or state convictions for identical offenses, 18 U.S.C. § 3142(f)(1), or, upon motion by the United States or the Court *sua sponte,* in cases involving (5) a serious risk that the person will flee, or (6) a serious risk that the defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, a prospective witness or juror. *Id.,* § 3142(f)(2); United States v. Sloan, 820 F.Supp. 1133, 1135-36 (S.D.Ind.1993). The existence of any of these six conditions triggers the detention hearing which is a prerequisite for an order of pretrial detention. 18 U.S.C. § 3142(e). Because one

of the factors permitting detention exists here, I must next determine whether any condition or combination of conditions of release will reasonably assure the safety of others and of the community.

Detention may be based on a showing of either dangerousness or risk of flight; proof of both is not required. United States v. Fortna, 769 F.2d 243, 249 (5th Cir. 1985). With respect to reasonably assuring the appearance of the defendant, the United States bears a burden of proof by preponderance of the evidence. United States v. Portes, 786 F.2d 758, 765 (7th Cir. 1985); United States v. Vortis, 785 F.2d 327, 328-29 (D.C. Cir.), cert denied 479 U.S. 841 (1986). With respect to reasonably assuring the safety of any other person and the community, the United States bears the burden of proving its allegations by clear and convincing evidence. 18 U.S.C. § 3142(f); United States v. Salerno, 481 U.S. 739, 742, 107 S.Ct. 2095, 2099, 95 L.Ed.2d 697 (1987).

Clear and convincing evidence is something more than a preponderance of the evidence but less than proof beyond a reasonable doubt. Addington v. Texas, 441 U.S. 418, 431-33, 99 S. Ct. 1804, 1812-13, 60 L.Ed.2d 323 (1979). The standard for pretrial detention is "reasonable assurance"; a court may not order pretrial detention because there is no condition or combination of conditions which would *guarantee* the defendant's appearance or the safety of the

community. Portes, 786 F.2d at 764 n. 7; Fortna, 769 F.2d at 250; Orta, 760 F.2d 887, 891-92.

The Bail Reform Act sets forth factors that a court must consider in determining whether conditions of release can be set. 18 U.S.C. § 3142(g). Among the factors considered on the issue of flight and dangerousness to the community are the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning the appearances at court proceedings. 18 U.S.C. § 3142(g)(3)(A).

The nature of the offense constitutes one of the factors permitting detention if the condition or combination of conditions of release will not reasonably assure the safety of others of the community. The court takes judicial notice of the complaint in this cause and incorporates the evidence admitted during the detention hearing as set forth herein. The evidence admitted during the probable cause hearing demonstrates a strong probability of conviction. In the instant case the rocket launcher was not a hand held weapon but one that required mounting on an object such as a fighter plane. Kane or his company had such an airplane to which he had access. The evidence indicated that Kane intended for the rocket launcher to be mounted on an airplane.

Robert Kane has traveled to a lot of countries in the past and possessed a valid passport and an expired passport. He has resided outside the United States in such places as Singapore and the Philippines. Based upon the foreign business cards he possessed I infer that he is familiar with traveling abroad and would have contacts in other countries. He carried a brief case to work, the contents of which included $20,000 in cash, international business cards, passports and a wallet. The brief case also contained manila filed folders from various intelligence agencies and the billfold inside contained numerous bank cards representing international bank accounts from different banks. Also included were satellite telephone numbers and a smart money card that had not yet been activated.

Mr. Kane possessed a Philippines Coast Guard Auxiliary identification card for a Commander Robert P. Kane. Found at Mr. Kane's residence was a photograph of him wearing a military uniform with unearned military metals. He had a credential wallet with a fugitive recovery agent identification card bearing his photograph and another photograph and a concealed weapons permit badge with the United States Seal on it. One of the badges read "Fugitive Recovery Agent" similar to a U.S. Marshal's badge and one stated "Bail Enforcement Agent."

During the search of the defendant's residence agents recovered a Greek passport in the defendant's wife's name but she told them that she did not know why the passport existed. Recovered by agents from the Chevy Tahoe that

Kane drives was information about electronic transmittal of funds from one financial institution to another. The government produced money transfer receipts for money sent to Mr. Kane in the denominations of $400 to $600.

According to the defendant's wife Mr. Kane received $20,000 a month while she received $10,000 as a monthly allowance. Mr. Kane had in his residence guns, including assault rifles and a silencer for a .45 caliber pistol. The agents found a bill of sale in the defendant's name for a .45 caliber pistol but they did not locate that firearm. Mr. Kane possessed an identification with a Washington D.C. address and an international driver's license. The agents located a blank application for a certificate of permanent residence for the Bahamas. Among the series of business cards belonging to Mr. Kane was an account number card for HSBC Bank of the Middle East. The business cards were entities in various countries including the Ukraine, United Arab Emirates and the Soviet Union. Agents located in the defendant's office four to five AK47 type weapons inside the door leaning up against the wall. Next to them was a stack of boxes for ten FN57 hand guns and on the floor directly in front of the window was a .50 caliber rifle. In the corner was a satellite phone with a large antenna.

The third party custodians offered by the defendant posed concern about their dual loyalty to the defendant and to the court. For example, Ray Sleeth is a Golfstream pilot for Security Aviation. His responses at the hearing appeared

evasive about Mr. Kane's consultant duties, expertise and travels. He has an on going business relationship with the defendant. Mr. David Bean, a senior vice-president for Security Aviation had only been in Anchorage for about thirty days. He offered his services as a custodian because Mr. Kane "needed his help." Ted Smith withdrew as a proposed third-party custodian but his wife, Barbara did not. His testimony raised concerns about the clandestine way in which Mr. Kane apparently made a loan through him for bail for a policeman in state court. Neither Ted Smith nor Barbara Smith completed the section of the Pretrial Service Application regarding the types of firearms. According to APSIN, Mrs. Smith possess a concealed hand gun permit.

The evidence at the bail hearing suggests that Mr. Kane has a second persona unknown to even people who work under him. His life style was incongruous with that of an ordinary citizen. Even the defendant's proposed third party custodians knew very little about him, his friends or what he did for a living. Mr. Kane's wife seemed to know little about what he does or why he travels. The government put on evidence that the Anchorage FBI office has not been able to verify the defendant's claim that his foreign contacts are legitimate. According to the FBI, there is no known property in the defendant's name anywhere in the United States. Pretrial Services reports he owns property in the Philippines. I agree with the pretrial service office that Mr. Kane is viewed as a high flight risk.

The court having weighed the evidence regarding the factors found in 18 U.S.C. § 3142(g), and based upon the totality of evidence sent forth, concludes by preponderance of the evidence that Mr. Kane is a serious flight risk and should be detained pending further proceedings.[1]  I also find that no conditions or combination of conditions of release can reasonably protect other persons and the safety of the community.

For all of these reasons, I find that there are no conditions or combinations of conditions of release I could set that would reasonably assume the appearance of the defendant or protect the safety of the community if the Defendant is released.

It is, therefore, ORDERED as follows:

(1) The Defendant **Robert F. Kane** shall be detained pending trial and committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

(2) The Defendant shall be afforded reasonable opportunity for private consultation with counsel;

---

[1] It is anticipated that the United States Attorney will present this case to the Federal Grand Jury the week of February 21, 2006.

(3) On order of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which a Defendant is confined shall deliver the Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

DATED this __21st__ day of February, 2006, at Anchorage, Alaska.


    /s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge