Paul D. Stockler
ABA No. 8606032
Law Office of Paul D. Stockler
1309 West 16th Avenue
Anchorage, Alaska  99501
(907) 277-8564
(907) 272-4877/Facsimile
E-mail:  paulstockler@aol.com

Counsel for Defendant Kane

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | NO.: 3:06-cr-00022-01  JWS |
| Plaintiff, ) | |
| ) | |
| v.  ) | **DEFENDANT ROBERT F. KANE'S** |
| ) | **MOTION TO DISMISS INDICTMENT;** |
| ROBERT F. KANE, and ) | **MEMORANDUM OF POINTS AND** |
| SECURITY AVIATION, INC., ) | **AUTHORITIES IN SUPPORT OF** |
| ) | **MOTION** |
| Defendants. ) | |

COMES NOW, the Defendant, ROBERT F. KANE, by and through his attorney of record, Paul D. Stockler, and hereby moves this Court for an Order dismissing the indictment against defendant returned by the grand jury on February 22, 2006.

This motion is brought pursuant to Rule 12 of the Federal Rules of Criminal Procedure and is made upon the grounds that the indictment and each charge therein fails to charge defendant Kane with any offense against the United States or the laws thereof.  In particular, the indictment fails to set forth the essential elements of the offenses charged in that there are no

allegations which indicate a "destructive device" within the meaning of the statutes defining those offenses was possessed or attempted to be possessed by defendant Kane.

This motion is based upon the complete files and pleadings in this case, of which the Court may take judicial notice, and upon such further oral and documentary evidence which may be presented at the hearing of this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

The defendant, Robert F. Kane, has been charged by indictment with four Counts arising out of an alleged possession, attempted possession, conspiracy to possess and unlawful transportation of a "destructive device."

Count 1 of the indictment charges Kane with "Conspiracy to Receive and Possess an Unregistered Destructive Device" in violation of 18 U.S.C. § 371 and 18 U.S.C. § 2. This Count alleges Kane conspired with various unnamed individuals to receive and possess four (4) 57 mm UB-16-57U "rocket pod launchers" without registering same in the National Firearms Registration and Transfer Record.

Count 2 charges Kane with "Possession of Unregistered Destructive Devices" in violation of 26 U.S.C. § 5861(d). This Count alleges Kane and Security Aviation, Inc. knowingly received and possessed two "rocket pod launchers" which had not

Law Office of Paul D. Stockler
1309 W. 16th Avenue
Anchorage, Alaska 99501
(907) 277-8564 fax (907) 272-4877

been registered to Kane and Security Aviation in the National Firearms Registration and Transfer Record.

Count 3 charges Kane with "Attempted Possession of Unregistered Destructive Devices" in violation of 26 U.S.C. § 5861(d).  This Count alleges Kane and Security Aviation, Inc., knowingly attempted to receive and possess four (4) "rocket pod launchers" which had not been registered in the National Firearms Registration and Transfer Record.

Count 4 charges Kane with "Unlawful Transportation of Destructive Devices" in violation of 18 U.S.C. § 922(a)(4) and 18 U.S.C. § 924(a)(1)(B).

Kane has entered pleas of "not guilty" to each of these four Counts.

The "destructive devices" referenced in each of the Counts of the indictment are identified as 57 mm UB-16-57U "rocket pod launchers."  While the indictment charges an attempt to possess four of these "rocket pod launchers," the charging allegations indicate only two rocket pod launchers exist.  While the indictment uses the conclusory language that these "rocket pod launchers" are "destructive devices," there are no allegations which give notice to Kane how these launchers fall within the statutory definition of "destructive device."  It is not known whether the grand jury was presented with evidence which would allow a finding of probable cause that these rocket pod

Law Office of Paul D. Stockler
1309 W. 16th Avenue
Anchorage, Alaska 99501
(907) 277-8564 fax (907) 272-4877

launchers fall within the statutory definitions of "destructive device" for purposes of charging the offenses set forth in the indictment.

