Kevin T. Fitzgerald, Esquire
ABA No. 8711085
Ingaldson, Maassen &
Fitzgerald, P.C.
813 West Third Avenue
Anchorage, Alaska 99501
(907) 258-8750
(907) 258-8751/Facsimile
E-mail: kevin@impc-law.com

Counsel for Defendant Kane

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA, )
                          ) No. 3:06-cr-00022-01 JWS
           Plaintiff,     )
                          )
      v.                  )
                          )
ROBERT F. KANE, and       )
SECURITY AVIATION, INC.,  )
                          )
           Defendants.    )
_____  )

**MOTION AND MEMORANDUM TO SUPPRESS FRUITS
OF UNCONSTITUTIONAL SEARCH OF ROBERT KANE'S PRIVATE
RESIDENCE AND VEHICLE ON FEBRUARY 2, 2006**

Comes now defendant, Robert F. Kane, by and

through attorney, Kevin T. Fitzgerald, and hereby moves the

court, pursuant to Rules 12 and 41 of the Federal Rules of

Criminal Procedure, and further, his rights under the

Fourth, Fifth, and 14th Amendments to the U.S. Constitution

to be free from unreasonable search and seizure and arrest

and to due process, and requests the following relief: that

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

the court suppress the fruits of the unconstitutional searches of Robert Kane's private residence and Chevrolet Tahoe, Alaska license ESS580, on February 2, 2006.

MEMORANDUM

I.    INTRODUCTION

Comes now defendant, Robert F. Kane, by and through attorney, Kevin T. Fitzgerald, and hereby moves the court for the entry of an order suppressing the fruits of the unconstitutional searches of Robert Kane's residence and vehicle on February 2, 2006.

An evidentiary hearing is requested, and in fact is legally required, to establish the record upon which to evaluate whether the government can meet its heavy burden of justifying these unconstitutional invasions of constitutionally recognized privacy.

II.    STATEMENT OF ANTICIPATED EVIDENTIARY FACTS

Defendant Kane (hereinafter "Kane") makes the following proffer based upon the anticipated testimony of the witnesses involved:

1.    During the early morning hours of February 2, 2006, Robert Kane was in his residence located at 6212 Magna View Drive, Eagle River, with his wife, Maria Karen Gamalinda Kane (hereinafter "Gamalinda"), and the couple's

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

three young children.  At approximately 6:30 a.m. the

couple's dogs began to bark, which typically signifies that

an individual or individuals are on the property.  When

Robert Kane opened the garage door which opens into the

driveway facing Magna View Drive to investigate, he was met

by well over a dozen government agents, many of whom had

their weapons drawn and pointed at Kane.  Kane was

immediately directed to his knees, handcuffed and detained.

Kane remained under the guard of not less than four agents

in the garage, while other agents spread out and began

searching the garage.  After approximately ten minutes in

the frigid open garage, Kane, who was not clothed for the

cold, requested to be allowed to enter the anteroom inside

the door to the garage, where he remained under guard for

another approximately 45 minutes.  During this period

agents spread out and began searching the residence.  Kane

was then directed to the kitchen area where he largely

remained before a "transport vehicle" arrived and

transported him to Anchorage.  All the while, government

agents searched the residence.  At no time did Kane consent

to the search of his residence.  Indeed, at one point Kane

was requested to give his consent, which he refused.  Kane

also did not consent to the search of a black Chevy Tahoe,

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Suppression Motion

Alaska license ESS580, which was parked in the driveway.
See Affidavit of Robert Kane filed herewith.

2.  Immediately after detaining Kane in the
garage, agents contacted Kane's wife, Gamalinda.  Gamalinda
was immediately directed to the kitchen, where she remained
for well over an hour.  Upon entry agents began to search
the residence, which they continued to do for the next
several hours.  Gamalinda was eventually permitted to
retrieve the children from downstairs, while being escorted
by an armed agent.  She was then detained in a room near
the garage while agents continued to search the residence,
some even bringing equipment into the house.  Gamalinda was
then contacted by an immigration agent who directed her to
the kitchen, separating her from her children.  The
immigration agent directed that Gamalinda contact
individuals believed to be among her husband's FBI
contacts.  When Gamalinda hesitated she was informed that
she needed to cooperate or that she would be deported.
Another agent affirmed that Gamalinda would be deported if
she did not cooperate.  What followed was an extensive
interrogation of Gamalinda by both immigration officials
and the FBI, including many questions concerning her
husband's activities and the couple's travel and

