DEBORAH M. SMITH
Acting United States Attorney

STEVEN E. SKROCKI
JAMES BARKELEY
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: steven.skrocki@usdoj.gov
       james.barkeley@usdoj.gov

Attorneys for the Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:06-cr-022-JWS |
| | ) | |
| Plaintiff, | ) | **GOVERNMENT'S** |
| | ) | **RESPONSE TO** |
| vs. | ) | **DEFENDANT KANE'S** |
| | ) | **MOTION TO DISMISS** |
| ROBERT F. KANE, | ) | **INDICTMENT** |
| a/k/a "COMMANDER KANE," and | ) | |
| SECURITY AVIATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the United States by and through counsel and files its

response to defendant Robert Kane's motion to dismiss. The indictment in this case

is legally sufficient, passes constitutional and legal muster and provides Kane appropriate notice of the nature of the charges against him, including the elements, the specific and actual type of instrumentality required to be registered as well as the *mens rea* as required by law. The motion must be denied.

### A.  INTRODUCTION

Robert F. Kane and Security Aviation are charged with various violations involving the possession, receipt and transfer of four rocket pod launchers. Two of the rocket pod launchers were found at the Security Aviation hangar in Palmer in February, 2006. As to the instant motion, the government takes no issue with pages 1 through 3 as it relates the charges on file against him and its selection of specific language. Pages 3 through 22, however, contain nothing more than argumentative statements regarding the defense version of the case. Far from being an introduction, the remaining pages contain conjecture with regard to the government's charging decisions, complains of facts missing from the indictment that are unnecessary to the charges on file in this case and generally speculates on what the grand jury was told or not told. Moreover, the introduction is likened more along the lines of a bill of particulars. Had Kane wished to file a motion for a bill, or a motion for production of grand jury transcripts, he should have done so. No motion was filed on either issue.

With regard to the motion in general, the indictment provides all "essential elements" with regard to concerns for double jeopardy or the ability to mount a defense, and in all other respects is legally sufficient.

### B.   THE ESSENTIAL ELEMENTS CLAIM

Kane's motion claims that the indictment as drafted is defective for failing to adequately describe a "destructive device". Relying on an 1872 United States Supreme Court opinion and an opinion from the 10th Circuit, the motion attempts to cobble a rule which runs afoul of current case law and appropriate pleading. Irrespective of the attempts to create law where there is none, an analysis of the statutory framework itself provides Kane with sufficient notice to mount a defense and to protect against double jeopardy. The attempt to dismiss the indictment on this issue should fail.

An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c)(1). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Bailey*, 444 U.S. 394, 414, 100 S.Ct. 624,(1980) (quotation marks omitted). In cases where the indictment

"tracks the words of the statute charging the offense," the indictment will be held sufficient "so long as the words unambiguously set forth all elements necessary to constitute the offense." *United States v. Fitzgerald*, 882 F.2d 397 (9th Cir. 1989) Further, the test of sufficiency of the indictment is not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards. *See, United States v. Rosi*, 27 F.3d 409, 415 (9th Cir.1994).

In this case Kane ignores the counts in the indictment which provide clear, commons sense details with regard to the charges against him. In Count One, he is charged with Conspiracy to "knowingly receive and possess four (4) 57mm-UB-16–57U rocket pod launchers, a destructive device", without registering them. The overt acts section of Count One specifically list several overt acts relating to "rocket pods". In counts two through four of the indictment Kane is charged with knowing receipt and possession and attempted receipt and possession of "rocket pods". Despite this, he complains the indictment fails to provide him adequate notice detailing what type of destructive device, as defined by 26 U.S.C. § 5845 (f) defining "destructive devices," the rocket pods fall within. That question is easily resolved by an examination of section 5845(f) as the rocket pod can fall only within one specific provision of that section.

26 U.S.C. § 5845(f) provides several definitions for various firearms. The government concedes that section 5825(b) through (d), dealing with machine guns, rifles, and shotguns cannot conceivably apply to rocket pod launchers under a common sense analysis and reading.

