DEBORAH M. SMITH
Acting United States Attorney

STEVEN E. SKROCKI
JAMES BARKELEY
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: steven.skrocki@usdoj.gov
       james.barkeley@usdoj.gov

Attorneys for the Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:06-cr-022-JWS |
| | ) | |
| Plaintiff, | ) | GOVERNMENT'S |
| | ) | OPPOSITION TO |
| vs. | ) | DEFENDANT'S MOTION FOR |
| | ) | *FRANKS* HEARING |
| ROBERT F. KANE, | ) | |
| a/k/a "COMMANDER KANE," and | ) | |
| SECURITY AVIATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the United States of America, by and through counsel, and

opposes defendant's motion requesting the court to hold a hearing under *Franks v.*

*Delaware*, 438 U.S. 154 (1978), hereinafter a *Franks* hearing.  The defendant's motion fails to provide this court with any facts which establish false material statements or negligent or intentional omissions of any type and completely fails to meet the heavy burden required for the holding of a hearing.  The fact that the investigation failed to interview every witness or possible coconspirator for their version of events, or failed to investigate the case to the satisfaction of the defense fails to provide any justification for a *Franks* hearing.

## I.  INTRODUCTION

Security Aviation's motion directs the court to isolated snippets of information, which, even if included, would fail to negate probable case. In the instant motion, Security Aviation moves to suppress the fruits of six search warrant searches issued under the following numbers: 3:06-mj-008-JDR, 3:06-mj-009-JDR, 3:06-mj-010-JDR, 3:06-mj-016-JDR, 3:06-mj-017-JDR, 3:06-mj-018-JDR, 3:06-mj-019-JDR, and 3:06-mj-021-JDR [hereinafter "the warrants"]. Defendant claims that the search warrants contain intentional or reckless material falsities justifying a *Franks* hearing and suppression.  Defendant's motion should be denied without further hearing as the affidavits contain no false statements and defendant's showing falls woefully short of that necessary to obtain a *Franks* hearing.

## II.    STANDARDS APPLICABLE TO A *FRANKS* HEARING

A defendant is entitled to an evidentiary hearing on the validity of the affidavit underlying a search warrant if the defendant can make a substantial preliminary showing that: (1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the alleged false information. *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000). The defendant bears the burden of proving a *Franks* violation by a preponderance of the evidence. *United States v. Dozier*, 844 F.2d 701, 705 (9th Cir. 1988). The defendant must further demonstrate that the agent intentionally or recklessly made the false statement or omission. Mere negligence or inadvertence does not constitute a *Franks* violation. *Id.; See also, United States v. Collins*, 61 F.3d 1379, 1384 (9th Cir. 1995) (holding that agent's knowledge of a fact (a specific date) and his failure to include it in an affidavit constituted negligence or innocent mistake and did not justify a hearing); *United States v. Hole*, 564 F.2d 298, 302 (9th Cir. 1977) (holding that innocent misstatements that are not intentional or reckless, even if material, will not vitiate an otherwise sufficient affidavit); *United States v. Botero*, 589 F.2d 430, 433 (9th Cir. 1978) (holding that misstatements or omissions in the affidavit are fatal only if reckless and if made with intent to deceive court).

The requirement of a substantial preliminary showing is not easily met. "A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit or a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing." *United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998). (internal citations omitted).

Identifying intentional omissions and misstatements alone, however, is not enough to warrant a *Franks* hearing. The defendant has to show that the deceptions were material; that is he has to show that the issuing magistrate judge could not have found probable cause absent the omissions or false statements. *Franks*, 438 U.S. at 171-72. Courts have also denied a *Franks* hearing where the allegation is a failure to investigate, not a deliberate omission or falsity. Failure to investigate does not equal reckless disregard for truth. *See United States v. Ranney*, 298 F.3d 74, 78 (1st Cir. 2002) (Denying hearing in mail fraud case where allegation of omission in search warrant affidavit depended on claim agent should have probed facts further).

