DEBORAH M. SMITH
Acting United States Attorney

STEVEN E. SKROCKI
JAMES BARKELEY
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: steven.skrocki@usdoj.gov
         james.barkeley@usdoj.gov

Attorneys for the Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:06-cr-022-JWS |
| | ) | |
| Plaintiff, | ) | **UNITED STATES'** |
| | ) | **OPPOSITION TO DEFENDANT** |
| vs. | ) | **SECURITY  AVIATION, INC.'S** |
| | ) | **MOTION TO SUPPRESS** |
| ROBERT F. KANE, | ) | **FRUITS OF SEARCHES OF** |
| a/k/a "COMMANDER KANE," and | ) | **PREMISES AT 6212** |
| SECURITY AVIATION, INC., | ) | **MAGNAVIEW DRIVE, EAGLE** |
| | ) | **RIVER, AK AND ONE BLACK** |
| Defendant. | ) | **CHEVY TAHOE REGISTERED** |
| | ) | **TO REGIONAL PROTECTIVE** |
| | ) | **SERVICES, ALASKA LICENSE** |
| | ) | **PLATE ESS 580** |

COMES NOW the United States, by and through counsel, and hereby

opposes Defendant Security Aviation, Inc.'s Motion to Suppress Evidence Seized on February 2, 2006, from the residence located at 6212 Magnaview Drive, Eagle River, Alaska and from one black Chevy Tahoe, Alaska license plate ESS 580, which was parked in the driveway of said residence.

## I.   OVERVIEW

Defendant Robert F. Kane has moved to suppress: (a) evidence seized from his residence located at 6212 Magnaview Drive, Eagle River, Alaska, and (b) the evidence seized from a black Chevy Tahoe, registered to Regional Protective Services, which was parked in the residence's driveway.

On February 2, 2006, federal agents searched both the residence and the vehicle. The residence was initially searched that morning pursuant to the consent of both Mr. and Mrs. Kane. Exhibit 7. The search warrant was obtained for a more expansive search of the residence, and for the search of the vehicle. The vehicle search was not consensual, and did not occur until a warrant was obtained later that evening. The consent obtained from both Mr. and Mrs. Kane was voluntary, obviating the need for a search warrant. Once agents became aware that numerous computers used almost exclusively by defendant Robert F. Kane were situated within the residence and the Tahoe, a search warrant was obtained. A warrant was sought because Mr. Kane's consent was relatively limited in scope and

did not expressly address computers. Mr. Kane's consent was verbal; he was not asked to execute a written consent form because he was already under arrest and in handcuffs at the time he gave verbal consent. Exhibits 2 & 7. Mrs. Kane did execute a written consent form. Exhibit 1.

Defendant Kane argues that the written consent provided by his wife was coerced, obtained by agents falsely informing her that her husband had consented, and insufficient even if voluntarily given, because Mr. Kane objected. Consent was lawfully obtained from and voluntarily given by both Mr. and Mrs. Kane.

The Motion also alleges that "the warrants are tainted due to material omissions/misrepresentations." In particular, the Motion alleges that the government failed to disclose to the court, in applying for the search warrants executed at this residence and upon this vehicle, that a search of the residence was already under way and that Mrs. Kane had been extensively interviewed. That is incorrect. Despite Movant's claim to the contrary (Motion & Memo at p.10, heading "C"), the Affidavit submitted in support of the application for the search warrant expressly disclosed that a consent search of the residence had been initiated. Those facts are disclosed in the Affidavit in Paragraphs 72-84b. The Motion also alleges that vehicle had already been searched when the warrant was applied for. As disclosed by Paragraph 81b of the Affidavit submitted in support

of the search warrant for the Tahoe, plain view observations were made, Exhibit 7, but no search occurred until the warrant was executed. Finally, the Motion argues that numerous items were seized which were beyond the probable cause scope of the warrant (Motion and Memo at page 16). In fact, a comparison of the warrant (Attachment B, Items to Be Seized) and the search return/inventory, Exhibit 7, pp.4-9, shows that all seized items were well within the conspiracy, destructive device and fraud violations set out in the warrant.

In summary, there is no basis for suppressing any of the evidence seized from the Magnaview residence or the Tahoe.

## II. FACTUAL BASIS

On the morning of February 2, 2006, federal agents served an arrest warrant at defendant Robert F. Kane's residence and took him into custody on charges under 26 U.S.C. §§ 5861(d) and 5871. Exhibit 2 (FBI 302 of arresting agents). At 7:38 a.m., Kane gave verbal consent to a search of his residence. Id. Kane then told his wife that he had given consent to search, telling Mrs. Kane this in the presence of agents. Id. Kane was then transported to the Anchorage FBI office.

