UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　　　Plaintiff,<br>　　vs.<br><br>ROBERT F. KANE, a.k.a.<br>Commander Kane, and SECURITY<br>AVIATION, INC.,<br><br>　　　　　Defendants. | 3-06-cr-00022-JWS-JDR<br><br>**RECOMMENDATION ON<br>DEFENDANT SECURITY<br>AVIATION'S MOTION TO<br>SUPPRESS EVIDENCE**<br><br>(Docket Entry 70) |

　　　　Defendant Security Aviation moves to suppress evidence seized pursuant to a finding of probable cause that a violation of 18 U.S.C. §1343 (wire fraud) occurred in search warrants 3:06-mj-00016-JDR and 3:06-mj-00018-JDR. Docket entry 70. The government filed an opposition at docket entry 101 and a supplemental opposition at docket entry 102. Upon due consideration of the

pleadings, the magistrate judge concludes that the motion lacks merit and that an evidentiary hearing is unnecessary to its determination.

Search warrant A06-16 MJ authorized the seizure of items described in attachment B (7 pages) as evidence of nine listed crimes, including wire fraud proscribed in 18 U.S.C. §1343. The warrant authorized a search of certain described buildings at 6121 South Airpark Place. Search warrant A06-18 MJ authorized a search for items described in attachment B (7 pages) located in specific areas of 3230 C Street, Anchorage, as evidence of the same nine crimes listed in search warrant A06-16 MJ. The return for each of the above search warrants contains a list of the inventory or property taken pursuant to the respective warrant. *See*, attachment C to the respective search warrants. The warrants were executed on February 3, 2006.

Security Aviation argues that the affidavits for these two search warrants do not establish probable cause that wire fraud occurred. The affidavits of Agent Campe, the defendant argues, do not show that there was a scheme or artifice to defraud the May and Stanley Charitable Trust or some other entity. Probable cause exists when there is a fair probability or a substantial chance of criminal activity. Illinois v. Gates, 462 U.S. 213, 235 (1983). The determination of probable cause is based upon the totality of the circumstances described in the warrant application. Under Gates, the relevant inquiry is whether in light of all the

circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. There is no requirement that a search warrant application set forth proof of all of the material elements of the offense under investigation. Such would be the case if the probable cause addressed the sufficiency of a criminal complaint.

The government argues that the search warrant applications establish probable cause to suspect that Mark Avery, Robert Kane, and Security Aviation committed wire fraud with respect to the May and Stanley Smith Charitable Trust. According to the affidavits of Special Agent Matthew Campe this trust was designed only to fund non-charitable purchases and is a suspected source of a $50 million "loan" (via wire transfers) which was used by Kane and Avery to purchase non-charitable items including boats, aircraft, homes, vehicles, and investment into Security Aviation as well as other business ventures which were not charitable in nature.

### The Warrant Application

Both warrant affidavits incorporate SA Campe's 53 page affidavit from warrant 3:06-mj-00010-JDR. That affidavit states that two witnesses described Avery as using his business computer network at 3230 C Street to communicate, perform online banking, and to facilitate high value wire transfers. The affidavit describes the agent's investigation as including a review of trust documents, tax filings for the trust,

and a determination that Mark Avery was one of three trustees responsible for the management of the May and Stanley Smith Charitable Trust, a charitable trust organized in San Francisco, California, with a stated fair market value of $350 million for the tax year 2004. The affidavit states that the purpose of the trust was to fund charitable endeavors dedicated to education and other charitable purposes.

According to the witnesses who provided information to the investigator, Avery and associates has no known legal employees and insufficient legal clients to generate the large sums of money used by Avery in his ventures. The affidavit describes searches through Motznik (computer services) and INGENS that revealed only one court filing for Avery and Associates for the years 2004 and 2005. The affidavit describes Avery's partner, Robert F. Kane, who has made claims that he worked with the FBI, DEA and CIA, whereas the government's investigation does not bear that out. According to the affidavit the Department of Defense and the State Department deny the existence of government contracts claimed by Kane.

