Kevin T. Fitzgerald, Esquire
ABA No. 8711085
Ingaldson, Maassen &
Fitzgerald, P.C.
813 West Third Avenue
Anchorage, Alaska 99501
(907) 258-8750
(907) 258-8751/Facsimile
E-mail: kevin@impc-law.com

Counsel for Defendant Kane

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT F. KANE, and<br>SECURITY AVIATION, INC.,<br><br>Defendants. | No. 3:06-cr-00022-01 JWS<br><br>**DEFENDANT KANE'S<br>TRIAL BRIEF** |

COMES NOW, the Defendant, ROBERT F. KANE, by and through his attorney of record, Kevin T. Fitzgerald, and files his trial brief.

I.  INTRODUCTION

This court dismissed count 3 of the indictment on May 4, 2006. After that dismissal, the indictment charges both Kane and Security Aviation with one count of possession and receipt of unregistered destructive devices in violation of 26 U.S.C. § 5861(d) (count 2) and one count of unlawful transportation of

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Trial Brief
Page 1 of 11

destructive devices in violation of 18 U.S.C. § 922(a)(4) and 18 U.S.C. § 924(a)(1)(B) (count 4). The indictment also charges Kane with one count of conspiracy to receive and possess an unregistered destructive device in violation of 18 U.S.C. § 371 and 18 U.S.C. § 2. Security Aviation's trial brief on the legal issues and the applicable law which should be applied is incorporated by reference and will not be repeated here.

II. FACTUAL ISSUES LIKELY TO ARISE

Since Security Aviation has properly briefed the court on the applicable legal issues, defendant Kane seeks to provide the court with background on evidentiary issues that potentially lie ahead.

This case is about two rocket pod launchers. It should be a fairly straightforward case. However the government has cast a wide blanket of subpoenas on people who had nothing to do with rocket pods. The government trial subpoenas range from George Walton, owner of Gold And Diamond Company (apparently regarding some unrelated jewelry purchased by Kane) to Charles Sandberg (Kane's third-party custodian), and his wife Karen Kane (who knew nothing about rocket pod launchers). The United States appears intent on having a trial which has very little to do with the rocket pod launchers at issue and more to do

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Trial Brief

with all the other allegations they have made public but have never charged.

The defense is concerned that a fair trial cannot be obtained by the defendants if the prosecution is allowed to proceed at trial where it headed before trial, in particular in the search warrants as most of the government's allegations and innuendo have little to do with rocket pod launchers. Some examples of those allegations are as follows:

> 1. Mark Avery is an Anchorage attorney and businessman. Avery is 46 years old and is a licensed attorney in the state of Alaska. Avery resides in Eagle River, Alaska. Avery is one of three trustees of the May and Stanley Smith Charitable Trust, a trust valued at $357 million as of 2004. Public records and two witnesses with personal knowledge (Witness B, Witness C) have established that Avery's law practice, Avery and Associates, is located at 3230 C Street, Anchorage, Alaska. Avery is using his business computer network located at 3230 C Street, Anchorage, Alaska to communicate, perform online banking, and facilitate large value wire transfers.
>
> 2. Since January 2004, Avery has acquired or created through unknown financing sources approximately 15 companies (several being created by Avery on the same day), including aviation charter, aero-medical and other "security" and/or quasi-law enforcement-type businesses with an aggregate unknown value, but a value believed by your Affiant to exceed $50 million dollars based on the investigation to date. The source of funds or funding

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Trial Brief

Page 3 of 11

methods for these business purchases by Avery is unknown.

3. A review of trust documents, including tax filings for the trust, establish that Avery is one of three trustees responsible for the management of the "May and Stanley Smith Charitable Trust," a charitable trust organized in San Francisco, California with a stated fair market for the tax year 2004 in excess of $350 million dollars. As detailed below, the stated purpose of the trust is to fund charitable endeavors dedicated to education and other charitable purposes. Investigators are attempting to determine if any of these trust funds have been utilized to purchase or import contraband to Alaska, including rocket pods/launchers.

4. Avery and Associates," has no known legal associates, employs no other attorneys, and appears to have few, if any legal clients unrelated to either Avery's own businesses, the trust, or the dealings of Kane and Hopper.

5. Robert F. Kane is known to use the moniker "Commander Kane" and insists on using this label despite there being no record of any military service with the United States. On March 24, 2005 your Affiant learned through a routine search of FBI databases for Robert F. Kane, that Kane has claimed to be affiliated with the United States Intelligence Community since at least 1996. Over the years, and as verified through several federal investigations involving Kane in the states of Nevada and Oregon, Kane has claimed to have been a Navy "SEAL," and has claimed to be or have been operating under the auspices of the FBI and CIA.