Under the statutory definitions of "destructive device," the launchers must be actually and presently capable of expelling or firing a projectile or be readily convertible to such use.  The indictment does not specify whether the "rocket pod launchers" were capable of actually firing the Soviet Air Force "S-5" rockets designed for use in those launchers or were capable of launching any other rockets or projectile.  The indictment does not specify whether the "rocket pod launchers" were readily convertible for actual use.  There are no allegations that Kane made any effort to obtain rockets for use in the launchers.  There are no allegations that Kane made any efforts to obtain necessary parts to convert or restore the launchers to an operable condition.  It is well documented that Security Aviation's intent in purchasing L-39 jets was solely a business venture.  Similar to what many other organizations are currently doing around the country, Security Aviation intended to contract out their planes to the U.S. Military for use in wargames for simulated aerial combat.  This had the potential to not only make Security Aviation money, but save the military money as well.  In order to facilitate this, L-39 planes were lawfully purchased inside the United States and with all

Law Office of Paul D. Stockler
1309 W. 16th Avenue
Anchorage, Alaska 99501
(907) 277-8564 fax (907) 272-4877

USA v. Kane, et al.                                         3:06-cr-00022-01 JWS
Motion to Dismiss                                           Page 4 of 21

appropriate FAA paperwork and approvals. When Security Aviation came across an advertisement on an e-bay website for demilitarized rocket launcher pods that could be mounted on their jets, they were purchased. If the rocket pods would have ever been mounted on an L-39; they would have been for static display at an airshow. After purchasing the pods, neither Security Aviation nor Kane ever had them mounted on an L-39. They sat for months in a hanger, one of them still in the original shipping crate. In light of the fact that both the planes themselves and the pods were demilitarized, the idea that anyone was "knowingly" obtaining a "destructive devise" or that either the planes or the pods could be readily converted into a "destructive devise" is quite a stretch of the imagination.

As discussed below, a finding that these launchers were "destructive devices" within the meaning of the statutes defining the charged offenses is an essential element of each offense charged. The indictment does not specify how the launchers qualify as "destructive devices," leaving Kane to guess as to the government's theory of the case. The indictment should be dismissed.

It is also troubling that Kane has been singled out for prosecution when a quick internet query reveals that similar aircraft rocket pod launchers are being freely marketed in the United States with no apparent concern or enforcement by the

**Law Office of Paul D. Stockler**  
1309 W. 16th Avenue  
Anchorage, Alaska 99501  
(907) 277-8564 fax (907) 272-4877

government. No other individual in the same circumstances as Kane has been charged. Kane did not order the rocket launchers. Kane did not pay for the rocket launchers. Once the pods arrived they were stored in a Security Aviation hanger. There is no evidence that Kane personally removed or transported the rocket pods at any time. Kane did not own them and would have no right to remove them from the hanger for his own personal use nor is there any evidence that he attempted to do so. A reasonable person might wonder why Kane has been singled out for prosecution. This is especially true when one considers that the government has made no effort to halt the internet sales of such devices and has failed to prosecute the seller of the launchers (although known), any individual co-conspirator of Kane (although the government and grand jury claim to know their identities), and has failed to prosecute anyone else who has had equal actual or constructive possession of the launchers. The rocket launchers were advertised on e-bay as properly demilled and ready to hang on a plane. (Attached as Exhibit A is the e-bay ad). Security Aviation purchased these without ever inspecting them and with the belief based on the ad that they were legal to own. Nothing about the ad would have placed a reasonable person on notice that purchasing these over e-bay could be illegal.

**II. ARGUMENT**

Law Office of Paul D. Stockler
1309 W. 16th Avenue
Anchorage, Alaska 99501
(907) 277-8564 fax (907) 272-4877

### A. All "Essential Elements" of an Offense Must be Pled in an Indictment; Failure to do so Renders the Indictment Subject to Dismissal.

The indictment must be a plain, concise, and definite written statement of the essential facts constituting the offense(s) charged. Fed. R. Crim. P. Rule 7(b). This includes every element of the offense charged. See, e.g., Smith v. United States, 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959).

Where the indictment fails to recite an essential element of the charged offense, the indictment is fatally flawed requiring dismissal. United States v. Omer, 395 F.3d 1087, 1089 (9th Cir. 2005)("the indictment's failure to recite an essential element of the charged offense ...is a fatal flaw requiring dismissal of the indictment."); United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999).

Where the statute under which the defendant is charged contains an exception or proviso, and where the statutory exception or proviso itself is so intertwined with the definition of the offense, such exception or proviso must be negated in the pleading. United States v. Cook, 84 U.S. 168, 21 L.Ed. 538 (1872); United States v. Prentiss, 256 F.3d 971 (10th Cir. 2001).