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Suppression Motion

relationship.[1]  All the while, agents continued to have the run of the residence.  Some time after her husband had been removed from the residence, Gamalinda was presented with a consent to search form.  Bearing in mind that she needed to cooperate or be deported, she was also informed by an FBI agent that her husband had already signed or granted a similar consent.  Given this, Gamalinda signed the form. Agents continued to search the residence.

   3.  Later, after agents found car keys in the residence, Gamalinda was asked questions about the vehicles parked in the driveway.  One of the vehicles was the black four-door Chevrolet Tahoe, Alaska license ESS580. Gamalinda identified that vehicle as her husband's. Gamalinda observed agents open the vehicle and pull numerous items from the vehicle.  Later, the items were returned to the vehicle to "await a warrant."

   4.  Subsequently, at 8:23 p.m. and 9:13 p.m. the government obtained warrants for the residence and vehicle,

---

[1] Gamalinda, who was in custody, was not Mirandized before, during or after the lengthy interrogation.  Given the threats to deport her if she did not cooperate, Gamalinda's statements were also not voluntary.  Thus, Gamalinda's statement(s) must also be suppressed.  Miranda v. Arizona, 384 U.S. 436 (1966); Escobedo v. Illinois, 378 U.S. 478 (1964); Edwards v. Arizona, 451 U.S 477 (1981); Fellers v. United States, 124 S.Ct. 1019 (2004); see also, Lynumn v. Illinois, 372 U.S. 528 (1963); United States v. Tingle, 658 F.2d 1332, 1336 (9th Cir. 1981).

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Suppression Motion

respectively.  Apparently, the magistrate judge was not

informed that searches of both the residence and vehicle

had already occurred, or that Gamalinda had ostensibly

consented to the search of the residence.

III. THE LAW

The following analysis is provided to assist the

court with issues relevant to the evidentiary hearing.

A.   Protective Sweep

There is recognized under federal law a

"protective sweep" exception to the warrant requirement.

However, a "protective sweep" is a quick and limited search

of premises, incident to an arrest and conducted to protect

the safety of police officers or others.  It is narrowly

confined to a cursory visual inspection of those places in

which a person might be hiding.  Maryland v. Buie, 494 U.S.

325, 327, 110 S.Ct. 1093-94, 108 L.Ed.2d 276 (1990); United

States v. Wilson, 36 F.3d 1298, 1305-06 (5th Cir. 1994)

(search of hotel room doesn't fit within "protective sweep"

exception because it wasn't made incident to an arrest).

It is limited in time as well as scope.  United States v.

Noushfar, 78 F.3d 1442, 1448 (9th Cir. 1996) (quoting Buie

"a protective sweep may last 'no longer than it takes to

complete the arrest and depart the premises'").

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Suppression Motion

B.    Consent Search

Whether consent to search was voluntarily given is "to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). It is the government's burden to prove that the consent was freely and voluntarily given. See Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968); United States v. Chan-Jimenez, 125 F.3d 1324, 1327 (9th Cir. 1997). 'The existence of consent to a search is not lightly to be inferred,' United States v. Impink, 729 F.2d 1228, 1232 (9th Cir. 1984); Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 35 L.Ed.2d 854 (1973); Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). That burden is heaviest when consent would be inferred to enter and search a home, for protection of the privacy of the home.

> The government must prove that consent was given. It must show that there was no duress or coercion, express or implied. The consent must be 'unequivocal and specific' and 'freely and intelligently given.' There must be clear and positive testimony. "'Courts indulge every reasonable presumption against waiver' of fundamental constitutional rights." Coercion is implicit in situations where consent is obtained under color of the

**INGALDSON, MAASSEN & FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

> badge, and the government must show that
> there was no coercion in fact.

United States v. Page, 302 F.2d 81, 83-84 (9th Cir. 1962)

(footnotes omitted).