The statue does provide clear, simple and easily followed guidance with regard to the charge at issue. It provides a definition for "destructive devices" as follows:

> Statutory Definitions
>
> i) Title 26 United States Code Section 5841(a) requires the registration of "all *firearms* in the United States that are not in the possession or under the control of the United States . . . [in] the National Firearms Registration and Transfer Record."
>
> ii) Title 26 United States Code Section 5845(a) provides definitions for purposes of Title 26 of the United States Code. Sections (a) and (a)(8) provide that the term *"firearm"* includes *"a destructive device"*.
>
> iii) Title 26 United States Code Section 5845(f) provides that the term *"destructive device"* means, "(2) any type of

>weapon by whatever name known which *will, or which may be readily converted to,* expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore more than one inch in diameter."

As to section (f) of 5845 there are simply no other options remaining as to which section the rocket pod launchers fall within. Sections (1), (A) through (E) concern themselves with explosives, incendiary devices, bombs, grenades, rockets with a propellant charge of more than four ounces, missiles, mines or similar devices. These are not at issue here. Clearly, when viewed in light of double jeopardy, or in defending the case at trial, the defendant is on notice that the rocket pods in question fail to fit under any of those definitions.

That, therefore, leaves subsection (2) of 5845(f), the only remaining option under the entire "destructive device" domain. Subsection 2 provides that a destructive device is "any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosion or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter".

Given the foregoing, it is clear that the very nature of the labeled destructive

device, the rocket pod launcher, can fall only into *one* of the enumerated definitions of "destructive device" under 26 U.S.C.§ 5845 (f), that being subsection 2. Accordingly, the charges against the defendant provide him notice of the offenses charged, (26 U.S.C. § 5861(d), that he, *inter alia*, possessed *a destructive device* (a rocket pod launcher) without the launcher being registered. As it stands, the indictment sufficiently tracks the statutory language and provides sufficient guidance to the defendant to avoid double jeopardy for a similar offense. Indeed, the defendant's motion takes no issue with the counts clarity as drafted, merely with the failure to include the relevant definition of "destructive device."

As a basis for his motion, Kane relies on *United States v. Prentiss*, 256 F.3d 971 (10th Cir. 2001) and *United States v. Cook*, 84 U.S. 168 (1872) claiming that these cases mandate that the government would have to allege in the indictment all of the definitions of Title 26 with relation to the firearm/destructive device since they must be construed to be "elements" of the offense. Those cases, however, are completely inopposite of the statutory framework of Title 26.

*Prentiss,* and *Cook each* refer to items in statutes that are elemental in nature which are contained separate provisions of a statute. In *Prentiss* the issue concerned the jurisdiction of the United States over matters relating to Indian country. In those types of situations, criminal jurisdiction affects three sovereigns,

the state, Indian tribes and the federal government, all of which involved a "complex patchwork of state and federal law. *Prentiss*, 256 F.3d at 973. (Citations omitted) As a result, the court stated, "identifying the statuses of the defendant and victim is often essential in determining what court may hear the case. *Id*. Such a determination is essential in determining state or federal jurisdiction. *Id.,* at 973-978  Consequently, the determination of the status of the victim and defendant is supremely critical and rises to the level of warranting elemental status in an indictment for it confers specific jurisdiction over an offense to the point that they are elements of the crime.

As stated above, this is not that type of situation, nor that type of statutory mechanism.  As set forth above, the statutory framework here does not have the jurisdictional complexities found in *Prentiss* and simply do not exist under Section 5861(d). No authority has been cited carrying this proposition to Title 26 violations. As to *Cook*, the government has shown that while the definitions of a destructive device is not included in the Section 5861(d) violation, the statute (5861(d)) provides clear and uncomplicated guidance sufficient for the defendant to defend himself and to avoid double jeopardy.