The standard here is *not* what the FBI or the affiant "could have done." United States v. Miller, 753 F.2d 1475,1478 (9th Cir. 1985) ("It might have been prudent for the federal agents to check on [an informant's] background and criminal record, but their failure to do so is not reckless disregard."). And, an

affidavit may support probable cause even if the government fails to obtain

potentially dispositive information. *Id.*, 1481 (holding that an affidavit supported

probably cause even though "[i]ndependant verification could have been easily

accomplished in this case" and the "officers failed to take these simple steps.") *see

also, United States v. Ozar*, 50 F.3d 1440, 1446 (8th Cir.1995)(It was error for

magistrate judge to focus on what agents could have learned with more

investigation under *Franks*). Failure to investigate fully is not evidence of

"reckless disregard" of the truth.  An affiant need not accumulate overwhelming

corroborative evidence in order for there to be a finding of probable cause.  *United

States v. Dale*, 991 F2d 819, 844 (D.C.Cir.1993)

    As to materiality, the pivotal question is whether an affidavit containing the

omitted material would have provided a basis for a finding of probable cause.

*United States v. Garcia-Cruz*, 978 F. 2d 537, 540 (9th Cir.1992). However,

ordering a hearing "on a failure to include a matter that might be construed as

exculpatory...potentially opens officers to endless conjecture about investigative

leads, fragments of information, or other matters that might, if included, have

redounded to the defendant's benefit".

    In summary, then, the government is not required to further investigate facts

in its possession, like the defendant is arguing, nor is it required to or obligated to

obtain additional evidence through further investigation. *Miller*, 753 F.2d at 1479-81.

Defendant's limited authority does not support either suppression or a *Franks* hearing.  In fact, as set out below, the defendant makes claims that are, by far and way, argumentative, and fails to establish, even if true, how these misstatements would vitiate probable cause established in the affidavit. In this regard, the motion fails to meet its burden by a preponderance of the evidence to justify in any way a hearing under *Franks v. Delaware*.

## III.    THE MOTION FAILS TO MEET TWO-PART TEST THE LAW REQUIRES FOR HOLDING A *FRANKS* HEARING

### A.    OVERVIEW

Defendant's motion apparently urges a *Franks* hearing for each of the warrants issued against Security Aviation at the Palmer Hangar, Robert Kane's residence, the C Street address for Mark Avery and Associates, and the Security Aviation Hangar located at the Ted Steven/Anchorage International Airport.  The defense motion takes a "blanket" one  "one size fits all" approach which seems confused in its application to the warrants at issue.  For example, the defendant does not explain how allegations of negligent or intentional omission or bias of an individual involved with the search of the Palmer Hangar relate to the search of the

Ted Stevens/Anchorage International Airport Security Aviation Hangar or the C. Street Address.  Nor does the defendant explain how the allegation that Security Aviation aircraft were allegedly compliant with FAA regulations affects a search warrant on the C Street address?  This is not explained.  They are, however, merely side issues there were no false representations in the warrant.

It is the defense burden to characterize what challenged evidence affected what warrant and this was not done. While this is clearly an issue, the drafters of the motion elected to proceed in that fashion and will have to abide by the result. Accordingly, inasmuch as it was drafted in that fashion, the government will respond to each claim in turn.

### B.    THE BANK FRAUD ALLEGATIONS

The affidavit in support of the search warrants in 3:06-mj-008-JDR, 3:06-mj-009-JDR, 3:06-mj-010-JDR, 3:06-mj-016-JDR, 3:06-mj-017-JDR, 3:06-mj-018-JDR, 3:06-mj-019-JDR, and 3:06-mj-021-JDR describes evidence of possible bank fraud and false statements to Wells Fargo Bank in applying for a $500,000 line of credit.  The defense motion claims that paragraph 57 "contains a blatant misrepresentation that is material to probable cause" claiming that ownership of Security Aviation claimed in the affidavit to have occurred in December, 2005, was false.  It is claimed that the affidavit "relies on (the) incorrect assumption that

Avery was not the owner of Security Aviation at the time of the loan."  The

sections of the affidavit which are at the core of this argument are summarized

provided below:

56.  Reference was made to the loan paperwork which stated that Mark
Avery recently purchased Security Aviation and injected millions of
dollars into the company to expand the fleet of aircraft from 5 to 22
(including 2 Gulfstream III and 2 Sikorsky military helicopters As to
this first line of credit, the collateral for the LOC was to be in the form
of a certificate of deposit held by Wells Fargo Bank.