Based upon the consent of the both Mr. and Mrs. Kane, the search of the residence began at approximately 8:20 a.m. Exhibit 7, P.2. Mrs. Kane's verbal consent (Exhibits 2 and 3) was later confirmed by her execution of a written FBI

"Consent to Search" form. Exhibit 1. While the residence was being searched, Mrs. Kane was interviewed at length, primarily by SA Stephanie Vetter of ICE.

SA Vetter will testify that the interview was cordial and that Mrs. Kane was cooperative and calm. SA Vetter never threatened Mrs. Kane with deportation, although she did advise Mrs. Kane that deportation was a possible consequence of a visa overstay. SA Vetter was armed but her firearm was concealed under her jacket. At no time did Mrs. Kane seek to withdraw her consent, during a lengthy interview and a seized property review (Exhibits 4, 5 and 6). At no time was Mrs. Kane in custody. She was not given Miranda warnings. Mrs. Kane was separated from her children at Mrs. Kane's request, because she did not want them to overhear the interview. The children were taken by Mark Avery. Mrs. Kane was never threatened in any way.

During the lengthy interview, Mrs. Kane told agents that there were numerous computers in the house. Agents also observed a laptop in the Chevy Tahoe, in plain view through the windshield of the vehicle. These facts, along with Mrs. Kane's statement that her husband almost exclusively used these computers, were expressively disclosed in the Affidavits of SA Campe, sworn out in applying for a search warrants for the residence and the Tahoe. Affidavits of SA Campe in Case Nos. 3:06-mj-019-JDR and 021-JDR.

A review of the items seized from the car and the residence (Exhibits 6,7) indicated that those items were within the scope of the search warrants, which were supported by the requisite probable cause.

## III. ARGUMENT

### A. The Motion to Suppress Should Be Denied - No Grounds for Suppression Exist

The motion raises three legal issues in the arguing for suppression:

    (1)    "Protective Sweep" (P. 6 Motion/Memo)

    (2)    "Consent to Search" (P. 7 Motion/Memo)

    (3)    "The Warrants" (Pp. 10-17 Motion/Memo)

        (a)    Nondisclosure of Mrs. Kane Interviews and Prior/Ongoing Consensual Searches

        (b)    <u>Franks</u> Omissions/Misrepresentations

        (c)    Affidavit lack of probable cause

        (d) and (e) Scope of Warrant/ Items Seized

Each of these arguments is addressed below.

    (1)    "<u>Protective Sweep</u>"

The government does not disagree with the movant's general description of th recognized parameters of a protective sweep. However, the movant does not

argue that such a sweep was done, or that the scope of such a sweep was somehow exceeded. The government's search of the Magnaview residence was based on the consent of Mr. Kane, Mrs. Kane and a search warrant.[1]

(2)   "Consent Search"

Similarly, the United States agrees that the Movant's statement of the law enumerating the five factors used in this Circuit to determine the voluntariness of consent is correct. They are:

> "(1) whether defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the defendant was notified that she had the right not to consent; and (5) whether the defendant had been told a search warrant could be obtained."

United States v. Soriano, 361 F.3d 494, 502 (9th Cir. 1989).

No one factor is determinative. United States v. Castillo, 866 F.2d 1071, 1082 9th Cir. 1989). The voluntariness of a consent must be decided using these factors as guideposts, not in a talismanic or mechanical fashion. Soriano at 502. The voluntariness if consent is "to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973).

Even though the motion correctly states the test of voluntariness, the

---

[1] At P.17 of the Motion/Memo is the heading "Fruits", which simply invokes the exclusionary rule, if supported by the evidence.

defense's version of the controlling facts is not supported by the evidence. Mrs. Kane was not threatened with deportation or anything else (contrary to defense assertion at p.8 of the Motion and Memo). Her husband did in fact consent to the search of the residence (contrary to assertions at pp.9 and 10 of Motion and Memo). The government's evidence on these points is persuasive, despite defendant Robert F. Kane's affidavit denying that he ever consented to any search.

(3)   "The Warrants"

(a)   Nondisclosure of Mrs. Kane Interviews and Prior/Ongoing Consensual Searches

At page 10 of the Motion and Memo, the defense alleges that the government violated its duty of candor to the court by "failing to reveal that Gamalinda had been extensively interrogated, or that searches of both the residence and the vehicle had already occurred." (Emphasis in original).