The affidavit indicates that Kane and Avery hold themselves out as equal partners in various business ventures although investigators have not found any public record or other document indicating Kane's ownership interest in any of the property or businesses. The affidavit refers to a statement claimed to have been made by Kane to a civilian witness formerly employed with Security Aviation stating

he has "more money than God." Kane reputedly stated to one government agent that "Avery is the money man."

The affidavit indicates that one witness credited Kane with stating that Kane was worth $660 million that he had inherited from a presidential advisor who had died the previous year. Agents were unable to find any public records for Kane's home, other than it was purchased by an Avery-owned company. The affidavit describes Kane's prior involvement in cases involving financial fraud and questionable loans and defrauding of funds. The affidavit describes the secrecy with which Avery and Kane have attempted to cloak themselves and their businesses.

Documents indicate that in 2004 the trust held assets valued at $357 million and distributed $7.8 million in charitable grants. After March 2004, the trust ceased filing records in California and moved out of State. It indicates that Avery received an annual salary from the trust of $400,000 for forty hours' work per week. The affidavit indicates that false statements were made in a $500,000 line-of-credit application with Wells Fargo Bank on behalf of Security Aviation and Mark Avery. For example, the loan application included a claim that Security Aviation's growth was spurred by over $100 million in government contracts. The government claims the contracts do not exist.

The affidavit describes what the government has characterized as suspicious banking activity on the part of Security Aviation. Investigation revealed

numerous business accounts that showed "little legitimate business activity, but a great deal of wire transfer and electronic (computerized on-line) banking transfer activity into and out of the accounts by Avery, his wife, and his employees at Security Aviation."

The affidavit indicates that Avery is believed to have created a shell company(s) with no known business activities based on a review of records of the Alaska Department of Commerce Corporation. Deposits into one Security Aviation account for the period of September 2005 through October 2005 totaled $7.3 million. Kane and Avery reputedly advised the two witnesses that they required extraordinary computer and communication security, including CIA-grade encryption, to protect their companies from outsiders who could scrutinize multi-million dollar international wire transfers by Avery and Kane.

In search warrant A06-0018 MJ, SA Campe includes information from an interview with Robert Kane's spouse that her husband's salary for doing consulting work for Mark Avery was $5,500 - $7,000 per month; that in the summer of 2005, her husband's salary increased to $20,000 per month; that she informed law enforcement investigators that she overheard Robert Kane, Mark Avery, and Matt Avery discussing a $50 million loan that involved a collection of inter-related companies; that it was her impression that the loan came from a trust and that Mark Avery was in charge of that trust. Kane's wife also stated that she was aware of "an

old lady" in the Bahamas who was related to the trust administered by Avery. According to the affidavit for this search warrant, a witness who had periodic contact with Kane reported that he was advised by Kane that Kane worked for "an old lady" whom he escorted around the world and that he had taken her to a location in the Carribean.

### Application of Law

The purpose of a search warrant is to obtain evidence that probably relates to a crime. It is not the purpose of the warrant to prove beyond a reasonable doubt that the crime has occurred. Probable cause exists when there is a fair probability or a substantial chance of criminal activity. <u>Gates</u>, 462 U.S. at 235. Section 1343 of Title 18 provides in relevant part that "whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . . in interstate or foreign commerce, any writings, . . . or sounds for the purpose of executing such scheme or artifice" violates the law.

The affidavits contain sufficient sworn statements that probable cause exists to believe that wire fraud has been committed and that items related to that offense, such as the fruits of the crime, will be found on the premises sought to be searched at the time the warrant is issued.

In light of the foregoing conclusion, the court need not reach the government's alternative argument that law enforcement officers could lawfully seize something in plain view if its incriminating nature is immediately apparent while lawfully searching a place for something else.  *See*, Horton v. California, 496 U.S. 128, 136 (1990).  Wherefore, the motion to suppress at docket entry 70 should be denied.  IT IS SO RECOMMENDED.

DATED this 25th day of April, 2006, at Anchorage, Alaska.

/s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **close of business, Tuesday, May 2, 2006**, to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal.  McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981).  The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000).  Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers.  Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support.  Response(s) to the objections shall be filed on or before

**NOON, Friday, May 5, 2006**. The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).