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Trial Brief

6. Kane also claimed to have been a "commander" in the Philippine Coast Guard. Kane claimed to be a pilot, a former Navy SEAL, a former special forces operations soldier, and claimed further that he has worked with the FBI, DEA, and CIA. The Tampa, Florida FBI field office listed Kane as an FBI informant until mid-2005. He is no longer acting in that capacity. There is no indication that Kane was providing any information concerning any activities in Alaska in 2004 and 2005.

7. Kane allegedly told a former Deputy United States Marshal that Kane has claimed that he and his associates in Alaska are currently engaged in "black ops." Kane has elaborated on this statement by claiming that he has been transporting detainees for the U.S. Government from overseas locations through his work with Regional Protective Services, LLC and Security Aviation.

8. Kane and his associates have spent a considerable amount of time within the last six months explaining to the Alaska law enforcement community and other individuals that the group is legitimately into "black ops," and that it possesses "OPFOR" (opposition force) contracts with the Department of Defense. Kane has claimed that his company had air evacuation contracts for 300 embassies and consulates on the Pacific Rim. The Department of Defense and the State Department deny the existence of any such contracts, nor has a search by other FBI agents of pertinent Department of Defense contractor listings revealed any such contracts.

9. On January 26, 2006, Kane stated to a civilian witness formerly employed with

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Trial Brief

Security Aviation, Inc. that, "I have more money than God." On September 25, 2005, Kane stated that he was worth $660 million that he had inherited from a presidential advisor who had died the previous year.

10. Surveillance by agents over the course of the investigation, including inspection of trash from Kane's residence that included an empty money band labeled "$2,000" has revealed that Kane resides in a large, upscale home in Eagle River. The home in Eagle River in which Kane resides was purchased by an Avery owned company, Regional Property Services, LLC.

11. In the past, Kane has been associated with case investigations involving financial fraud. Anchorage FBI Division records show that Kane was investigated as the recipient of approximately $65,000 in questionable loans from the First National Bank of Anchorage in 1993. The loans were written off as losses to the bank, and neither Kane nor the loan officer who approved the loans were prosecuted. Kane also came to the attention of the Reno, Nevada FBI office when it received information from a complainant who stated that Kane had defrauded him of $230,000, and that Kane was involved with illegal activities and scams in general. The complainant stated that Kane claimed to be a former U.S. Navy SEAL, a former U.S. Navy Commander, and that Kane was working with a NSA team.

12. A witness (Witness F – Eddie Lee Wilcher), alleged that Kane has shown him a grenade launcher, grenades, a .50 caliber firearm, an "Uzi" type automatic firearm, an official looking badge stating "U.S. Customs," a CIA raid jacket, and a bag containing a large number U.S. $100 bills

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Trial Brief

which Kane claimed contained $70,000. Kane was also allegedly witnessed by Witness F firing fully automatic weapons at his residence . . . Witness F observed Kane firing several rocket pods from a hand-held rocket launcher at Kane's residence in Klammath Falls, Oregon in late 2001.

13. Records checks for Kane indicate a criminal history including a 1989 conviction for misdemeanor assault which was later set aside. Kane also had been charged, but not convicted of, assault in 1993 and 2002, family offenses in 1989, and failure to appear in 1993 and 2002, all in Anchorage, Alaska.

14. Dennis Hopper like Kane, has been informing individuals at Security Aviation, Inc. and other locales that he too is involved in "black ops" and classified U.S. government operations. Hopper's vehicle license plate was previously registered under the moniker of "SWAT-7," meaning, in swat vernacular, he would be the seventh swat member "through the door" in a given operation.

15. High Security Aviation purchased a vintage biplane, a Chance-Vought F4U Corsair, and a P-51 Mustang. The Corsair and the Mustang's purchase price, according to internet resources for similar airplanes, are believed to exceed $1 million each.

16. In September or October 2005, Kane told a witness that Regional Protective Services and Security Aviation had spent $54 million in a ten day period.

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Trial Brief

17. Witness I had heard rumors at Security Aviation that Kane stated he (Kane) "kills people for a living" and that Kane was also rumored to have a machine gun mounted on a boat in Seward.

18. Regional Protective Services, Inc., had two vessels moored in the new, privately owned Whittier Marina, located east of the present Whittier Small Boat Harbor. The first vessel, a 40' Carver, is a fiberglass cabin cruiser identified by the name "Time in a Bottle." According to Coast Guard documentation, the purchase price of this vessel was $230,000.