In Cook, supra, the Supreme Court explained:

> Where a statute defining an offense contains an exception, in the enacting clause of the statute, which is so incorporated with the language defining the offense that the ingredients of the offense cannot

Law Office of Paul D. Stockler
1309 W. 16th Avenue
Anchorage, Alaska 99501
(907) 277-8564 fax (907) 272-4877

be accurately and clearly described if the exception is omitted, the rules of good pleading require that an indictment founded upon the statute must allege enough to show that the accused is not within the exception ...as it is universally true that no indictment is sufficient if it does not accurately and clearly allege all the ingredients of which the offense is composed. <u>Id</u>. at 173-74.

Where the indictment fails to negate the exception or proviso defining the offense, the indictment is subject to dismissal. In <u>Prentiss</u>, <u>supra</u>, the court dismissed the indictment because it failed to identify the status of the accused and the victim as Indian, an essential element conferring jurisdiction on the federal courts. The <u>Prentiss</u> court at 977, noted that "one of the central purposes of an indictment is to ensure that the grand jury finds probable cause that the defendant committed each element of the offense, hence justifying a trial, as required by the Fifth Amendment." A necessary element of each of the four counts with which Kane has been charged is that the launchers are "destructive devices" within the meaning of the law. The government bears the burden of proof on that issue; Kane is not required to prove they were not "destructive devices." There is no indication in the indictment that the grand jury made a probable cause finding that these launchers fall within the statutory definition of "destructive device."

In <u>United States v. Oettinger</u>, 817 F.Supp. 819 (N.D. Ca. 1992), the court drew a distinction between affirmative defenses

**Law Office of Paul D. Stockler**  
1309 W. 16th Avenue  
Anchorage, Alaska 99501  
(907) 277-8564 fax (907) 272-4877

which a defendant must set up and prove and an essential element which is subject to the rule expressed by <u>Cook</u>, <u>supra</u>. The court noted the "clear" Ninth Circuit rule that "a defendant who relies on an exception to a statute made by a proviso or distinct clause ...has the burden of establishing and showing that he comes within the exception." <u>Id</u>. at 821. The court went on to note that "the government does not have the burden of presenting the issue until the defendant has made a showing that he comes within the exception." <u>Id</u>. The court rejected the defendant's argument that an "as provided by law" exception to an offense was an essential element. The court reasoned that the statute "when parsed, can exist without the language of the exception." <u>Id</u>.

In this case, the definition of "destructive device" can not be parsed from the statutes under which Kane has been charged. The qualification of the launchers as "destructive devices" within the meaning ascribed by the applicable statutes is an essential element of each of the charged offenses. The government bears the burden of proof on this issue and must allege how the launchers fall within the statutory definitions of "destructive devices" in the indictment. The grand jury should have been presented with evidence sufficient to make a probable cause determination that the launchers were "destructive devices." The indictment fails to allege how these

**Law Office of Paul D. Stockler**
1309 W. 16th Avenue
Anchorage, Alaska 99501
(907) 277-8564 fax (907) 272-4877

launchers qualify as "destructive devices." An essential element of the offenses charged is absent and the indictment should be dismissed.

**B. The Indictment Fails to Plead Facts Which Indicate the "Rocket Pod Launchers" Are "Destructive Devices" Within the Meaning of 26 U.S.C. § 5861(d) and/or 18 U.S.C. § 922(a)(4) and (a)(1)(B).**

The term "destructive device," as used in the statutes under which Kane has been charged, is defined by two essentially identical statutes, 26 U.S.C. § 5845(f) and 18 U.S.C. § 921(a)(4). These statutory definitions of "destructive device" require that the alleged device or weapon "will" or "may be readily converted to, expel a projectile by the action of an explosive or other propellant...." The indictment fails to plead any facts which bring the "rocket pod launchers" within the statutory definition of "destructive device." The conclusory allegations of the indictment fail to give Kane notice of the crimes of which he has been charged

18 U.S.C. § 921(a)(4) defines "destructive device" as:

(A) any explosive, incendiary, or poison gas-
    (i) bomb,
    (ii) grenade,
    (iii) rocket having a propellant charge of more than four ounces,
    (iv) missile having an explosive or incendiary charge of more than one-quarter ounce,
    (v) mine, or
    (vi) device similar to any of the devices described in the preceding clause;
(B) any type of weapon (other than a shotgun or a shotgun shell which the Attorney General finds is generally recognized as particularly suitable for