The Ninth Circuit has identified five factors to be considered in determining the voluntariness of consent to a search. They are: (1) whether a defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the defendant was notified that she had a right not to consent; and, (5) whether the defendant had been told a search warrant could be obtained. United States v. Jones, 286 F.3rd 1146, 1150 (9th Cir. 2002). These factors are only guideposts, not a mechanized formula to resolve the voluntariness inquiry. Here, to the extent these factors apply to Gamalinda, they militate against finding that her consent was voluntary. However, there are three additional factors present here which clearly vitiate the consent.

First, Gamalinda was threatened with deportation if she did not cooperate.[2] Consequently, Gamalinda's "consent" cannot properly be deemed voluntary. See Lynumn v. Illinois, 372 U.S. 528, 534, 83 S.Ct. 917, 9 L.Ed.2d 922

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

(1963) (all of the officers on the scene told defendant that her infant children would be taken from her if she did not cooperate; held; confession was not voluntary but coerced); United States v. Tingle, 658 F.2d 1332, 1336 (9th Cir. 1981) (confession rendered involuntary by, inter alia, police officers' unmitigated statements that defendant would not see her child "for a while" if she did not cooperate, and, referring specifically to her child, that she had "a lot at stake").

Second, Gamalinda was informed falsely that her husband had consented to a search of the residence.  It is well established that there can be no effective consent to a search or seizure if that consent follows an express or implied claim by police that they can immediately proceed to make the search in any event.  Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968):

> When a prosecutor seeks to rely upon
> consent that justified a lawfulness of a
> search, he has the burden of proving that
> the consent was, in fact, freely and
> voluntarily given.  This burden cannot be
> discharged by showing no more than an
> acquiescence to a claim of lawful
> authority.

Id. at 548-49, 88 S.Ct. at 1792.

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

---

2    Of course, the unfortunate irony is that despite "cooperating," deportation proceedings have been initiated

Finally, even if Gamalinda's consent is somehow deemed voluntary, she did not have the authority to consent to a search of the residence, given Kane's objection to the same. See Georgia v. Randolph, 547 U.S. _____ (2006) (No. 04-1067 – decided March 22, 2006).

C.   The Warrants: 3:06-mj-019-JDR (Residence)
     3:06-mj-021-JDR (Vehicle)

It is axiomatic that in applying for a warrant an affiant owes a duty of candor to the court. A review of the supporting affidavit for the warrant authorizing the search of both the residence and the vehicle fails to reveal that Gamalinda had been extensively interrogated, or that searches of both the residence and vehicle had already occurred.

1.   The Warrants Are Tainted Due To
     Material Omissions/Misrepresentations

Case law arising out of this district establishes that even in the post-Leon era, proceeds of a search warrant must be suppressed if the application contains material omissions or misrepresentations. In United States v. Hall, 113 F.3d 157 (9th Cir. 1997), the District Court for the District of Alaska applied the test of Franks v. Delaware, 438 U.S. 154 (1978). For a more extensive

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

against Gamalinda.
USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Suppression Motion

analysis of the basis for this ground for suppression, see Security Aviation's contemporaneously filed motion to suppress on the basis of <u>Franks v. Delaware</u>, which is incorporated here by reference.

2.    <u>The Affidavit In Support Of The Two Warrants Lacks Probable Cause</u>

In order to determine whether there was probable cause to issue a valid search warrant for Kane's residence and vehicle, the court must consider Agent Campe's affidavit in support of his application for the warrants. See <u>Massachusetts v. Upton</u>, 466 U.S. 727, 104 S.Ct. 2085 (1984) ("requirement that probable cause for the issuance of a warrant is to be applied. . .in the light of the 'totality of the circumstances' made known to the magistrate").   The test is whether under all the circumstances, there is a "fair probability" that contraband or evidence of criminal activity will be found in the place to be searched.   <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983); <u>United States v. Alexander</u>, 761 F.2d 1294, 1300 (9th Cir. 1985).   Here, a review of Agent Campe's supporting affidavit[3] reveals that it lacks sufficient

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

---

[3]    The warrants themselves do not identify the supporting affidavit, but circumstances suggest that the affidavit identified as 3:06-mj-010-JDR is the supporting affidavit.