As a basis for dismissal, the failure to include the definition, when only one can conceivably apply, is not dispositive.  As to this aspect of the defendant's

motion it must be denied.

>    C.   **THE INDICTMENT NEED NOT ALLEGE THAT ROCKET POD WILL OR CAN BE READILY MADE TO FIRE NOR DOES THE LAW REQUIRE THAT THE POD BE FUNCTIONAL NOR THAT THE POSSESSOR HAVE THE INTENT TO USE THE DEVICE**

Kane claims that the indictment must allege that the rocket pods at issue are, in effect, operational. As to this issue, Kane can provide the court with no direct authority on point which mandates that an indictment must allege that the destructive device in question must be so claimed. Instead, he relies by analogy to a sentencing case of no applicability to the legality of an issued indictment. This argument can be broken down into two sections, a "readily convertible section," and a section concerning whether they "will" be fired. Neither argument provides relief and, more appropriately, the venue for this argument is trial, not dismissal based on mere pleadings regarding the status of the launchers.

**The Readily Convertible/Will Not Fire Defense**

As to the readily convertible defense, Kane ignores case law which holds that one's intended purpose for use of the destructive device is irrelevant. *United States v. Dalpiaz*, 527 F.2d 548, 551 (6th Cir.1975)(intended purpose to use pipe bomb irrelevant). Nor is the government required to charge or prove that the device operates as intended. *United States v. Langan*, 262 F.3d 613, 625 (6th Cir.2001)

(Government need not establish that the destructive device, a pipe bomb, operate as intended)

In *United States v. Rushcamp*, the Sixth Circuit dealt with a similar claim concerning a rocket launcher which had a dysfunctional firing mechanism. The expert in that case actually test fired three rockets from the device using a method different than that from the original firing mechanism. In analyzing a challenge that the rocket launcher was "just a piece of pipe, the court stated that the statutes involved do not purport to regulate all materials or devices which could prove harmful, such as a 3.5 inch pipe. *United States v. Rushcamp*, 526 F.2d 1380, 1381 (6th Cir.1975) The *Rushcamp* court found that Section 5845(f) covered the registration of a bazooka even though it did not operate as intended. In that case, the court stated: "the device in issue is much more than a mere pipe." That weapon had electrical circuitry, a blast shield, a firing device, a sighting device and a hand rest. The *Rushcamp* court stated that a rocket launcher "is exactly the 'military-type' weapon that the statutes speak of." *Ruschamp*, 526 F.2d at 1381 As in the case of *Rushcamp*, and as argued by the defense, the item is question is not simply a conglomeration of pipes, but as stated in Exhibit 1 to this motion, the rocket pod launchers seized in this case are fully operational and fall within the definitions of "firearm" and "destructive device." *See report of Earl Griffith,*

*Firearms Enforcement Officer, Firearms Technology Branch, Report of Technical Evaluation dated February 26, 2006, received March 30, 2006, attached hereto as Exhibit 1.*

Similarly, in this case, the defense counsel cannot deny, as each inspected the pods themselves, that the two rocket pods at issue are possessive of 1) electronic circuitry, 2) 16 barrels each with a tube width of 2.25 inches, 3) circuitry conduits in the rear for installation of the solid rocket igniters for each of the 16 missiles for each pod, 3) a blast shield incorporated into the tail cone, and, *inter alia* 4) mounting hardware for mounting to the pylon of an L-39 jet. As indicated in earlier pleadings and hearings, the electrical connectivity of each rocket pod is operational and intact (See Exhibit 1).

Irrespective of this Kane maintains several arguments, none availing, that the government at this stage must show how the pods were to be used, readily converted, or that Security Aviation or Robert Kane had access to the specific rockets which would fit the pod. He relies on two cases, *United States v. Seven Miscellaneous Firearms*, 503 F. Supp. 565 (D.Col. 1980) and *United States v. 16, 79 Molso Italian .22 Caliber Winlee Derringer Convertible Starter Guns*, 443 F.2d 463 (2nd Cir. 1971).