57.  The affidavit indicated that on October 4, 2005, another Credit
Approval Presentation was prepared to apply for a new $500,000
revolving line of credit to pay-off the temporary non-revolving LOC
obtained by Stephen "Joe" Kapper the week before.  As to this LOC,
the affidavit listed Security Aviation as being completely owned by
Mark Avery.   The affidavit referenced that the loan documentation
stated that the purpose of the credit approval presentation was for a
new revolving line to payoff the first, temporary non-revolving line of
credit.  With reference to that new application the loan documentation
referenced that since the last fiscal year the borrower (Security
Aviation) had significant growth since the last fiscal year which was
attributed to a large $30 million dollar Department of Defense
contract.  In the same paragraph the affidavit stated that Special Agent
Campe reviewed Alaska Division of Corporations Business and
Professional Licensing Records which indicated that 100% ownership
of Security Aviation was transferred from Kapper to Avery on
December 5, 2005.

58.  This paragraph indicated that Special Agent Campe had been unable
to locate any Department of Defense contracts for Mark J. Avery, or
Security Aviation, Inc. in the amount stated or anything remotely
close to 30 million dollars.  Up to that point in the investigation it was
referenced that only one contract existed, that being to fly United
States Air Force personnel to various installations in Alaska or other

short term flights and that contract was in existence prior to Mark Avery's purchase of Security Aviation in June, 2005. It amounted to a figure of well under $1,000,000. No other information was found concerning other government contracts for Mark Avery, Security Aviation or any other Avery companies despite what the affidavit described as extensive efforts to locate any.

59.    Paragraph 59 stated that irrespective of the government contract claim, the line of credit was denied due to an incomplete application and/or missing financial information. The affidavit went on to state that the initial loan writer stated that Mark Avery compromised by providing a personal financial statement and personal guarantee which claimed a liquid net worth of over $5 million dollars and personal income outside of Security Aviation of $600,000 per year. Information was also provided that Security Aviation, in the last 90 days acquired over $15 million in aircraft assets under new ownership and acquired over $150 million in new government contracts in Medevac and training.

60.    Paragraph 60 reflected information from the loan package in which Wells Fargo noticed that since 1996 the principal (Avery) maintained since 1996 an average balance with Wells Fargo of $314,000. It went on to state that the balance sheet reflected significant growth in fixed assets with no corresponding debt and that the borrower's equity grew from $1.2 million as of fiscal year 2004 to $16.8 million as of September 7, 2005 as a result of the $15.1million increase in fixed assets. The Wells Fargo records indicated that the source of funds for the acquisition of the assets was Mark Avery and it further stated that it was unknown how these assets were financed.

(See Government's Exhibit 3, Loan Documents from Wells Fargo Bank)

61.    Paragraph 21 informed the court that Special Agent Campe had been unable to locate any government contracts, state, federal or local, for "Medevac and Training" in the stated amount of $150 million dollars. As to this particular loan, the affidavit stated that Mark J. Avery signed for the $500,000 line of credit as "Secretary" for Security

Aviation, Inc. on October 28, 2005. And that, to the date of the affidavit, Special Agent Campe had been unable to determine what assets or expenses were purchased or paid for with the first $500,000 line of credit obtained from Wells Fargo. Subpoenas had not been provided to other banking institutions in light of the covert nature of the investigation to date.

The issue of ownership of Security Aviation has no bearing to the probable cause statements in the affidavits. Whether Avery was, or was not the owner of Security Aviation at the time of the loan is irrelevant to the finding of probable cause. The defense motion fails to explain to the court how this issue would somehow negate probable cause in the affidavit to the extent it would warrant a *Franks* hearing. Even if the court finds error, the status of ownership of Security Aviation is totally irrelevant to the probable cause determination regarding false statements to a lending institution. The defense argument is that Avery was the owner at the time of the loan, which in fact the affidavit states in paragraph 58. However, the motion completely omits any analysis as to how this alleged error in any way diminishes the factual and accurate recitation of the loan processing paperwork with regard to probable cause. Even if the court removes the allegedly offending passage it does nothing to diminish the statements made in the affidavit which claimed over 100 million dollars in government contracts existed via Security Aviation when they in fact *did not*.

On this issue, the defendant must make a substantial preliminary showing that: (1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and (2) the affidavit cannot support a finding of probable cause without the alleged false information. <u>Reeves</u>, 210 F.3d 1041 at 1044 (9th Cir. 2000). Removing the information as to when Mark Avery was actually the owner of Security Aviation, does nothing to undercut the probable cause set out in the affidavit.  Even so, the language of Special Agent Campe's affidavit, which included direct quotes from the actual loan documents themselves state that Avery was the owner of Security Aviation at the time of the loan. As stated in Exhibit 1, Agent Campe was working off public information, a fact he relayed to the court. Thus, the court had the information from Special Agent Campe's investigation and what was available in the public realm, and the information in the loan documentation.  There is no negligence or omission here.