That information is in fact in the Affidavit submitted by SA Campe in applying for the warrants to search the residence and the Tahoe, at paragraphs 72 through 84b.

(b)   Franks Omissions/Misrepresentations

This paragraph of the Motion/Memorandum simply incorporates defendant Security Aviation, Inc.'s Motion for a Franks Hearing. It is devoid of any

reference to any alleged omission or misrepresentation, except for the allegations of part (a) above - which are simply untrue.

    (c)    "Affidavit lack of probable cause"

The Motion/Memorandum (pp. 11-14) simply disagrees, in conclusory fashion, with the findings of probable cause made by the Magistrate Judge in conjunction with the issuance of the search warrants for the Magnaview residence and the Tahoe. By way of response, all the United States can do is point out that the Affidavit exhaustively sets out a totality of circumstances, which collectively support the Magistrate Judge's findings of probable cause to believe evidence of the enumerated weapons and financial fraud violations would be found at the Magnaview residence and in the Tahoe (particularly in the laptop observed therein). This section of the Motion/Memorandum is argument, nothing more.

    (d) and (e)    "Scope of Warrant/ Items Seized"

Even though they appear under two distinct heading in the Motion/Memorandum (top of p.15, pp.16-17) the defense is only making a single argument: items were seized without being supported by the probable cause established by the Affiant. Once again, the Motion/Memorandum simply <u>alleges</u> that paragraphs 4 through 12 of Attachment B (Items to Be Seized) are beyond the scope of the probable cause facts enumerated in the Affidavit. Unfortunately, the

Motion/Memorandum does not give even one example of why this is so. Without more than a conclusion, the Motion/Memorandum is impossible to oppose in a manner helpful to the Court, other than to note that sections of the Affidavit clearly demonstrate the probable cause basis for seizing the items listed in paragraphs 4 through 12 of Attachment B. For example, the defense argues that proof of a "general rummaging" which exceeded the scope of the warrant lies in the government's seizure of items pertaining to defendant Robert Kane's identity and firearms purchases (p.17 Motion/Memorandum). Seizure of those items was well within the scope of the warrant, however. Paragraphs 12 through 20 of the Affidavit raise concerns about Kane's true identity and occupation, issues highly relevant to the conspiracy charges for both the weapons and fraud violations alleged. There is no evidence to support the Motion's conclusory assertion that the scope of the search warrants was exceeded.

**IV.    CONCLUSION**

In support of its Motion to Suppress, the defense has made numerous legal arguments, none of which are supported by the evidence in this case.

There is no evidence that the government impermissibly exceeded the scope of a protective sweep.

There is no evidence that the consent given by defendant Robert F. Kane to

search the Magnaview residence was involuntary. In fact, there is persuasive evidence that he voluntarily consented - and he told his wife about it in the presence of agents.

Nor is there any evidence that Mrs. Kane's consent to search the residence was involuntary or coerced. She signed a written consent form.

Contrary to the defense's assertion, Mrs. Kane's interview and the consensual residence search were disclosed in applying for search warrants for the residence. The Tahoe was not searched until the warrant was obtained.

There is no evidence of any material omission/misrepresentation in the Affidavits[2] used in support of the warrants to search the house and the Tahoe.

Finally the Affidavit provided ample support for the judicial finding of

//

//

//

probable cause. Nothing was seized outside the scope of the warrants.

---

[2] The United States incorporates, by reference, its Opposition to Defendant's Motion for a Franks Hearing, wherein the parties have fully briefed Franks issues.

      RESPECTFULLY SUBMITTED this 3rd day of April, 2006 at Anchorage, Alaska.

                DEBORAH M. SMITH
                United States Attorney

                s/ Steven. E. Skrocki
                Assistant U.S. Attorney
                222 West 7th Ave., #9, Rm. 253
                Anchorage, AK 99513-7567
                Phone: (907) 271-5071
                Fax: (907) 271-1500
                E-mail: steven.skrocki@usdoj.gov

                s/ James Barkeley
                Assistant U.S. Attorney
                222 West 7th Ave., #9, Rm. 253
                Anchorage, AK 99513-7567
                Phone: (907) 271-5071
                Fax: (907) 271-1500
                E-mail: james.barkeley@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on April 3, 2006 a copy of the foregoing was served electronically on Robert Bundy, Allen Clendaniel, Kevin Fitzgerald, James Kee, & Paul Stockler.

s/ James Barkeley