19. As of late 2005 another brand new vessel was also moored in the Whittier Marina. This vessel is a yellow, "Mooseboat," a 30', twin-hull catamaran patrol boat. This vessel is derived from heavy-duty patrol vessels built by Mooseboat for the United States Navy. They have been produced for civilian use, much like the original "Hummer" four-wheel drive vehicle is derived from the military "Humvee." Depending on the model, the "Mooseboat" Web site lists prices ranging from $400,000 to $500,000 per vessel. Kane purchased this particular vessel from a Mooseboat display during January, 2005 in Seattle, Washington.

20. The May and Stanley Smith Charitable Trust (the Trust) documents establish that the Trust was established in California in 1989 by May Wong Smith, the elderly sole trustor, with the assistance of attorney and trustee Luther J. Avery, the now-deceased father of subject Mark J. Avery. The Trust was created as an irrevocable private charitable trust for the express purpose of supporting only charitable organizations qualified under IRS 501(c)(3)

INGALDSON, MAASSEN & FITZGERALD, P.C.
Lawyers
813 W. 3rd Avenue
Anchorage, Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Trial Brief

tax-exempt charity designation. Mark J. Avery inherited his father's trusteeship over the Trust in 2001. Avery is currently one of three trustees for the Trust.

21. The 2001 - 2004 Trust federal tax returns from the California Attorney General's Office indicate that in 2004, the Trust held assets valued at $357 million and distributed $7.8 million in charitable grants. Tax records for 2004 also indicate that Avery and the two other trustees each received an annual salary from the Trust of $400,000 per year for "40 hours" of work per week on the trust. The Trust was also charged significant additional fees by the trustees and their family members for unspecified legal work, accounting, and investment consulting. No further explanation was provided detailing what type of work was performed by Avery and the other trustees on behalf of the Trust.

22. On Friday, November 25, 2005, another FBI agent learned from a retired law enforcement officer that he was contacted personally by Kane while the individual was attending a trade show in Florida. During discussions with Kane at the trade show, Kane informed the witness that Security Aviation would like to hire him to do "dignitary protection" and "advance work" for a "board meeting" in the Bahamas.

23. Avery and Kane sought the services a consulting firm to enter into a one year contract to provide complete computer data and communications security, including e-mail encryption, data encryption, system firewalls, and emergency data destruction systems beginning on January 1, 2006. Kane and Avery advised witnesses that they require extraordinary computer and communications security, including CIA

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Trial Brief

Page 9 of 11

    grade encryption, to protect a trust and
    their companies from unspecified outsiders
    who will scrutinize multi-million dollar
    international wire transfers by Avery and
    Kane.

  The foregoing is but a sample of "information" which is irrelevant and prejudicial to this trial. Kane does not know what kind of case the government intends to put on. At the trial setting conference, the government asked for two to three days to put on their case. This is simply notice to the court that the government may attempt to choose a substantially longer path, a path this court should preclude the government from presenting on the grounds that it is irrelevant and its prejudicial impact outweighs any possible probative value.

  Most of the assertions by the government in this case have nothing to do with the principle issues in this case: whether the rocket pods seized by the government from SAI's Palmer hangar can get the government a conviction on the crimes charged. Most of the government's evidence has no tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable. *See*, Fed. R. Evid. 401. The evidence is an obvious attempt by the government to create hostility toward Kane and Security Aviation based on facts having nothing to do with the crimes charged. Any minor relevance is substantially outweighed by the danger of unfair prejudice, confusion of the issues,

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Trial Brief

misleading of the jury, undue delay or waste of time. *See*, Fed. R. Evid. 403. The character evidence on Kane should also not be allowed. *See*, Fed. R. Evid. 404.

Dated at Anchorage, Alaska May 8, 2006.

INGALDSON, MAASSEN &
FITZGERALD, P.C.
Counsel for Defendant Kane


s/Kevin T. Fitzgerald
ABA No. 8711085
813 West Third Avenue
Anchorage, AK  99501
Fax: (907) 258-8751
E-mail:
kevin@impc-law.com

**CERTIFICATE OF SERVICE**

I hereby certify that on 5/8/06,
a copy of the foregoing Trial Brief
was served electronically on:

Steven E. Skrocki, Assistant U.S. Attorney
James N. Barkeley, Assistant U.S. Attorney
Michael R. Spaan, Esquire
James L. Kee, Esquire
Paul D. Stockler, Esquire
Robert C. Bundy, Esquire
Allen F. Clendaniel, Esquire


s/ Kevin T. Fitzgerald
F:\W\3169-1\Pleadings Kane\KaneTrial Brief.doc

INGALDSON,
MAASSEN &
FITZGERALD,
P.C.
Lawyers
813 W. 3rd Avenue
Anchorage,
Alaska
99501-2001
(907) 258-8750
FAX: (907) 258-8751

USA v. Kane, et al.
No. 3:06-cr-00022-01 JWS
Trial Brief

Page 11 of 11