**Law Office of Paul D. Stockler**
1309 W. 16th Avenue
Anchorage, Alaska 99501
(907) 277-8564 fax (907) 272-4877

USA v. Kane, et al.                                              3:06-cr-00022-01 JWS
Motion to Dismiss                                                Page 10 of 21

        sporting purposes) by whatever name known which **will**, or which may be **readily converted to**, expel a projectile by the action of an explosive or other propellant, and which has any barrel with a bore of more than one-half inch in diameter; and ( C) any combination of parts either designed or intended for use in converting any device into any destructive device described in subparagraph (A) or (B) and from which a destructive deice may be **readily** assembled ....(emphasis added).

For purposes of 26 U.S.C. § 5801 et seq., "destructive device" is, similarly, defined by 26 U.S.C. § 5845(f) as:

    ...(1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, ( C) rocket having a propellant charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which **will**, or which **may be readily converted to**, expel a projectile by an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes; and (3) any combination of parts either designed or intended for use in converting any device into a destructive device which is neither designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be **readily assembled** ...." (emphasis added).

The *sin qua non* of a "destructive device" as defined by the above referenced statutes is that the device (the "rocket pod launchers") "will," or may be "readily converted to," expel a rocket or other projectile. If the alleged "destructive device" will not, or may not be readily converted to, fire a projectile, then the possession or attempted possession of such a device

Law Office of Paul D. Stockler
1309 W. 16th Avenue
Anchorage, Alaska 99501
(907) 277-8564 fax (907) 272-4877

does not constitute an offense against the United States and will not support a charge under Title 18 and/or Title 26.

In <u>United States v. Wada</u>, 323 F.Supp.2d 1079 (D. Ore. 2004), the District Court found the explicit language of 18 U.S.C. § 921(a)(3)(A) requires that the alleged weapon or "destructive device" be actually capable of firing a projectile or must be capable of being readily converted to firing a projectile before it meets the statutory definition of "destructive device." The court reasoned:

> ...18 USC 921(a)(3)(A) is not written in the past tense and, in particular, does not speak in terms of whether an item "was" designed to expel a projectile. The statute explicitly applies to any weapon that "will," "is designed to," or "may be readily converted to" expel a projectile. These words – "will," "is designed to," and "may readily be converted to" – must be given their ordinary meaning. See <u>Bailey v. United States</u>, 516 U.S. 137, 144-45, 133 L.Ed.2d 472, 116 S.Ct. 501 (1995) (citations omitted). Under any ordinary interpretation, "will" does not mean "was," "is designed to" does not mean "was designed to," and "may readily be converted to" does not mean "was converted to." Thus, the Court rejects the government's argument that USSG 2K2.1(b)(1)(D) applies to Count One on the grounds that each of the modified "firearms" originally was designed to expel a projectile by the action of an explosive. <u>Id</u>. at 1082.

Although the court in <u>Wada</u>, <u>supra</u>, dealt with a penalty enhancement under the Federal Sentencing Guidelines, its reasoning is equally applicable in determining whether an item qualifies as a "destructive device" sufficient to support a charge under Tile 18 and/or Title 26.

Law Office of Paul D. Stockler
1309 W. 16th Avenue
Anchorage, Alaska 99501
(907) 277-8564 fax (907) 272-4877

Under the definitions set forth by both 18 U.S.C. § 921(a)(4) and 26 U.S.C. § 5845(f), if the "rocket pod launchers" allegedly possessed, or attempted to be possessed, by defendant Kane are not operable and, in their present state, will not fire a rocket or other projectile then those launchers are not "destructive devices" and can not support the charges of the indictment. Under the alternate definition of "destructive device" offered by both statutes, if the "rocket pod launchers" are not "readily convertible" to fire a rocket or other projectile then possession or attempted possession of those launchers will not support the charges of the indictment.