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Suppression Motion

probable cause that <u>contraband or evidence of criminal</u>

<u>activity</u> would be found in Kane's residence or vehicle.

The criminal activity alleged in the affidavit is

contained in "ATTACHMENT B," which provides, in pertinent

part, as follows:

- 26 U.S.C. § 5861(d) & (k) – Possession and Importation of an Unregistered Destructive Device
- 18 U.S.C. § 371 – Conspiracy to Possess an Unregistered Destructive Device
- 18 U.S.C. § 922(1) – Unlawful Importation of a Firearm
- 18 U.S.C. § 371 – Conspiracy to Unlawfully Import a Firearm
- 18 U.S.C. § 1349 – Conspiracy to Commit Bank Fraud
- 18 U.S.C. § 1344(1) & (2) – Bank Fraud
- 18 U.S.C. § 371 – Conspiracy to Make False Statements to a Financial Institution
- 18 U.S.C. § 1014 – False Statements to a Financial Institution
- 18 U.S.C. § 1343 – Wire Fraud

These alleged charges can be separated into two

broad categories: (1) evidence of the possession and

transportation of an unregistered destructive device; and,

(2) financial fraud. However, a review of the supporting

affidavit demonstrates that there is little <u>probability</u>

that Kane was involved in either possession of an

unregistered destructive device or financial fraud, <u>much</u>

**INGALDSON, MAASSEN & FITZGERALD, P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Suppression Motion

<u>less</u> that evidence of such offenses would be located at his residence or in his automobile.

Paragraphs 32-37 of the affidavit contain the "investigation" of the purchase and possession of the rocket pods.[4]  A review of these paragraphs reveals that the pods themselves were located at the Security Aviation hangar in Palmer.  As for the location of documents pertaining to the purchase of the pods, this, too, was explained.  According to the affidavit, an "administrator from Security Aviation," located the two pods on an "e-bay" type Web site for sale, and researched for weapons that could be mounted on a L-39/59 aircraft.  There is simply no probable cause to believe that evidence of the possession or transportation of unregistered destructive devices could be found at Kane's residence or in his vehicle.

Allegations of financial fraud are contained in paragraphs 54-66 of the affidavit.  Similarly, a review of these paragraphs demonstrates very little reference to Kane, much less to any involvement of his in any financial fraud.

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

---

[4]   The great bulk of the affidavit is simply not germane to Kane or to the issues extant in the instant motion.

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Suppression Motion

Moreover, there is simply insufficient probable cause to believe that any evidence of financial fraud could be found in Kane's residence or vehicle. Indeed, by providing that Kane's name was absent from ownership of any of the businesses, assets, corporate records, business licensing or bank accounts, the affidavit supports the contrary conclusion. See paragraph 65 of the affidavit.

3.  The Scope Of The Warrant

The scope of the warrant, and the search, is limited by the extent of the probable cause. United States v. Whitney, 633 F.2d 902, 907 (9th Cir. 1980) ("The command to search can never include more than is covered by the showing of probable cause to search.") (quoting United State v. Hinton, 219 F.2d 324, 325 (7th Cir. 1955)), cert. denied, 450 U.S. 1004, 101 S.Ct. 1717, 68 L.Ed.2d 208 (1981). Probable cause must exist to seize all the items of a particular type described in the warrant. United States v. Spilotro, 800 F.2d 959, 963 (9th Cir. 1986). Like the particularity requirement, this requirement prevents a "general, exploratory rummaging in a person's belongings." Andresen v. Maryland, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Suppression Motion

L.Ed.2d 564 (1971)). Thus, the concept of breadth may be defined as the requirement that there be probable cause to seize the particular thing named in the warrant.

Courts have repeatedly invalidated warrants authorizing a search which exceeded the scope of the probable cause shown in the affidavit. See, e.g., Center Art Galleries-Hawaii, Inc. v. United States, 875 F.2d 747 (9th Cir. 1989) (invalidating warrant to seize all records of art gallery suspected of fraud in regard to one artist's work); United States v. Washington, 797 F.2d 1461, 1472 (9th Cir. 1986), ("where a business is searched for records, specificity is required to ensure that only the records which evidence crime will be seized and other papers will remain private"); United States v. Leary, 846 F.3d 592, 601-02 (10th Cir. 1988) (warrant limited only by reference to particular federal statute was overbroad).