As to each of these case the facts are distinguishable. In *Seven*

*Miscellaneous Firearms,* a forfeiture action, the firearms in question had been substantially altered through the welding of barrels and the removal of certain parts. *Seven Miscellaneous Firearms*, 503 F. Supp. at 507. Some of the weapons had been demilitarized at the factory. Each would have taken substantial time and rebuilding to operate. As set forth above, the rocket pods in this case suffer no such infirmities nor is there nor was there any attempt of any kind to de-militarize them or to simply plug the barrels. The record in this case establishes their operational nature, a claim the defense has yet to rebut with any affirmative examination or report. Had they had one at this stage, it would have been provided. In any event, *Seven Firearms* is a forfeiture case and is utterly silent on the notion of dismissing and indictment due to lack of operational ability.

    The same holds true of *Derringer Convertible Starter Guns*. This matter was an action by an importer to halt the government from confiscating starter pistols imported from Italy. *Starter Guns*, 443 F.2d at 464. While these guns were able to be converted, some in short order, they are a far cry from the rocket pods at issue at this case as the pods require no conversion. Nevertheless, despite the time necessary to convert the guns, some as little as eight minutes, their seizure and forfeiture was permitted. *Id,* at 465 What remains, from the defense perspective, is again unsupported argument as to the amount of time necessary to attach the pods

to an aircraft and other unsupported notions of what "readily converted" means or what was presented to the grand jury or not. Irrespective of the unsupported argument, these cases fail to stand on point, or by analogy, that the indictment should be dismissed due to speculation as to the time necessary to "restore" the pods "to operational" condition. In the government's view, which is supported by the evidence at the preliminary hearing, and Exhibit 1, the pods are operational right now. *See United States v. Heavilin*, 60 F.3d 835 (9th Cir.1995)(Unpublished opinion)[1] (Neither the statute, the case law, nor the guidelines provide a weapon must be test-fired in order to constitute a "destructive device.") Nor is there any authority provided by Kane to support the notion that the indictment must be dismissed merely because there is no access to ammunition. Had Congress intended to require the additional element of possessing ammunition (or rockets) or that the device must have been operational it could have so stated. Indeed, even the Ninth Circuit Pattern Instructions (2003) are silent with regard to that issue. There is simply nothing in the law (save for sentencing opinions cited to by the defense) which require an operational or "ordinance available" element be plead. As stated in *United States v. Melancon*, 462 F.2d 82, 95 (5th Cir. 1972):

---

[1] Pursuant to 9th Cir. Rule 36-3(i) and (ii) a copy of this case is provided as Exhibit 2.

> Did the government prove that a Japanese Knee Mortar was a firearm (or destructive device) within the purview of 26 U.S.C. § 5861(d) notwithstanding the lack of evidence in the record revealing the existence of projectiles for use in the knee mortar?
> ...
> [t]he Japanese Knee Mortar in its present condition was capable of being fired.  That is enough to prove that the Japanese Knee Mortar was a firearm (or destructive device) under the terms of the statute.  It is true that Railey did not know of the existence of a projectile for use in the Japanese Knee Mortar, but the Japanese Knee Mortar was nevertheless a firearm (or destructive device) capable of being fired and was possessed by Melancon in an unregistered state.  Within the plane words of the statute, the weapon was there.  A lack of appropriate ammunition could not and did not render the weapon non-existent.

Melancon 462 F.2d at 95.

To find to the contrary would totally eviscerate the purpose behind the statute, the regulation of dangerous weapons and firearms.

### D.   THE INDICTMENT IS NOT DEFECTIVE WITH REGARD TO THE *MENS REA* ELEMENT

Kane claims the indictment must be dismissed because the indictment fails to state the appropriate *mens rea* element.  Kane's initial foray into this aspect of the motion is simply argument. He states, "he did not know, nor could he have known, that the pods had the characteristics which would bring them within the statutory definitions of "destructive device" because the pods had been advertised as demilitarized and ready to mount on a plane."  That question of fact is left for

the jury to decide once the evidence is closed.