The motion next takes issue with the fact that government never discussed the loan application with Joseph Kocienda.  This allegation falls under the "failure to more fully investigate" line of cases which, as shown above, fails to pass muster necessary to hold a hearing as Kocienda's affidavit is not credible, nor, if it was, would it have changed the probable cause analysis.  Had that information been present it would have made no difference for it fails to explain the source of

Avery's injection of millions of dollars into Security Aviation.

The court should examine Kocienda's affidavit carefully. When it does so, it will see that the affidavit is a model of obfuscation. Indeed, Kocienda's affidavit is more striking for what it fails to state than what it actually provides and is noteworthy for its failure to inform the court that soon after pushing this loan through Wells Fargo Bank, Kocienda went to work for Security Aviation. It also fails to state that Kocienda is a financial officer for each and every one of Mark Avery's businesses. The fact that Kocienda went to work for Security Aviation after his involvement with this particular loan, when the loan was based on false statements, raises more questions than it answers. (See Exhibit 2) In the first instance, *he fails to inform the court that he is now, and was at the time of the government's investigation an employee of Security Aviation, Inc.* Indeed, he is described by counsel for Security Aviation as part of the "control group" of the company as its Financial Officer. (Exhibit 2, Letter to United States from Counsel for Security Aviation) (Exhibit 2, Various documents relating to Kocienda's employment with Security Aviation). From the government's perspective, Kocienda arranged the Security Aviation loan based on false statements contained in the loan application in October, 2005, and the very next month was employed by Security Aviation, signing the Security Aviation Non-Disclosure Agreement on

November 15, 2005.

This glaring omission of employment status with Security Aviation casts

particular doubt on the credibility of the entire affidavit.  As to obfuscation, the

court should also consider how an experienced financial officer like Kocienda,

working a business loan of $500,000, suddenly discovers that language used in

applying for the line of credit which stated was "in error".  The loan officer's

comments stated that growth was due to a large $30 million dollar Department of

Defense contract and $150 million dollar government contract for Medevac and

Training, neither which, Kocienda now agrees, was true.  (Exhibit 3)

Now, when under investigation, these formally convincingly clear

statements are now qualified by, *"**I intended to mean** contracts that were currently*

*in negotiations"*.  If that *is* the case it still fails to answer the question of-- "where

was the money coming from?"  This was something, as shown below, that the loan

review team at Wells Fargo was interested in understanding.

The probable cause as to fraud is obvious, as is the misrepresentation.  Wells

Fargo had questions about the financing source for Security Aviation's

unexplained growth under Mark Avery's ownership.  The "government contract"

lie was merely a convenient justification used to conceal the true source of Security

Aviation's funding which, as stated in the affidavit, was believed to be the May

and Stanley Smith Charitable Trust. Indeed, Wells Fargo had the same questions and raised them in the loan application process, and was lied about Security Aviation's funding.

What Kocienda "intended to say" and what was "said" in the loan documents quoted in the affidavits are light years apart. Irrespective of the now illuminated "intention" of Kocienda, a Security Aviation officer, is the fact that what was in his mind at the time has no operative bearing on what the documents reflected in writing during Special Agent Campe's investigation. Moreover, Kocienda's new-found intention is utterly irrelevant on the issue of *Franks* given the caselaw cited above.

Additionally, it would be unreasonable in an investigation for bank fraud to expect that the FBI would interview the very subjects of the investigation and interview them about their involvement, especially with regard to Kocienda, a person who was intimately involved with this loan and soon after the loan's approval began work for the very company that benefitted from the loan. Probable cause in this instance was met by the affidavit informing the court that loan paperwork filed on behalf of Security Aviation claimed government contracts totaling a 180 million dollars existed. The government's search revealed no such contracts existed. Kocienda's affidavit confirms as much. The affidavit did not

state whether Kocienda was interviewed or not and the fact that the FBI did not

interview Kocienda, who was, after working this loan, an employee of the target of

the investigation, is irrelevant.   See Mathison, 157 F.3d at 548 (defendant must

support averments with specifics and evidence); Ranney, 298 F.3d at 78 (agent not

required to conduct investigation).