The statutes defining "destructive device" do not define what is meant by the phrase "readily converted to." In the absence of a statutory definition, the courts must look to the common meaning or use of the term or phrase. In <u>United States v. Seven Miscellaneous Firearms</u>, 503 F.Supp. 565 (D.Col. 1980), the court noted the absence of any statutory definition of the term "readily" in the definition of "destructive device." The court noted:

> If Government Exhibits 1 through 4 were not designed or manufactured to shoot, or cannot be readily restored to shoot, automatically, they are not firearms within the coverage of the Act. These words are not defined in the Act. Accordingly, the Court will apply the normal and usual meaning attributed to these words. n. 6.(e.g. <u>United States v. New Mexico</u>, 536 F.2d 1324, 1327-1328 (10th Cir. 1976); see 2A C. Sands, Sutherland on Statutes and Statutory Construction, sec. 45.08, 47.28 (4th ed. 1973)).

**Law Office of Paul D. Stockler**  
1309 W. 16th Avenue  
Anchorage, Alaska 99501  
(907) 277-8564 fax (907) 272-4877

> **"Readily,"** according to Webster, means: **without hesitation; without delay; quickly; without difficulty** .... Id. at 573.

In Seven Misc. Firearms, supra, the court had the benefit of expert testimony which established that conversion of "gyro-jet" pistols, a prototype of a Colt AR-15 which could not be fired because of missing parts and a welded barrel (Ex. 1; Id at p. 567); an H&K 7.62 caliber rifle designed for NATO use but with missing parts and a plugged barrel (Ex. 2; Id. at pp. 567-68); and other weapons with missing parts could have been converted to use but that it would be costly and time consuming to alter or restore the weapons to operable condition. Based on the expense, expertise and time which would be involved, these weapons were found not to be capable of being "readily converted to" a firearm or destructive device. Id at 573.

In United States v.16,79 Molso Italian .22 Caliber Winlee Derringer Convertible Starter Guns, 443 F.2d 463 (2nd Cir. 1971), the court held that starter guns with which were "readily convertible" to fire live ammunition within three to twelve minutes were dangerous weapons and subject to forfeiture. The short length of time in which the guns could be converted was essential to the court's finding.

In this case, the "rocket pod launchers" are an assembly of tubes and wiring with no firing mechanism and no rockets. Conversion of the launchers to an operable condition would,

USA v. Kane, et al.  
Motion to Dismiss  
3:06-cr-00022-01 JWS  
Page 14 of 21

Law Office of Paul D. Stockler  
1309 W. 16th Avenue  
Anchorage, Alaska 99501  
(907) 277-8564 fax (907) 272-4877

undoubtedly, require a high level of expertise and considerable time in restoring them to an operable condition. It is not even known if all the parts necessary for firing are available. The government has not alleged that either Kane or Security Aviation owned, possessed or attempted to possess the Soviet Air Force "S-5" rockets designed for use in those launchers or were capable of ever obtaining any. It is safe to assume that conversion of the launchers to fire rockets would take much longer than the three to twelve minutes involved in the above referenced case. In any event, the grand jury should have been presented evidence of the length of time necessary to convert the launchers to a condition where they could fire rockets before making any finding that these launchers are "destructive devices" sufficient to support the charges against Kane. It is obvious the grand jury was presented no such evidence, that there is no basis for a finding that the launchers are "destructive devices," and the conclusory language of the indictment that the launchers are "destructive devices" should be disregarded and the indictment dismissed. The search warrants reveal that one launcher was still sitting in the crate it came in 4 months after receipt by Security Aviation and the other launcher was just sitting in the warehouse. There is no evidence they were attached to an aircraft nor how long it would take to attach them to an aircraft, make them operable, the time

Law Office of Paul D. Stockler  
1309 W. 16th Avenue  
Anchorage, Alaska 99501  
(907) 277-8564 fax (907) 272-4877

and expense involved and how rockets could have been obtained including the time to obtain such rockets, how you would obtain the rockets and the time needed to prepare this entire system for firing.

The Counts of the present indictment are conclusory and do not specify whether the "rocket pod launchers" will or may be readily convertible to fire a projectile. It is beyond any legitimate, good faith dispute that the "rocket pod launchers" allegedly possessed were not ready to fire a rocket or projectile without substantial additional work and parts needed which were not present. The indictment and each count therein should be dismissed.

### C. The Indictment Fails to Plead the Required "Mens Rea" of which Kane has been Charged and the Indictment Should be Dismissed.