Here, a careful review of ATTACHMENT B of the affidavit reveals that paragraphs 4, 5, 6, 7, 8, 9, 10, 11[5] are in whole or substantial part outside the scope of the probable cause to search for any of the charges identified and alleged in ATTACHMENT B.

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

_____

[5]     And paragraph 12 in Search Warrant 3:06-mj-019-JDR.

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Suppression Motion

4.    Execution Of Warrant

There are significant issues concerning the execution of the two warrants, even given their expansive scope.  It is axiomatic that government agents are not permitted to seize items not specifically authorized by the warrant unless the items fall within a specifically well-recognized exception to the warrant requirement, none of which are present in the instant matter.  Here, the magistrate judge authorized the search of the residence to take place after 8:23 p.m. on February 2, but only between the hours of 6:00 a.m. and 10:00 p.m.  Clearly, this did not occur.[6]  Further, a review of the search warrant return for the residence, dated February 2, reveals a large number of items which fall outside the items authorized to be seized under the warrant.  For instance, items 1-3, 5-11, 13-14, 16-25, 29-34, 37-43, 45, 47, 56 and 58 all appear[7] to be outside the items authorized to be seized.  The same can be said for items seized pursuant to the warrant for the

---

[6]    Indeed, the warrant strongly suggests that no search would occur until the following day, February 3, 2006.

[7]    It is a bit difficult to determine from the description on the return whether some of the items listed are outside the scope of the items authorized to be seized.  Unfortunately, the government has not been very responsive to the defendants' requests for copies or access to these materials.  See Security Aviation's recently filed Motion to Compel, and Kane's joinder in the same.

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Suppression Motion

vehicle, also executed on February 2.[8]  These items include a "fugitive recovery agent badge," a black leather license holder containing an international driver's license in the name of Robert Frazier Kane, and miscellaneous documents regarding firearms' purchase prices.  In short, what occurred here was a general rummaging and seizure of Kane's private property.

        D.    <u>Fruits</u>

        This motion identifies a variety of constitutional violations.  <u>Wong Sun v. United States</u>, 371 U.S. 471 (1963), generally requires the suppression of evidence seized as a result of a constitutional violation.[9]  <u>See also</u>, <u>United States v. Reed</u>, 15 F.3d 928 (9th Cir. 1994); <u>United States v. Grandstaff</u>, 813 F.2d 1353, 1355 (9th Cir. 1987).  However, this analysis will have to await the court's rulings regarding the issues raised above, following an evidentiary hearing.

        Dated at Anchorage, Alaska March 24, 2006.

---

[8]    Search warrant 3:06-mj-021-JDR, which relates to the Chevrolet Tahoe, Alaska license ESS580, authorizes the government to search after 9:13 p.m. on February 2.  However, the magistrate judge checked neither the box limiting execution to the daytime or to anytime in the day or night.  Nonetheless, it would appear that the same temporal limitation pertaining to the companion warrant for the residence would also apply to this warrant as well.

[9]    This includes Gamalinda's statement.

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Suppression Motion

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage.
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

INGALDSON, MAASSEN &
FITZGERALD, P.C.
Counsel for Defendant Kane


s/Kevin T. Fitzgerald
ABA No. 8711085
813 West Third Avenue
Anchorage, AK  99501
Fax: (907) 258-8751
E-mail:
kevin@impc-law.com

**CERTIFICATE OF SERVICE**

I hereby certify that on 3/24/06,
a copy of the foregoing motion
was served electronically on:

Steven E. Skrocki, Assistant U.S. Attorney
James N. Barkeley, Assistant U.S. Attorney
Michael R. Spaan, Esquire
James L. Kee, Esquire
Paul D. Stockler, Esquire
Robert C. Bundy, Esquire
Allen F. Clendaniel, Esquire


s/ Kevin T. Fitzgerald
F:\W\3169-1\Pleadings Kane\Suppression Motion.doc

**INGALDSON,
MAASSEN &
FITZGERALD,
P.C.**
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-
8751

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Suppression Motion