Kane does cite *Staples v. United States*, 511 U.S. 600,(1994) for the proposition that in order to obtain a conviction under Section 5861(d) the government must prove beyond a reasonable doubt that the defendant knew of the features of the weapon possessed which brought the weapon within the scope of the act. The government finds the citation accurate. After analysis of *Staples* and a discussion of *United States v. Gergen*, 172 F.3d 719 (9th Cir.1999), which dealt with a jury instruction on this issue, Kane's brief states;

> *Mens rea* is an essential element of the offense and, if not plead, should render the indictment subject to dismissal.
>
> The indictment in this case fails to plead that Kane knew, or even reasonably should have known, that the "rocket pod launchers" constituted "destructive devices" subject to legislation and criminal penalties."

(Defense Motion to Dismiss at 18)

No citations are provided for this proposition, merely more argument as to nullification or explanations of innocence. The lack of authority in support of this argument is telling. Additionally, the United States Supreme Court has found that there is no requirement under the statute that the defendant knew that his possession was unlawful, or that the firearm was unregistered. *United States v. Freed*, 401 U.S. 601,(1971).

Like many statutes, 26 U.S.C. Section 5861 contains no knowledge component. *Staples* and other decisions have added mental elements to statutes lacking a *mens rea* component so as to avoid a strict liability standard. *See*, *Morrissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952)  In this case, *Staples* added the mental elements in that the government must prove that the that the defendant knew of "those features which brough the firearm within the scope of the act". See *Staples*, 511 U.S. 600, 619 (1994)("to obtain a conviction, the Government should have been required to prove that petitioner knew of the features of his AR-15 that brought it within the scope of the Act." see also, *United States v. Gergen*, 172 F.3d 719, 724 (9th Cir.1999)( *mens rea* requirement that the defendant know of the particular characteristics of the firearm which bring it within the scope of the statute is "an essential element of a section 5861(d) violation." All the government need establish is that Kane knew it was a rocket pod launcher, not that it was prohibited.

Neither of the authorities provided above dealt with the inclusion of the *mens rea* element into an indictment, but, instead, dealt with the elements the government would have to prove at trial, a completely different standard. In this case, as indicated above, the indictment fairly and adequately provides the defendant notice of the charges against him sufficient to form a defense, and

sufficient to avoid double jeopardy. Including a *mens rea* standard in the indictment is simply not required nor does *Staples, Gergen, Morrissette* or any of their progeny require such pleading.

### E. CONCLUSION

The defendant's motion has filed to provide the court with any authority upon which to dismiss the indictment. The indictment lists the specific violation of law, the type of device as being a "destructive device" in the form of a rocket pod launcher and does not require the additional elements of knowledge of the weapon's destructive nature, the need for ammunition, nor the inclusion of the

//


//


//


//


//

*mens rea* in the indictment. The defendant's motion must be denied.

      RESPECTFULLY SUBMITTED this 30th day of March, 2006 at

Anchorage, Alaska

           DEBORAH M. SMITH
           United States Attorney

           s/ Steven. E. Skrocki
           Assistant U.S. Attorney
           222 West 7th Ave., #9, Rm. 253
           Anchorage, AK 99513-7567
           Phone: (907) 271-5071
           Fax: (907) 271-1500
           E-mail: steven.skrocki@usdoj.gov

           s/ James Barkeley
           Assistant U.S. Attorney
           222 West 7th Ave., #9, Rm. 253
           Anchorage, AK 99513-7567
           Phone: (907) 271-5071
           Fax: (907) 271-1500
           E-mail: james.barkeley@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on March 28, 2006
a copy of the foregoing was served
electronically on Robert Bundy,
Allen Clendaniel, Kevin Fitzgerald,
James Kee, & Paul Sockler.

s/ Steven E. Skrocki