### C.    IRS Audit of May and Stanley Smith Charitable Trust

Again, Security Aviation claims a fatal omission to the entire warrant for

failure of the affidavit to state that the Internal Revenue Service completed an audit

of the trust.  This argument is disposed of by the authorities cited above, and, by

the fact that Special Agent Campe was unaware that an audit had occurred at the

time the affidavit was prepared. (Exhibit 1) Furthermore, even if an audit did

occur, there is no explanation how that audit could have, in any way, operated to

defeat probable cause.

The motion argues that "the government had detailed knowledge of the trust

funds and the trust itself." The motion fails to state or argue how this omission,

even if known, would have operated to defeat the probable cause established in the

affidavit.  Even if the government knew of the audit at the time of the affidavit's

creation it would not be dispositive to the issue of whether funds from the May and

Stanley Smith Charitable trust were being spent appropriately or were being spent

fraudulently. More importantly, the defense brief fails to provide any claim whatsoever as to how, if this fact were known, its inclusion would have changed the result.

### D.    Misrepresentations Regarding Possession of Rocket Pods

Under this section the defense motion makes several claims, none of which have merit:

#### 1.    There is No Requirement For the Affidavit To Prove That the Rocket Pods Would Work on L-39 Aircraft

This issue is, like most of the issues raised in this motion, another red herring. The government's affidavit was concise and to the point with reference to the rocket pods in question. It never argued, informed the court nor claimed that the pods would in fact have worked on the aircraft, nor did it need to.  In this case, the search warrants sought the pods themselves and provided the court with evidence of their nature and location and the facts in support thereof.  Nothing more is required nor does the defendant's motion provide the court with any authority in support of this claim.  There is no legal support for the defense to claim that the government would have to establish operability prior to applying for a warrant.  Such a claim is a practical, legal, and virtual impossibility to fulfill and would turn the whole investigative process on its head.  Under the defense version

the government would be required to acquire the pods, test the pods for operational use, then, acquire one or all of the 8-12 Security Aviation L-39 jet aircraft, mount the pods on each aircraft, test them on the aircraft, and *then* only after a full battery of testing and analysis apply to the court for a search warrant. Such a contention would require an absolute investigative impossibility.

Furthermore, as of this writing, the only firm evidence before this court is the expert report of Earl Griffith filed with the court in the government's Opposition to the Defendant's Motion to Dismiss. In that report Mr. Earl Griffith states that the rocket pods are "destructive devices" within the meaning of 28 U.S.C. § 5861(d). No evidence, let alone expert evidence, has been provided by the defendant on operability, merely unsupported argument. The fact that a legal argument exists at this stage as to what the statute requires or what is "operational" or not cannot be tortuously wrought into a material omission in a search warrant application. Under the defense version of thinking, an agent would have to test fire an unregistered machine gun, bazooka, grenade launcher or artillery piece to see if it was fully operational before seeking authorization to search and seize it. As indicated above, such a standard is not supported in the law and puts the cart before the horse. "A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit or a witness or some other reliable corroboration, is

insufficient to make the difficult preliminary showing." <u>United States v. Mathison</u>, 157 F.3d 541, 548 (8th Cir. 1998). (internal citations omitted).

As to this claim, the defense makes no attempt to distinguish what, if any impact this would have on each of the warrants in this case. Would it, for example, operate to negate probable cause for C Street, or any of the other locations aside from the Palmer Hangar? The court is left to guess as to what impact of this would have on the other warrants.

### 2. Failure to Investigate the Authority of Witnesses to Access Security Aviation Hangar Space Fails Under *Franks*

This is an issue for a motion to suppress, not one resolved in a *Franks* hearing. No evidence in the form of affidavit or otherwise is presented to the court in support of these claims that SA Campe knew who had, or did not have, authority to enter the Security Aviation hangars. At the extreme this falls under the "failure to investigate" aspect of the motion. At most, it is arguable negligence which fails to meet the standard necessary for a *Franks* hearing. Again, Security Aviation asks much more than is legally required and fails to explain to the court or provide any authority as to the necessity of this inquire by an agent during an investigation.