An essential element of each offense which Kane has been charged with is that Kane knew that the "rocket pod launchers" had the characteristics which bring them within the statutory definitions of "destructive device." There is no mention of this mens rea in the indictment. The indictment simply states, "[t]o knowingly receive and possess 4 rocket pod launchers, a destructive devise, without registration." Aside from the fact that there were only two rocket pod launchers, and while Kane certainly knew that the pods had been received and knew that the pods were in the possession of Security Aviation, he undeniably

Law Office of Paul D. Stockler
1309 W. 16th Avenue
Anchorage, Alaska 99501
(907) 277-8564 fax (907) 272-4877

did not know, nor could have known, that the pods had the characteristics which would bring them within the statutory definitions of "destructive devise" because the pods had been advertised as demilitarized and ready to mount on a plane.

In <u>Staples v. United States</u>, 511 U.S. 600, 114 (S.Ct. 1793), 128 L.Ed.2d 608 (1994), the Supreme Court held that in order to obtain a conviction under the National Firearms Act, 26 U.S.C. § 5861(d), the government must prove beyond a reasonable doubt that the defendant knew that the features of the weapon possessed brought the weapon within the scope of the Act. At trial, the defendant had testified that he was ignorant of the weapon's automatic firing capability. The district court rejected the defendant's contention that section 5861(d) contained a mens rea requirement. The defendant's conviction was affirmed by the Court of Appeals. The Supreme Court reversed and held that, while the statute was silent as to a mens rea requirement, that silence and the common law, especially because of the harsh penalty attached to a violation of section 5861(d), require proof of knowledge on the part of the accused that the firearm comes within the scope of the Act.

The Ninth Circuit in <u>United States v. Gergen</u>, 172 F.3d 719 (9th Cir. 1999) similarly noted that the mens rea requirement is an essential element of a 26 U.S.C. § 5861(d) offense. The court reversed a conviction because a supplemental jury

instruction stated that the government was not required to show that defendant specifically knew of a gun's (sawed off shotgun's) characteristics. The court found the instruction was clear error and reversed the conviction. It should make no difference whether the item possessed is a shotgun, machine gun, or "rocket pod launcher." Mens rea is an essential element of the offense and, if not pled, should render the indictment subject to dismissal.

The indictment in this case fails to plead that Kane knew, or even reasonably should have known, that the "rocket pod launchers" constituted "destructive devices" subject to regulation and criminal penalties. They were purchased off an internet e-bay site and advertised across the nation's computer airwaves as legal. There is no known prior prosecution of persons selling or purchasing this or similar items. The launchers were marketed as, and could have been used as, household ornamental items. There was no attempt to purchase any components which would have rendered the launchers operable. There is no evidence that rockets were acquired or attempted to be acquired for use with the launchers. Under these circumstances, the only plausible explanation is that the launchers were acquired or attempted to be acquired for entirely innocent purposes.

Law Office of Paul D. Stockler
1309 W. 16th Avenue
Anchorage, Alaska 99501
(907) 277-8564 fax (907) 272-4877

Since the indictment fails to plead mens rea, an essential element of the crimes charged, the indictment should be dismissed in its entirety.

### III. CONCLUSION

For the reasons set forth above, the indictment and each count therein, should be dismissed.

DATED this 22nd day of March, 2006 at Anchorage, Alaska.

```
                                LAW OFFICE OF PAUL D. STOCKLER
                                Counsel for Defendant Kane

                                By: s/ Paul D. Stockler
                                    1309 W. 16th Avenue
                                    Anchorage, Alaska  99501
                                    Phone: (907) 277-8564
                                    Fax: (907) 272-4877
                                    E-mail: paulstockler@aol.com
                                    Alaska Bar No.: 8606032
```

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day
of March, 2006, a true and correct
copy of the foregoing document was
served electronically on the following:

Steven E. Skrocki, Assistant U.S. Attorney
James N. Barkeley, Assistant U.S. Attorney
Michael R. Spaan
James L. Kee
Kevin T. Fitzgerald
Robert C. Bundy
Allen F. Clendaniel

s/ Paul D. Stockler

**Law Office of Paul D. Stockler**
1309 W. 16th Avenue
Anchorage, Alaska 99501
(907) 277-8564 fax (907) 272-4877

USA v. Kane, et al.                                    3:06-cr-00022-01 JWS
Motion to Dismiss                                      Page 19 of 21