### E. Omission of FAA Oversight Is Irrelevant to Probable Cause

The opening sentence of this section claims the omission of the "wealth of

information concerning substantial FAA oversight of aircraft, which demonstrated

clearly that the planes were going be utilized for a peaceful purpose." This issue is

again simply argument and another one tailored to the media. Security Aviation

can state every peaceful intention on paper, and can comply with every law and

still possess ill intent. This is simply asking that the court impose on every

affidavit a requirement that an agent report every allegedly law-abiding act by the

defendant to negate probable cause. Under this scenario, the court would be

tasking each affiant to inform the court that in applying to search a vehicle search

for drugs that first  the license and registration on a vehicle carrying the drugs was

valid. Or, that prior to searching the corporate offices of a business, that the

government establish that the firm's regulatory paperwork was in order. Indeed,

regulatory compliance casts little light on the financial soul of a company. Even if

true there is no argument or explanation as to why this would have negated

probable cause or what impact this would have on the warrants individually.

**F.    Omissions Regarding Witness E's and Witness I's Bias**

Security Aviation claims that Special Agent Campe intentionally omitted

bias evidence from the affidavit with reference to Witness E, John Barrens, and

Witness I, Robert Anthony. Once again, even if true, the bias information, if

known, and if provided, does nothing to erode the massive amount of probable

cause provided in the warrant.  And, as is typical of the arguments in this case there is no attempt to distinguish the impact of this information, if true, on the warrants for C Street, or other locales.

Irrespective of those claims, even if it is arguable that Anthony did not have authority to open the Security Aviation hangar, and, if he didn't, whether that would have amounted to negligence on Special Agent Campe's part for failure to determine that issue.  *See United States v. Young Buffalo*, 591 F.2d 506, 510 (9th Cir.1979) ("Even if we were to find that the information posssesed by [the attesting agent] was enough to create a duty of further inquiry, these assertions at base raise the possibility of negligence on his part....'Allegations of negligence or innocent mistake are insufficient to [justify a hearing."] (quoting *Franks*, 438 U.S. at 171, 98 S.Ct. 2674) Accordingly, even if the court determines this amounted to negligence, mere negligence is not enough to warrant a hearing.

Second, even if the court adds the alleged bias by John Barrens into the affidavit matrix it does little to undermine the entire document.  On these two issues, the defendant's motion shys away from any type of analysis, merely stating, like all segments of its motion, that it was a material omission, done intentionally. This blanket argument, without more, fails to satisfy the test that the omission must be material and that with the included information probable cause would not lie.

This motion is the defendant's burden. It is a heavy one, and one that he fails to carry. The defendant's motion fails for the simple fact that the one alleged omission, taken in isolation, fails to overcome the probable cause to search for bank fraud, destructive devices, and other evidence detailed in the over 60 page affidavit of Special Agent Campe for all of each of the locations searched. The fact that Barrens might have motive or bias, save for being an ex-employee, fails to erode the probable cause in the warrant.

> **G.    Special Agent Campe's Entry Into the Security Aviation Hangar Had No Bearing on Probable Cause Due to the Legal Nature of the Entry**

In this section, the government provides the court with information being filed concurrently to the filing of this motion.  In the government's Opposition to Defendant's Motion to Suppress based on illegal entry the government's response will be providing information relative to the investigative actions of Special Agent Campe on January 21, 2006.  The government will be providing to the defense a report of investigation by Special Agent Campe.  In that report, Special Agent Campe will provide facts concerning his actions on the night of January 21, 2006, wherein he entered the Security Aviation Hanger in Palmer, Alaska along with other individuals involved with the repossession of Air USA aircraft and parts. The information contained in the report of the investigation is self-explanatory, and

states, *inter alia*, that along with Air USA employees Special Agent Campe made a brief entry, took two photos of a rocket pod, and exited the hangar. As indicated in the government's motion, this information was omitted from the search warrant affidavits issued in this case.

This was done for the following reasons:

-As argued in the government's brief the entry by John Berens was a legal entry under color of the repossession of aircraft and items belonging to Air USA,

-That given the legality of that entry the court was presented with Mr. Berens observations only without reference to Special Agent Campe's entry because due to Beren's observations Special Agent Campe's observations were unnecessary.

Under 9th Circuit authority, the fact that Special Agent Campe's observations as to the presence of the rocket pod were not included in the affidavit fails to give rise to a requirement for a *Franks* hearing for the following reasons:

-Agent Campe's entry was legally permissible. Given that finding, Agent Campe's information would have been even more inculpatory and cumulative to the court's finding of probable cause since it corroborated the information by Mr. Berens.

-Even if, omission were improper, the remedy under *Franks* would be to incorporate the information into the warrant, as discussed herein, to see if it vitiates probable cause. In this circumstance, the information regarding Agent's Campe's activities would simply strengthen the finding of probable cause inasmuch as Agent Campe's observations simply corroborated Mr. Beren's observations regarding the presence of the rocket pod.

The government's actions in this case in not disclosing in the warrant Special Agent Campe's presence during Beren's entry are legally appropriate. Under *United States v. Whitworth*, 856 F.2d 1268, 1281(9th Cir.1988) a similar issue arose with respect to the failure to disclose a consent search which occurred *prior* to the application for a search warrant. *Whitworth*, 856 F.2d at 1281. In that case, the government explained that it did not inform the magistrate about the prior consent search.

The Ninth Circuit found that the omission in failing to reveal the prior consent search in a follow-up warrant did not necessitate a *Franks* hearing, concluding that while the better practice would have been to inform the court that nothing in the first search was being relied upon in seeking the second search warrant the failure to inform did not meet the standard necessary for *Frank*s because the failure to inform the magistrate about the prior search did not affect the

probable cause set out in the warrant.  Here,  Special Agent Campe legally entered

the hanger with Air USA employees for the limited purpose of identifying the

rocket pod and taking two photographs.  Accordingly, the failure to disclose this

legal entry could not have affected the decision to issue the warrant.  Even if

admitted in the affidavit, as set forth above, it would have been cumulative as to

the rocket pod presence and would only have corroborated Beren's testimony.

Unlike other cases where the omission reveals the existence of exculpatory

evidence as to the crime, this information was strictly inclulpatory and cumulative

as opposed to exculpatory. (*See United States v. Watts*, 884 F.2d 134, 137 (9th

Cir.), *cert. denied*, 488 U.S. 928 (1988) (No requirement to state a negative finding

that the surveillance revealed no criminal activity) There is nothing false in the

affidavit nor exculpatory which could have altered the finding of probable cause.

Either way, with the information included, or excluded, the affidavit still provided

a substantial basis for the finding of probable cause.

Given that there is no evidentiary conflict to resolve, and given that the

Ninth Circuit has ruled favorably on this issue, the motion for a *Franks* hearing

must be denied.

### H.    SUMMATION

In summary, then, the government turns to the following authority from the

Ninth and Seventh Ciruits.  First, from the Seventh Circuit in *United States v. Swanson*, 210 F.3d 788, 791 (7th Cir.2000):

> We could go on and on, but what's the point? Nothing here suggests that a *Franks* hearing was required: At the very most, a little negligence was at work.  But a little negligence–actually even a lot of negligence–does not the need for a *Franks* hearing make.

*Swanson*, 210 F.3d at 791.

And from the Ninth Circuit, *United States v. Kyllo*, 37 F.3d 526, 529 (9th Cir.1994) which states that to be entitled to a *Franks* hearing the defendant has to make a *substantial* preliminary showing that the affidavit contains reckless or deliberate omissions of facts that tend to mislead, *and* demonstrate that the affidavit supplemented by the omissions would not be sufficient to support a finding of probable cause.  *Kyllo*, 37 F.3d at 529. In this case, the defense motion has failed to make that substantial preliminary showing and show even with the supplemental omissions that no probable cause existed.  They have failed both prongs of the *Kyllo* test.

## IV.   CONCLUSION

Defendant has failed to carry its burden of providing facts in support of its claims that Special Agent Campe made any misstatements in the search warrant affidavits leading to the searches issued by the magistrate judge.  The record shows

that the affidavits were accurate and the bases for the Magistrate Judge's findings

of probable cause were and are well supported by undisputed evidence.  Therefore

defendant's request for a *Franks* hearing should be denied.

RESPECTFULLY SUBMITTED this <u>3rd</u> day of April, 2006 at Anchorage,

Alaska.

DEBORAH M. SMITH
United States Attorney

s/ Steven. E. Skrocki
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: steven.skrocki@usdoj.gov

s/ James Barkeley
Assistant U.S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
E-mail: james.barkeley@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 3rd, 2006
a copy of the foregoing was served
electronically on Robert Bundy,
Allen Clendaniel, Kevin Fitzgerald,
James Kee, & Paul Sockler.


s/ Steven E. Skrocki